UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:12-cr-00056 AWI |
| | ) | |
| Plaintiff, | ) | JURY TRIAL |
| | ) | |
| vs. | ) | Day 1 |
| | ) | |
| RICKY DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Fresno, California                     Tuesday, March 17, 2015

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Vol. 1, Pages 1 to 236, inclusive

REPORTED BY:
GAIL LACY THOMAS, RMR-CRR
Official Court Reporter
CSR No. 3278

APPEARANCES OF COUNSEL:

For the Government:        **BRIAN ENOS**
                          **ALYSON BERG**
                          Assistant U.S. Attorneys
                          2500 Tulare Street
                          Suite 4401
                          Fresno, California 93721

For the Defendant:        **ANN McGLENON**
                          **ANDRAS FARKAS**
                          Assistant Federal Defenders
                          2300 Tulare Street
                          Suite 330
                          Fresno, California 93721

```
 1   Tuesday, March 17, 2015                  Fresno, California
 2                                            8:38 a.m.
 3
 4        THE CLERK:  The Court calls case 1:12-cr-00056,
 5   United States versus Ricky Davis, Government's application for
 6   order to obtain photographs of tattoo and jury trial.
 7        THE COURT:  All right, good morning.  If I could have
 8   your appearances for the record.  First, on behalf of
 9   plaintiff, Government.
10        MR. ENOS:  Good morning, Your Honor.  Brian Enos and
11   Alyson Berg on behalf of the U. S. Attorney's Office, as well
12   as lead agent, Detective Derek Stigerts of the Sacramento
13   Police Department.
14        THE COURT:  All right, and on behalf of defense.
15        MS. McGLENON:  Good morning, Your Honor.  Ann
16   McGlenon and Andras Farkas for Ricky Davis, and we also have
17   present in the Court Vinnie Lee, our investigator, and Karen
18   Mosier, our paralegal.
19        THE COURT:  Okay, now during the course of the trial,
20   if, for whatever reason, any counsel has to step out or do
21   other things related to the trial, or otherwise, you can
22   certainly do that.  You don't need leave of the Court.  If you
23   want me to mention to the jury something about why you have to
24   leave, that's fine.
25        In terms of people sitting at the counsel table, I'll
```

4

1    introduce anyone at the counsel table at the beginning of the

2    trial when we start up.  I won't introduce any other people,

3    investigators or whatever, but certainly counsel are free to

4    introduce any staff members.  I know during the course of the

5    trial it's very possible that staff might be coming in and out

6    to drop off papers, or whatever.  There is no need to

7    recognize, but certainly if you want to mention that to the

8    jury, that's fine with me also.  So in the introductions, I'll

9    just introduce the folks at the counsel table.

10         Okay, now, what I'd like to do preliminarily is go

11   through some matters with you, and if you have any specific

12   issues you want to raise, you can do that.

13         First of all, with respect to legal issues, we do

14   have a number of motions.  We do have the Government's

15   application for order to obtain photographs of tattoo.  We

16   have the Government's motion to strike and to limit the

17   testimony of Mr. Marcus Lawson.  We have the defense motion to

18   preclude jury instruction under 18 United States Code Section

19   1591(c).  And we also have some proposed stipulations.  And

20   then, obviously, I received the exhibit binders and the

21   witness list.  So if we have any issues regarding those

22   matters, we can take those up.

23         What I just propose to do is we take up legal issues

24   after we pick the jury because we're going to have, I don't

25   know, 40 or 50 bodies in here on the jury panel, and I think

1    we'd be better off, and they'd be better off, if we can just

2    pick the jury, and then we're down to the jury and alternates.

3    And then I can let everyone else go, and we can take up the

4    legal issues unless any of you feel that any legal issues, or

5    otherwise, need to be taken up before jury selection, I'm

6    certainly open to take those up.

7         So as far as any legal issues for the Government

8    side, anything we need to take up before jury selection?

9         MR. ENOS:  No, Your Honor, but with respect to

10   defendant's 1591(c) motion, I talked to defendant about it.

11   And what I would like to do, because I spent last weekend in

12   trial prep, I will be spending tonight doing witness prep.  If

13   I can have Wednesday and Thursday night to get a response on

14   file, I can get it, and hopefully at the jury instruction

15   conference, I can talk to defense, and we can see what, if

16   anything, really are the scope of the jury instructions that

17   are in dispute.  And we can wrap those in altogether, and then

18   we can present those to the Court in the form of a normal jury

19   instruction conference.

20        THE COURT:  All right.  Okay, and what I'd like to

21   do, as typically in all cases, probably 80 to 90 percent of

22   the jury instructions, there will be no dispute.  The Ninth

23   Circuit model instructions, obviously they're with respect to

24   the charges, defenses, whatever, there might be some issues.

25        So at the end of the presentation of all the

6

1   evidence, of course, however, we'll have a final instruction

2   conference on jury instructions and verdict form.  But as we

3   progress along, I would like to have meetings with -- so we

4   can sort of shape and narrow the issues so that our final

5   instruction conference is not overly lengthy.  But I don't

6   have a problem obviously with addressing that.

7           Now, as I mentioned earlier -- okay, scheduling-wise,

8   Friday, I do have those magistrate judge interviews.  So we'll

9   be dark on Friday, but if we think it's productive or

10  worthwhile Friday afternoon, we can meet for some kind of

11  intermediate or preliminary jury instruction verdict form

12  conference if that helps the progress.  So you can let me

13  know, or I can let you know on Thursday whether or not we

14  might want to meet on Friday afternoon.

15          The following week, I'd be available all day Tuesday

16  through Friday.  So we should have up to seven days between

17  now and next week.

18          Okay, so defense-wise, any legal issues, anything we

19  need to take up before jury selection?

20          MR. FARKAS:  No, Your Honor, I just wanted to make

21  sure the Court was aware of our filings last night.  We filed

22  a response to the Government's request to strike Mr. Lawson's

23  testimony as well as a motion to -- for the Court to

24  reconsider its ruling on the text message issue.

25          THE COURT:  Okay, sure.  And we'll take those up,

1  | then, after we get the jury picked.

2  |     Now, in terms of the jury selection process, what's

3  | going to happen, once we get back in court, it's going to take

4  | a little bit of time to get the jury up here.  Apparently

5  | we're having two jury trials, and so our jury administrators

6  | are scrambling to try to get everyone checked in and assigned

7  | out.  So it will take a little bit of time.  But once the jury

8  | panel comes in, what I'll do is, I'll make preliminary

9  | introductions.  I'll introduce myself, my staff.  I'll

10 | introduce you folks at the counsel table, and then I'm going

11 | to read the witness list that's been provided to me by both

12 | sides.  There is one -- a couple of duplicates.

13 |     Now, when I read the witness list, I don't read their

14 | titles.  I just read the names.  I don't read them off as

15 | plaintiff's witnesses or defense witnesses.  I just read them,

16 | because I tell the jury I don't expect them to remember all

17 | the names, but what I am asking them to do is think about all

18 | the people I'm introducing and mentioning by name, including

19 | prospective witnesses, whether or not they might know anybody

20 | that might be involved in the trial, and that's the only

21 | reason I'd be reading the witness list to them.

22 |     Okay, so after I've read that off so that they become

23 | at least marginally familiar with people who might be involved

24 | with the trial, I'll go ahead and read the joint statement of

25 | the case, which has been provided to me, Document 103.

1          Are both sides still okay with the joint statement of

2     the case?

3          MR. ENOS:  Yes, Your Honor.

4          MS. McGLENON:  I believe so, Your Honor.  Yes.

5          THE COURT:  Okay, and basically I tell the jury, it's

6     not evidence.  They're not to consider it as evidence.  The

7     reason that I read that to them is, first, so they'll

8     understand what the case is about; and secondly, so they'll

9     understand why we're going to be asking certain questions on

10    voir dire.

11         After I read the statement of the case, then we'll

12    start the jury selection process itself.  I'm going to have

13    Miss Gaumnitz seat 18 in the jury box.  Some of you already

14    have had trials with me, so you understand my process.

15         In the top back row, starting from your far right,

16    will be seats -- prospective jurors 1 through 6.  In the front

17    row of the jury box will be seats number 7 through 12, and in

18    that very front row in front of the jury box itself, there's

19    six seats, four prospective jurors, 13 through 18.

20         The voir dire will be conducted with all 18.  If any

21    of the 18 are excused for cause, I don't move people forward.

22    So, for example, if prospective juror number 1 is excused for

23    cause, I don't have everybody move forward and fill seat

24    number 18 because I think that just really messes up

25    everyone's seating charts.

9

1           MS. McGLENON:  Your Honor, I'm sorry.  Is chair

2    number 1, the back on the far right?

3           THE COURT:  Yes, back far right.  So it will go 1

4    through 6 to your right, to your left.

5           So as we excuse folks for cause, then I'll fill those

6    seats.  At the point in time where -- oh, I'm sorry.  At some

7    point in time when we think we pretty much exhausted

8    questions, et cetera, I'll probably have you folks, just

9    counsel alone, come back into the hallway, to see if there are

10   any issues for cause.  If there are, then I'll send the whole

11   panel out.  Obviously we'll do cause issues on the record.

12          The only time I ever have you folks go in the hallway

13   during jury selection is really quick questions.  They're not

14   on the record because by the time Gail gets back there and

15   gets set up, it takes a lot of time.  Obviously anything we do

16   off of the record, as soon as we get back on the record, when

17   we have a break, you can put on the record what we discussed.

18          The only things I would discuss off the record in the

19   hallway is, for example, sometimes people will be expressing

20   some concerns about serving as a juror, other obligations,

21   hardships, family issues, et cetera, and I don't necessarily

22   excuse them.  But I might just bring counsel back in the

23   hallway.  If you stipulate to excuse someone, that's fine.

24   When we come back on the record, I'll just excuse that person,

25   and then at the next break, you can put on the record that we

1    discussed prospective juror number 1, which the parties

2    stipulated that she could be excused, and that will be the

3    record.

4           The other times as I indicate, we would just go off

5    the record in the hallway is if you have any cause issues

6    because I'm not going to make you say in open court, "Oh, I've

7    got a cause issue."  So all we do is go back, and if any of

8    you say, you know, I have a challenge for cause, then I'll

9    send the panel out, and you can make your argument on the

10   record.

11          Generally those are the only off-the-record

12   discussions we have.  But any time we do, and counsel wishes

13   to approach the bench at any time just for something really

14   quick, we can go off the record, but I want to make sure that

15   the parties understand that you have the right on the next

16   break to put on the record anything that we did off the

17   record.

18          So at any rate, once we finish the for cause issues

19   with respect to the jury, then what you're going to see,

20   obviously, there are 18 bodies.  We'll go into the peremptory

21   challenge stage.  The government gets six.  The defense gets

22   10.  Basically the order -- and we'll go through this later

23   on, but basically the order is plaintiff's challenge, defense

24   peremptory challenge, plaintiff's peremptory challenge, and

25   then defense will get two peremptories.  And then the

1    Government will get a peremptory.  Defense will get two

2    peremptories.  The Government will get a peremptory.  Defense

3    will get two peremptories.  The Government will get a

4    peremptory.  Defense will get two peremptories.  So at the

5    very end, the Government will have a peremptory, and the

6    defense will have a peremptory.

7             Now, obviously you don't have to use up all your

8    peremptories.  You can pass tactically, and you will preserve

9    your peremptories.  But if the other side passes behind you,

10   it's over.  So if you're going to pass tactically, think hard

11   because if the other side passes behind you, that's it.

12   You're done.  Don't stand up and say, "Oh, Your Honor I made a

13   mistake, excuse me.  I really want to exercise a peremptory."

14   I'm not going to allow that.  It's not game-playing.  You

15   exercise your peremptory.  If you think tactically, you might

16   wish to pass, assuming the other side is going to exercise

17   their next peremptory.  That's your call, but you live with

18   that call.

19             Okay, so -- and we're going to have two alternate

20   jurors.  Each side is entitled to an additional peremptory

21   challenge on the alternate juror only.

22             Now, so process-wise, when you exercise your

23   peremptories, we'll go back and forth.  As I've indicated,

24   just state the seat number, the juror name.  I'll excuse that

25   person.

1          Now, remember, once you get to the peremptory

2    challenge stage, you're focusing in on the 12 in the box.

3    That's your jury.  But when you exercise a peremptory of any

4    12 in the box, your next juror is going to be number 13, and

5    it will go right down the line, 13 through 18.  So you're

6    going to know your next six prospective jurors when you

7    exercise your peremptories.

8          Now, as we go along and you exercise your

9    peremptories, when both sides have used collectively six

10   peremptories, there will be obviously no one left in that

11   front row.  There will be 12 in the box.

12         The next party that exercise a peremptory will be

13   from that jury box, one of the 12.  Okay.  Once that's done,

14   then all we have left are the 11 in the box, and then one

15   vacant seat.  At that point in time, I'm going to have Miss

16   Gaumnitz call seven people up.  The first person she calls is

17   going to sit in the jury box, and that will fill the 12 there.

18         The next six she calls will be 13 through 18.  So

19   we're refilling the front row.

20         Then we'll do our voir dire of the seven new people,

21   the new person in the jury box, and the six in the front row.

22   Okay, we'll conduct our voir dire of those folks, and then

23   we'll do the cause issues, and once we're finished with the

24   cause issues, we'll continue on with the peremptory

25   challenges, where we left off.

1          Okay, so you're, again, looking at the 12 in the box,

2    and the six in the front row, 13 through 18.  If you exercise

3    your next peremptory in the box, then whoever is new in seat

4    13 will take that person's place, and we'll continue on.

5          And we'll keep doing that process until both sides

6    have passed, or you've exercised or exhausted all your

7    peremptories.

8          And then we'll do the alternate jurors.  First

9    alternate, the parties can exercise your peremptories.  And

10   then second alternate, you can exercise your peremptories.

11   And then once we get the alternates done -- well, first of

12   all, of course, Miss Gaumnitz will administer the oath to the

13   12 jurors who are on the jury, and then we'll do the alternate

14   selection, and then she'll administer the oath to the

15   alternate jurors.

16         Okay, any questions about the jury selection process,

17   plaintiff's side, any questions?

18         MR. ENOS:  Will the parties have a brief amount of

19   time to ask their own voir dire follow-up questions.

20         THE COURT:  Yes.  The process is, I'll go ahead and

21   ask a fairly extensive voir dire questions.  I think the

22   Government submitted proposed questions.  I'll incorporate

23   those.

24         Now, as I'm going along, if you think of questions

25   that I should be asking, either a specific prospective juror

1   or the panel as a whole, just jot it down.

2           MR. FARKAS:  Your Honor, we also submitted proposed

3   jury voir dire questions, I believe.

4           THE COURT:  If you did -- obviously I didn't see

5   that.

6           MR. ENOS:  I'm not sure they were filed.

7           MS. McGLENON:  Prepared them.  Okay.  That explains

8   why they're not in our binder.

9           THE COURT:  Okay.

10          MS. McGLENON:  We're getting those.  I'd like to

11  provide them to the Court and counsel.  I thought they were

12  filed last -- on the 11th.

13          THE COURT:  Okay, yeah, that's fine.  Obviously,

14  because I want to try to incorporate as much of that as

15  possible in my inquiry.

16          And then when I'm done, I'll turn to both sides.  If

17  you have any follow-up questions you want me to ask so you

18  don't burn your 15 minutes, just go ahead and jot them down,

19  hand them up for me, I'll ask those questions.  And once I'm

20  done, we'll go ahead and do individualized voir dire.

21          The Government will go first.  You have 15 minutes.

22  That doesn't give you a whole lot of time.  Hopefully between

23  the questions you submit beforehand, the questions I ask, the

24  follow-up questions that you submit to me in writing, that I

25  will cover most of the stuff, so you can focus in on the few

1    jurors or the panel as a whole, however you wish to proceed.

2          You don't have to save any of your voir dire time

3    just in case someone gets replaced after you're done.

4    Especially, for example, you do your voir dire of the 18, and

5    then, you know, we have the peremptories, and we bring up

6    seven new bodies, I'm going to certainly allow you folks to

7    exercise voir dire on the new seven.  So don't worry about

8    trying to save any of your 15 minutes.

9          Once the Government is done, then the defense can go

10   ahead and do an inquiry.

11         Okay, plaintiff's side, any other questions on the

12   jury selection process?

13         MR. ENOS:  No, Your Honor.

14         THE COURT:  Defense, any questions on the jury

15   selection process?

16         MS. McGLENON:  No, Your Honor.

17         THE COURT:  Now, if you do have any questions, you

18   just want to come sidebar and say, "You know, Judge, I can't

19   remember what you said about this," or whatever, we can

20   certainly do that very quickly.  So that's not a problem.

21         Okay.  So that's pretty much it preliminarily.

22   Anything further, plaintiff's side, that we need to take up

23   before we -- we're going to take a break, obviously, and we'll

24   see how the jury administrator is doing with our jury panel.

25   It will take a while for all of them to get up here, so we

1   have some time.

2         Anything for plaintiff's side.

3         MR. ENOS:  Yes, just briefly, Your Honor.  With

4   respect to one of the parties' stipulations, which was

5   ultimately endorsed by a court order, it had to do with

6   redacting part of Detective Stigerts' videotaped interview of

7   defendant back in January of 2012.  Defendant graciously did

8   that.  Sent us a copy of that, and, frankly, it seemed very

9   seamless, the copy that they provided.  So that's going to be

10   the Government's new Exhibit 21.  It's actually going to be

11   the disk provided by the plaintiffs.

12         And during our IT conference yesterday here with IT,

13   Karen Moore, we watched that together, so I just want to let

14   the Court know about that.

15         And also there is a second exhibit, Exhibit 12, which

16   is a jail call from defendant to Bianca in this case.  The

17   Government is going to attempt to admit it, and it also

18   included about a 20, 25 second component that I think also

19   would have needed to be redacted pursuant to the Court's

20   order.  It had to do with defendant referencing how much time

21   he spent in prison for his prior conviction.  That has also

22   been redacted, so it could indeed be played without

23   threatening the sanctity of this trial, and that also was

24   played for defense yesterday during the IT meeting, that was

25   Exhibit 12.

1          THE COURT:  All right, and there are a couple

2     stipulations that were filed.  One was the stipulation

3     regarding admissibility of evidence Document 106, and then a

4     stipulation to sanitize the felony prior and delete reference

5     to prior Davis' statement.  That was Document 98.  We'll take

6     up those stipulations so you can put those stipulations on the

7     record, and then you can let me know how you want to deal with

8     the stips that might include evidence, whether or not you

9     wanted a jury instruction, or somebody's going to -- the Court

10    or parties can read the stipulation of the testimony, or

11    whatever.  So we will take up stipulations.

12         Also if there are any specific concerns regarding

13    exhibits or witnesses that you wish to address, we can take

14    those up again after we get the jury picked.

15         MS. McGLENON:  Your Honor, we obtained our voir dire,

16    which is obviously unfiled.  We have two copies.  If it would

17    be possible for me to get some more copies, that would be

18    helpful, one for the Court and one or two for counsel.

19         THE COURT:  Yeah.  This is James Mugridge.  He's one

20    of the staff attorneys, so he'll be working with you folks

21    during the trial.  So if you have any legal issues or

22    concerns, he can work with you on those too.

23         And then anything else preliminarily for the defense

24    side that we should take up?

25         MS. McGLENON:  I don't think so, Your Honor.  I don't

1    think so.

2            THE COURT:  All right.  Okay.  All right, what we're

3    going to do, let's see, let me ask -- let's do this:  Let's

4    take a 15-minute recess just to check and see.  Now, if

5    they're still working on getting the jury panels assembled,

6    you know, we'll wait, obviously.  But I'll check back in 15

7    minutes.  We'll see how they're doing there.

8            So we'll be in recess for 15 minutes.

9            (Recess.)

10           (The following proceedings were held:)

11           THE CLERK:  The Court calls case 1:12-cr-00056,

12   United States versus Ricky Davis, jury trial.

13           THE COURT:  All right, the record will reflect that

14   the jury panel is present.

15           Members of the jury panel, good morning, and thank

16   you for appearing here for the jury trial.  We're going to get

17   the jury selection process started in just a couple of

18   minutes, but I would like to do a couple of things

19   preliminarily.

20           The first thing I'd like to do is introduce some of

21   the individuals that will be involved in the trial during the

22   course of the trial.  I'll start with myself.  My name is Tony

23   Ishii.  I'm the judge who will be presiding over this

24   particular case.

25           Miss Gaumnitz is the courtroom deputy.  She'll be

1   working with me, the attorneys, the parties, witnesses,

2   exhibits, et cetera, during the course of trial.

3         Seated next to me is Miss Thomas also -- in front of

4   me.  I'm sorry.  She's the court reporter.  I do want to

5   mention a couple things about her role.  She has to take down

6   every word that's spoken in court, and that requires a couple

7   of rules.

8         First of all, only one person at a time can speak.

9   So during the course of the trial, as a witness testifies, for

10  example, you will hear one of the lawyers ask a question, and

11  then stop.  And the witness will answer the question and then

12  stop, and it will go back and go back and forth like that

13  simply for convenience so that the jury can follow along, and

14  certainly so Miss Thomas can take down what's spoken.

15        The other thing, of course, is we need to all keep

16  our voices up so everyone in the courtroom can hear what you

17  have to say, and so Miss Thomas can take things down.  And I

18  told Miss Thomas, if she's not able to hear and understand

19  what someone is saying, she can speak up because it is her

20  legal obligation to take down every word.

21        During the course of the trial, that's not going to

22  be an issue at all.  As you can see, there are microphones

23  throughout the courtroom and the witness stand, et cetera.  It

24  is a little bit of a problem during jury selection because

25  when you come up into the jury box, we don't have microphones

1   set up there, but we do have a handheld microphone, and I will

2   ask you to make sure you utilize that and keep your voices up.

3           Those of you in the audience area, while we're going

4   through any part of the trial and you're not able to hear what

5   someone is saying, feel free to speak up and ask us to keep

6   our voices up.

7           Also in all cases, whether civil law cases or

8   criminal law cases, there are parties.  They're designated.

9   The party that brings the lawsuit is designated as the

10  plaintiff.  The party against whom the lawsuit is brought is

11  designated as the defendant.  And that just sort of helps

12  logistically in terms of titles.

13          In this particular case -- and I'm going to read you

14  a brief statement of the case in a little bit, but I'd like to

15  continue on with the introductions.  Frankly, I don't expect

16  you to remember all of our names, and when I read the witness

17  list, I don't expect you to remember all those names.  What I

18  am going to ask you to do, at least as I mention people's

19  names, if you happen to know anybody that I mention by name or

20  think you might know somebody that we mention by name, if

21  you're called up in the jury box, you might want to mention,

22  you know, I think I may know this particular person, and that

23  would help out.  We just need to know what your relationship,

24  if any, is with anyone who might be involved in the trial.

25          Now, this is the criminal law case, so the plaintiff

1   is designated -- we designate the plaintiff as the United

2   States or the Government, and representing the plaintiff's

3   side, the United States, are two attorneys, Assistant United

4   States Attorneys, Mr. Brian Enos and Miss Alyson Berg.  And

5   also seated at the table is the chief investigating officer is

6   Mr. Stigerts, who is seated with them.

7            On the defense side in this case, two attorneys, Ann

8   McGlenon, and Andras Farkas.  They are representing their

9   client, Mr. Ricky Davis.

10           Now, I'm going to next read to you the witness list.

11  Again, it's fairly lengthy.  Not all of these individuals

12  would necessarily be called, but it is important that both

13  parties think they might be called, so that if any of the

14  jurors might know any of these people, we need to know right

15  at the outset.

16           The witnesses who might be called in this case are:

17  Derek Stigerts, Mark Copeland, George Vasiliou,

18  V-A-S-I-L-I-O-U, William Schwartz, Wendy Hall, a minor female

19  by the name of Bianca; Nancy Patel, Steven Watson, James

20  Walsh, Jeff Morris, Adrienne Sparrow, Steve Dupree, Brian

21  Lippo, Spiro Stamos, Minerva Shelton, Anna Coakley, Chris

22  Pyryt, P-Y-R-Y-T; Pauline Carton, Janie Leger, Gabriela

23  Bentonce, B-E-N-T-O-C-E; Alan Schmidt, Bryan Armstrong, Marcus

24  Lawson, Eric Torres, Dulcie Camacho.

25           Okay, I'm now going to read you a statement of the

1   case.  I have asked the parties to prepare a brief statement.

2   It's not evidence of the case.  You don't consider it as

3   evidence.  The reason I'm going to read this statement to you

4   is twofold:

5           First, so you get some idea what the case is about.

6           Secondly, you'll understand why we're going to be

7   asking certain questions of you during this jury selection

8   process.

9           "This case involves allegations that in September,

10  2011, the defendant Ricky Davis, knowingly produced sexually

11  explicit images of a female minor in the Eastern District of

12  California and then attempted to traffic this minor for sex by

13  posting these images on a website for the purpose of

14  advertising her for prostitution.

15          "You'll be asked to decide two counts in the

16  indictment.  Count 1, alleges that the defendant knowingly

17  used, persuaded, induced, enticed, or coerced a minor, who

18  will be identified at trial as Bianca, to engage in sexually

19  explicit conduct for the purpose of producing a visual

20  depiction of such conduct within the above time frame.

21          "Count 2 alleges that the defendant knowingly

22  attempted to recruit, entice, harbor, transport, provide,

23  obtain, or maintain Bianca for a commercial sexual act -- sex

24  act.  Either knowing, or in reckless disregard of the fact

25  that Bianca had not yet attained the age of 18 years of age,

1  or alternatively, through force, fraud, or coercion.

2         "The defendant has entered a not guilty plea to each

3  of those charges.  The Government has the burden of proving

4  beyond a reasonable doubt each of the elements of the charges

5  contained in the indictment."

6         All right, at this time, I'm going to ask Miss

7  Gaumnitz to ask 18 of you to come forward in the jury box for

8  the beginning of the selection process.

9         THE CLERK:  Good morning.  If I mispronounce your

10 name, please do correct me so that we can pronounce it

11 correctly the next time.

12        Juror 0001.

13        THE COURT:  All right, Juror 0001, if you just come

14 on forward through the gates there.  And I'm going to ask you

15 to come all the way in front of this jury box to the very

16 front of the jury box and then go to the back row.  And then

17 go all the way back towards the audience area.

18        THE CLERK:  Juror 0002.

19        THE COURT:  And that will be seat number 1.

20        Okay, and, Juror 0002, if you can have a seat next to

21 Juror 0001.  That will be seat number 2.

22        THE CLERK:  Juror 0003.

23        Juror 0004.

24        Juror 0005.

25        Juror 0006.

1          Juror 0007.

2          THE COURT:  Okay, and, Juror 0007, as you come

3  forward, I'm going to ask you to start a new row, so just come

4  on all the way to the end of the box, and if you could start

5  off in that -- yeah, that row right there, all the way to the

6  audience area, and that will be seat number 7.

7          THE CLERK:  Juror 0008.

8          Juror 0009.

9          Juror 0010.

10         Juror 0011.

11         JUROR 0011:  That's Juror 0011.

12         THE CLERK:  Juror 0011, thank you.

13         Juror 0012.

14         JUROR 0012:  It's Juror 0012.

15         THE CLERK:  Juror 0012, thank you.

16         Juror 0013.  Did I get your last name correct?

17         JUROR 0013:  Yes.

18         THE COURT:  Juror 0013, I'm going to have you start a

19  new row.  See that row right in front of the jury box there.

20  If you can have a seat in the first seat.  Yes, that will be

21  seat number 13.

22         THE CLERK:  Juror 0014.

23         Juror 0015.

24         Juror 0016.

25         Juror 0017.

1          And Juror 0018.

2          THE COURT:  Now, for those of you jury panel members

3    who are still in the jury audience, you're still very much a

4    part of the jury selection process.  If any of the 18 who are

5    seated in the jury box now are excused, we would call up one

6    or more of you to take their place.  So although we're going

7    to focus in on the 18 in terms of questions and answers, what

8    I'd like you to do is pay close attention to the questions

9    that are asked.  I'll be asking you some questions.  After I'm

10   done, the lawyers will be asking you some questions.

11         As you're sitting in the audience there, think of

12   what your answer would be if you were actually sitting in the

13   jury box and then listen to the answers of your fellow

14   prospective jurors and then see if your answer would have been

15   any different, or if you would have wanted to say anything

16   more about it.

17         If you do that, that will help speed up the process

18   because if you're called to take any of the 18 individuals'

19   places, rather than have me reask all the questions all over

20   again, I can simply ask you if you heard and understood all

21   the questions that were asked previously, whether you formed

22   an answer in your own mind, and whether or not you were able

23   to hear and understand the answers given by your fellow

24   prospective jurors.  And then if there were any different

25   answers that you might have given, or something you would want

1  to say more about, that would be your opportunity.

2        Okay, so if you're not able to hear the questions

3  asked or the answers given, just speak up, and we'll make sure

4  we keep your voices up.  Okay?

5        All right, what I'm going to be doing, I'm going to

6  be asking you a number of questions, and then after I'm done,

7  the attorneys will have an opportunity to ask you a number of

8  questions.  The questions are not designed to embarrass you,

9  they're not designed to put you on the spot.  They're not

10  designed to argue with you about your own personal beliefs,

11  et cetera.  The purpose of the questions are really to get you

12  thinking in your own mind whether or not in this particular

13  case, you can be fair and impartial to both sides.  That is,

14  starting off in this case, you have an open mind, you're

15  willing to listen to all the evidence, you're willing to

16  listen to the jury instructions, and then at the end of the

17  case, that you are willing to render a verdict based strictly

18  on the evidence and the jury instructions and not something

19  from the outside.  Okay?

20        Now, we basically are looking for a juror and jury

21  that is fair and impartial, and no one -- none of the parties

22  here, the Court, we all believe basically that you're all fair

23  and impartial.  But we also recognize that every person that

24  comes in this courtroom comes in with your own life's

25  experiences which might affect how you view a particular case.

1          If, for example, this were a civil case, say, a

2    lawsuit involving a traffic collision, and you or a close

3    friend or family member were just involved in a traffic

4    collision this last week, maybe someone had to go to the

5    hospital, you had to talk to doctors, insurance, police

6    officers, et cetera, it might have concerned you such that

7    when you walk in this courtroom, and I say, okay, this is a

8    trial involving a traffic accident, you might be thinking, you

9    know, I can sit as a juror, but not a traffic collision case

10   based on, you know, my experiences last week or so.

11         Anyway, that's just an example of how your own life's

12   experiences might affect how you view a particular case.  So

13   I'll be asking you a number of questions.  I'll try to

14   indicate to you the categories, why I'm asking a particular

15   line of questions.  If I ask you a question, and you're not

16   sure what I'm asking you, just ask me to repeat or rephrase

17   it.  If I ask you a question and you prefer not to answer it

18   with all the panel members present, then when we take a break,

19   I excuse all the other jury panel members, and it's just the

20   parties and the Court.  You can respond at that time.

21         Okay, now, a couple of preliminary questions.  First,

22   I just read you a brief statement of the case, and that's

23   really all you know about it.  But do any of you, even from

24   just what I indicated to you, do you know anything about this

25   case at all?  Anybody know anything?  And I'm not saying there

1    is any reason why you should.

2            Okay, I'm sorry, yes, Juror 0011.

3            JUROR 0011:  Yes, Steve Dupree --

4            THE COURT:  Uh-huh.

5            JUROR 0011:  Is he an officer in Visalia?  There is a

6    Dupree, last name, officer in Visalia.  No?

7            MR. ENOS:  No.

8            THE COURT:  Good.  But thank you.  And there are

9    common names, so don't hesitate saying, okay, "I know a John

10   Smith, but I'm not sure if that's the same one," and we can

11   try to clarify it.  But if it is someone you know, then,

12   obviously it's something we need to explore.  But thank you

13   for mentioning it.

14           Anybody else?

15           Okay.  All right, now, let me just start off with one

16   really quick thing, which I'm sure you're all curious about,

17   is your length of service here.  I'm sure the jury

18   administrator told you that we are very limited in terms of

19   excusing people.  We do try to accommodate to a certain extent

20   your scheduling, if we possibly can, but ultimately, we're

21   dealing with a full jury and witnesses.  So that's a little

22   difficult.

23           If, for whatever reason, I do have to excuse you,

24   you'll just be on call for the next trial.  So hopefully

25   you'll be able to hang in there with us on this one.

1          The time estimate is still pretty much the same,

2     about six days or so.

3          MR. ENOS:  That's a conservative estimate,

4     Your Honor.  It wouldn't go any longer than that.

5          THE COURT:  All right.  So basically, in terms of the

6     length of the trial, you know, like if you go to a movie or

7     watch TV, you know it ends at a certain time frame.  Jury

8     trials are dynamic.  You know, legal issues might come up,

9     witnesses might take a little longer than was anticipated, so

10    it might be shorter than anticipated.  But the parties, their

11    best estimate is that the trial will last probably not more

12    than six days or so.

13         Now, the duration of the trial is, this week, it will

14    be Tuesday, Wednesday, and Thursday.  We will not hold court

15    on Friday, March the 20th.  There are other commitments,

16    unfortunately.

17         The following week, it would be Tuesday through

18    Friday, so that would be March 24th through the 27th.  That

19    would give us a total of seven days.  The parties think that

20    we might be able to get it done before then, but I just want

21    to make sure that if there are any scheduling issues between

22    the next three days, Tuesday, Wednesday, Thursday, and next

23    week, Tuesday through Friday, then I need to address that with

24    you.

25         So at this point, I'm going to ask Miss Gaumnitz to

1  go ahead and give you the handheld microphone, and if you do

2  respond, make sure you have the microphone in front of you.

3  But I'm going to start off in the back row.

4        Okay, any in the back row have any scheduling issues

5  that we need to take into account for the duration of the

6  trial?  Anybody in the back row?

7        Okay, how about -- well, I'm going to call you,

8  whether you're in the front row of the jury box, I'm going to

9  call you the middle row.  Anybody in the middle row have any

10  scheduling?

11        Okay, if we can pass the microphone down to Juror

12  0011.  Okay, yes.

13        JUROR 0011:  Yes, I'm an attorney.  I have a case in

14  Fresno Superior Court.  I have a hearing on Thursday at 3:30,

15  in department --

16        THE CLERK:  Press the button on the bottom.  You

17  turned it off.

18        JUROR 0011:  -- in Department 402 in front of Judge

19  Hamilton.  The tentative ruling is issued the day before at

20  3:00, and then the hearing is at 3:30.

21        THE COURT:  Okay, and that's fair.  Given the time

22  frame, is it possible for you -- either if the tentative

23  ruling is such that you don't have to make the appearance, or

24  it can be scheduled for a little bit later in the day, or

25  whatever, is that something you can work out with opposing

1  counsel and Judge Hamilton?

2      JUROR 0011:  I can try.  All I can do is submit that

3  request.

4      THE COURT:  Tell them you're a juror if he doesn't

5  excuse you.  He's a good guy.  I'm sure he will accommodate

6  you.

7      Okay, while she's doing that, if anyone else -- make

8  sure you speak up.  So anybody else in the middle row have any

9  scheduling matters that we need to take up?  Okay.

10      How about the front row?  Anyone in the front row?

11      Okay, yes, all right.  That's Juror 0018?

12      JUROR 0018:  Um-hmn.

13      THE COURT:  Yes.

14      JUROR 0018:  Yes.  I am a sales exec, and I have

15  meetings scheduled for next week in the Los Angeles area,

16  starting Wednesday at 9:00 AM -- thank you -- through Friday.

17      THE COURT:  And can those be rescheduled?

18      JUROR 0018:  I can try.  The meeting I had scheduled

19  for Wednesday morning, I've had since a month and a half.  I

20  work with law enforcement agencies, so I've got a training

21  scheduled with Department of Probation in Ventura County.

22      THE COURT:  When is that?

23      JUROR 0018:  Wednesday at 9:00 AM.

24      THE COURT:  Okay.  Now, that's -- okay, is that the

25  same Wednesday you're supposed to be in LA?

32

1          JUROR 0018:  Well, yes.  I'll be in Los Angeles

2     Thursday and Friday.

3          THE COURT:  Okay.  All right, so Wednesday is

4     training -- and I'm sorry, maybe I misunderstood.  You're in

5     sales, and you have meetings scheduled Wednesday, Thursday,

6     and Friday?

7          JUROR 0018:  Yes.

8          THE COURT:  Now, the one on Wednesday is a training

9     session?

10          JUROR 0018:  Yes, I have a training and meeting on

11     Wednesday.

12          THE COURT:  Okay, so you have two on Wednesday.

13          JUROR 0018:  Yes.

14          THE COURT:  And then Thursday and Friday, what are

15     they?

16          JUROR 0018:  Meetings.

17          THE COURT:  Okay.  All right.  Do you know -- and

18     maybe you need -- you might have to make contacts, but right

19     now, offhand, are those something that can be scheduled to the

20     following week or someplace some other time?

21          JUROR 0018:  I would do my best to try.

22          THE COURT:  Now, we will be taking a noon recess, so

23     if you're still on board and there is a situation, let me know

24     right away.

25          JUROR 0018:  Certainly.

1          THE COURT:  Anybody else?  Okay.

2          All right.  What I'm going to do next is, I'm going

3    to ask you some background information on yourself.  So what

4    I'm going to ask you to do, Juror 0018, if you can hand the

5    mike all the way back to Juror 0001, who is in seat number 1,

6    and we're just going to go right down the line, asking the

7    basic same questions of all of you.

8          These are the questions that I'm going to ask, and so

9    for the first three of you down to Juror 0003, I'm going to

10   ask the questions, even though you might remember, them

11   because everyone else is going to be thinking of the answers.

12         So, Juror 0004, by the time I get to you and

13   everybody else, I'm just going to ask you to give me the

14   background information, and this is what I'm going to be

15   asking:  First of all, I'm going to ask you where you live.  I

16   don't want a residence address.  I want a community.  Modesto,

17   Bakersfield, Lemoore, two miles outside of Fresno, whatever.

18   And the reason I ask the residence questions is sometimes

19   cases are location specific.  For example, a traffic collision

20   that might have occurred in your community, you drive by that

21   intersection every day.  We just need to know if you're

22   familiar at all with some area that might be involved in the

23   case.

24         All right, the next question, I'm -- and I'm going to

25   ask you a number of employment questions, both by you and

1   family members, and the reason for that is sometimes your

2   profession might be something that might have something to do

3   with the case.  If, for example, on my traffic collision

4   scenario, if the issue was what happened in the emergency

5   room, and you happen to be working in the medical field, maybe

6   in a hospital or in a doctor's setting, or whatever, or you

7   have some medical experience, we just need to explore that.

8          I'll be asking about family members, et cetera, the

9   same employment question, and similarly.  You may not be in a

10  medical arena, but your family members might.  Okay.

11         So these are the questions I'm going to be asking,

12  then, and I'll be asking about children.  On children, if

13  they're school-aged children, that's all I need to know.  You

14  have a son eight, a daughter six.  I'm more concerned if you

15  have adult-aged children who are working outside the home, and

16  that's simply the segue into the employment question.

17         And then any other adults living in your household

18  and then your educational background, the highest level of

19  formal education, or if you have a technical certificate, or

20  whatever, then you can respond that way.

21         If you're not currently employed outside the home,

22  but you had been employed previously, you're retired between

23  jobs, or whatever, you can just let us know what your last job

24  was.  If you have not worked outside the home, just let us

25  know that.  If you own your own business, you can basically

35

1    very briefly tell us what your business is.

2            Okay.  So I'm going to go ahead and go through these

3    questions individually, first, and then just ask you for your

4    responses.

5            So, Juror 0001, first let me ask you, where do you

6    live?

7            JUROR 0001:  Bakersfield.  Bakersfield.

8            THE COURT:  And do you work outside the home?

9            JUROR 0001:  Yes.

10           THE COURT:  Okay, what do you do?

11           JUROR 0001:  Counter sales.

12           THE COURT:  And who do you work for?

13           JUROR 0001:  Golden Empire Nuts and Bolts.

14           THE COURT:  How long have you worked for them?

15           JUROR 0001:  About 14 years.

16           THE COURT:  And your marital status?

17           JUROR 0001:  I am married.

18           THE COURT:  Does your wife work outside the home?

19           JUROR 0001:  My wife -- no.  My wife is a

20   stay-at-home.

21           THE COURT:  Okay.  And any children?

22           JUROR 0001:  I have no children.  All our children

23   are grown.

24           THE COURT:  Okay.  I'm going to ask you folks to keep

25   your voices up.

1          Now, those of you in the audience area, if you can't

2    hear the responses, speak up.  I'm going to ask you folks to

3    keep your voices up until we get the microphone working.

4          Okay, and then what do your children do?  If any of

5    them work outside the home, what is it that they do?

6          JUROR 0001:  Our oldest daughter, she is a biologist.

7    And our son is rehabilitating -- that's kind of what his

8    profession is right now.

9          THE COURT:  Okay.  Okay.  So he's undergoing

10   rehabilitation?

11         JUROR 0001:  Yeah, he's rehabilitating.

12         THE COURT:  Okay.  All right.  And any other adults

13   living in your household?

14         JUROR 0001:  No, sir.

15         THE COURT:  And by other adults, mother-in-law,

16   mother, roommates, significant other, whatever.  Okay.

17         And then your educational background?

18         JUROR 0001:  High school graduate.

19         THE COURT:  Okay, great.  Thank you, Juror 0001.  If

20   you can hand the microphone -- oh, we don't have a microphone.

21   Juror 0002, I'm going to ask you questions.  Please keep your

22   voice up.  First of all, where do you live?

23         JUROR 0002:  Bakersfield.

24         THE COURT:  Okay.  And do you work outside the home?

25         JUROR 0002:  Yes, I do.

1          THE COURT:  What do you do?

2          JUROR 0002:  I'm self-employed.  I have two

3  businesses.  One, we work with kids with developmental

4  disabilities to teach them work skills, and other one, I'm

5  also a personal fitness trainer.

6          THE COURT:  Okay.  Are they both in private business,

7  or do they work for government?

8          JUROR 0002:  Business with the -- the business

9  working with the kids with the developmental disabilities is

10  funded by the state in a roundabout way.  It comes through the

11  regional centers.

12          THE COURT:  Okay, good.  Any other adults living in

13  your household?

14          JUROR 0002:  No.

15          THE COURT:  And then your educational background?

16          JUROR 0002:  I have a bachelor's degree in

17  psychology, and I completed my master's course work for

18  research psychology.  I'm just short of the thesis.

19          THE COURT:  Oh, okay.  Does your job entail

20  background, your educational background?

21          JUROR 0002:  Someway.

22          THE COURT:  How does it do that?

23          JUROR 0002:  Just the kids that we get, a lot of the

24  kids that we get in the program have had some rough times in

25  their lives, and so I have an opportunity to sit and talk with

1    them.  So there's certain aspects that come into play.

2           THE COURT:  Okay, great.  Thank you very much.  Pass

3    the microphone down to Juror 0003.  Okay, Juror 0003, first

4    where do you live?

5           JUROR 0003:  I live west of Fresno, Fresno County.

6    Kearney Park area.

7           THE COURT:  All right.  And do you work outside the

8    home?

9           JUROR 0003:  No.

10          THE COURT:  Have you in the past five years or so?

11          JUROR 0003:  No.

12          THE COURT:  Your marital status.

13          JUROR 0003:  Married.

14          THE COURT:  Does your husband work outside the home?

15          JUROR 0003:  We farm.

16          THE COURT:  Okay.  So you both farm together?

17          JUROR 0003:  Yes.

18          THE COURT:  Children?

19          JUROR 0003:  Yes, two.

20          THE COURT:  Adult or school-aged?

21          JUROR 0003:  Adult.

22          THE COURT:  Do they work outside the home?

23          JUROR 0003:  Yes, they do.

24          THE COURT:  What do they do?

25          JUROR 0003:  One daughter works in this building in

1    the Clerk's office.  Another one works at Channel 47.

2         THE COURT:  Okay.  And what does that child do at

3    Channel 47?

4         JUROR 0003:  She's -- does media traffic.  She's in

5    the business department.

6         THE COURT:  Okay.  Does she do any investigation or

7    reporting?

8         JUROR 0003:  No.

9         THE COURT:  Okay.  Okay, great.  Okay.  And any other

10   adults living in your household?

11        JUROR 0003:  No.

12        THE COURT:  And your educational background?

13        JUROR 0003:  Two years at City College.

14        THE COURT:  Did you have an emphasis or major there?

15        JUROR 0003:  No.

16        THE COURT:  Okay, good.  All right, if you can pass

17   the microphone down, and then, Juror 0004, if you can give us

18   some background information on yourself.

19        JUROR 0004:  I live in Tulare.  Okay.  I've been

20   thinking about all the questions, and I forgot them all.

21        THE COURT:  That's fine.  That's okay.  I'm just

22   going to go through them with you because I'm sure half the

23   people have forgotten too.

24        The next question is do you work outside the home?

25        JUROR 0004:  Yes, I do.

1           THE COURT:  What do you do?

2           JUROR 0004:  Dairy construction.

3           THE COURT:  Do you work in your own business, or do

4   you work for a company?

5           JUROR 0004:  I work for a family-owned business.

6           THE COURT:  And your marital status?

7           JUROR 0004:  Yes, I am.  I'm married.

8           THE COURT:  Does your wife work outside the home?

9           JUROR 0004:  She's a temporary -- temp service.

10          THE COURT:  Okay.  And what line?

11          JUROR 0004:  She does all kinds of different things.

12  She works in a packing house, she works in grocery stores,

13  stuff like that.

14          THE COURT:  Okay, great.  Any children?

15          JUROR 0004:  One.

16          THE COURT:  Adult?

17          JUROR 0004:  Sixteen-year-old boy.

18          THE COURT:  Okay, great.  Any other adults living in

19  your household?

20          JUROR 0004:  No.

21          THE COURT:  And your educational background?

22          JUROR 0004:  High school.

23          THE COURT:  Great.  Thank you very much.  And then if

24  you can pass the mike down to Juror 0005.

25          JUROR 0005:  Hi.  I'm self-employed.  My husband and

41

1    spouse is employed in that, along with our son-in-law and

2    daughter.  It's a swimming pool business.  I'm from Tulare.

3    We also sell firearms.  My background, I'm a high school

4    graduate.  We have five children.  So we have two in ministry.

5    We have two in computing, and one is a stay-at-home mom.

6              THE COURT:  Okay, great.  Any other adults in your

7    household?

8              JUROR 0005:  No.

9              THE COURT:  Thank you very much.  If you can pass the

10   microphone down to Juror 0006.

11             JUROR 0006:  I'm from Porterville, California.  I

12   mean -- and I work at Wal-Mart Distribution Center.  It's a

13   warehouse.  I'm an order filler.  Been doing that for like

14   nine years.  And I went to college for a little bit, and I

15   have an AA degree.  And I'm single, no kids, and my dad lives

16   with me.

17             THE COURT:  Does your dad work outside the home?

18             JUROR 0006:  Yeah, he works outside the home.

19             THE COURT:  What does he do?

20             JUROR 0006:  He works at a casino, Eagle Mountain.

21             THE COURT:  Yes.  What does he do there?

22             JUROR 0006:  He does auditing.  That's what he does.

23             THE COURT:  Okay, great.  And did you have an

24   emphasis or major when you were in college?

25             JUROR 0006:  No, I just got my AA degree, just

1   liberal arts.  I just couldn't decide what I wanted to do, and
2   I got my job with Wal-Mart, and I've been doing that for a
3   while.
4           THE COURT:  How long have you been with Wal-Mart?
5           JUROR 0006:  Nine years.
6           THE COURT:  Oh, that's right.
7           Juror 0006:  And a month or two.  Nine years and a
8   month or two.
9           THE COURT:  Great.  Perfect.  Thank you very much.
10          And then I'm going to have you pass the mike down to
11  the row in front of you, and we'll go all the way over to the
12  far end there.
13          Juror 0007, if you can give us some background
14  information on yourself.
15          JUROR 0007:  Of course.  I live in Turlock,
16  California.  I practice behavioral pediatrics, working with
17  all kinds of children with disability, autism, ADD, ADHD.  I
18  own my own clinic, Genesis Behavior Center.  And we are also
19  getting ready to launch a new behavioral company called First
20  Path, which is a digital on-line training for parents and
21  professionals in the field of behavioralism.  So my practice
22  is behavioralism.  As a behaviorist, I look at the function of
23  behaviors, just to give a little bit, because not very many
24  people have knowledge about behavioralism.
25          And I have two daughters.  One, she's 25.  She's out

1   of home.  Megan, she's 18.  She is -- she goes to Modesto

2   Christian School.  She's still in high school.  And that is

3   it.

4           THE COURT:  Does your older daughter live outside --

5   does she work outside the home?

6           JUROR 0007:  She does some billing for my company.

7   She lives outside the home, yes.

8           THE COURT:  Great.  And your educational background

9   was --

10          JUROR 0007:  I completed a doctorate program in

11  psychology.

12          THE COURT:  Great.  Thank you very much.

13          Pass mike down to Juror 0008.

14          JUROR 0008:  I live in Calaveras County.  I work --

15  my husband -- I am married.  My husband is trying to get

16  employment in Southern California, so he's traveling.  We

17  farm, we have some livestock on our property.  I also work

18  part time for the Humane Society as an executive director.

19  And we have no children.  And I have a bachelor in human

20  nutrition actually.

21          THE COURT:  Oh, good.  Thank you very much.  And,

22  Juror 0009.

23          JUROR 0009:  I live in Atwater.  I'm a middle school

24  principal, Salida Middle School by Modesto.  I have a BA in

25  history.  I have an MA in Educational Administration.  I have

1     three children.  Two boys are out of the house, and my

2     daughter is a junior in high school, and she's still at home.

3     My wife is a stay at home mom.

4              THE COURT:  The two children that are out of the

5     home, do they work outside of the home?

6              JUROR 0009:  My oldest is autistic, and he's in a

7     group home here in Fresno.  My middle son is going to college,

8     and he works as a weighmaster for Gallo cheese.

9              THE COURT:  Does he have a major or emphasis right

10    now?

11             JUROR 0009:  Accounting, business.

12             THE COURT:  Okay, great.  Good.  Thank you very much.

13    And, Juror 0010.

14             JUROR 0010:  I'm from Bakersfield.  I work for the

15    Kern High School District.  I'm a special education teacher

16    and also coach football in the high school district as well.

17    My wife is also an employee at the Kern High District.  She

18    teaches English.  I have two school-aged boys, five and eight.

19             THE COURT:  And then your educational background.

20             JUROR 0010:  I have a bachelor's degree in public

21    policy and administration.

22             THE COURT:  Any other adults living in your

23    household?

24             JUROR 0010:  No.

25             THE COURT:  Thank you very much.  And Juror 0011.

1          JUROR 0011:  Yes, I'm from Visalia.  I'm married.  My

2     wife is a nurse.  She works in Hanford.  I have two

3     school-aged children, a daughter and a son.  I'm

4     self-employed, sole practitioner and an attorney.  I've been

5     doing it for about 20 years.  I have a mixed practice at this

6     point.  I have a bachelor's in social science and a juris

7     doctor from University of Santa Clara.

8          THE COURT:  Okay, good.  Without prying too much, do

9     you do any criminal law practice?

10          JUROR 0011:  I do.  I started out in the Public

11     Defender's Office in Tulare County.  I did that for about two

12     years, and then I returned, did juvenile defense in Tulare

13     County, and then I also have a contract with the CWS court

14     where I represented parents when they were accused and had

15     their kids taken away.  And I did that for a number of years.

16     I currently still do occasionally criminal defense.

17          THE COURT:  Great.  Okay, good.  Thank you very much.

18          Okay, Juror 0012.

19          JUROR 0012:  I live in Turlock.  I am not currently

20     employed.  I have a one-year old son.  I worked before he was

21     born.  I don't know how much, I've worked a number of jobs.  I

22     don't know how much detail you want.

23          THE COURT:  Last couple of jobs maybe.

24          JUROR 0012:  I was a personal assistant for an

25     accountant.  For a year before my son was born, I worked at a

1   grocery store as a produce manager.  Before that, I was an

2   advisor at a university before that.  My husband works

3   construction.  They do mostly residential work, and I have a

4   bachelor's degree in physics.

5           THE COURT:  Great.  Good.  Thank you very much.

6           Okay, we'll pass the microphone down.  We'll go all

7   the way to the end to Juror 0013 at the end.

8           JUROR 0013:  I live in Turlock.  And I work for

9   Wal-Mart.  I've been working for the last 15 years with

10  Wal-Mart.  I have two kids.  My son, he's a last-year high

11  school, and my daughter, she's in junior high, eighth grade.

12  And my husband, he's self-employed.  He owns a grocery store.

13  And that's it.

14          THE COURT:  Okay.  Good.  Great.  Thank you very

15  much.  All right, and Juror 0014.

16          JUROR 0014:  I live in Coalinga.  I'm currently

17  employed with Adventist Health in Hanford.  I'm a student at

18  Fresno State.  Double major in biology and nutrition, and I

19  don't have any kids.  I'm not married.

20          THE COURT:  All right.  And any other adults in your

21  household?

22          JUROR 0014:  My mom and dad.

23          THE COURT:  Do they work outside the home?

24          JUROR 0014:  Yes, they do.

25          THE COURT:  What do they do?

1          JUROR 0014:  My father, he works as a farm laborer,

2     and my mom is actually a homemaker.

3          THE COURT:  Thank you very much.  And, Juror 0015?

4          JUROR 0015:  I live in Clovis.  I am a day care

5     teacher.  I also work in literacy intervention as also a

6     literacy instructor.

7          I graduated with my BA in liberal arts.  There are a

8     total of four other adults living with me.  My parents.  My

9     dad is a social worker for Fresno County.  My mom is a

10    Headstart teacher.  My sister is a philosophy major.  She's

11    still going to school.  My little brother is a kinesiology

12    major, still going to school.  And my youngest brother is an

13    environmental engineer.  He tests water for pH levels and

14    such.

15         THE COURT:  Great.  Thank you.

16         Juror 0016.

17         JUROR 0016:  Okay, I'm from Visalia.  I work for the

18    Conair Company for 34 years.  I'm married.  I have three sons,

19    ages 30, 26, and 23.  My oldest son lives in Rhode Island, and

20    he's a quality manager for a food processing plant.  My middle

21    son is a surgical RN tech for a local hospital.  And my

22    youngest son works for an electrical company building

23    transformers.  My wife and I are also foster parents.  We have

24    two foster kids in our home.  We've been doing it for about

25    four years.  Ages 8 and 15.

1          My education is just high school and a certified

2     welder.

3          THE COURT:  Okay, good.  Thank you very much.

4          All right, and, Juror 0017.

5          JUROR 0017:  Yes, I live in Clovis, California with

6     my husband who is a retired firefighter, and we now work in

7     our home as travel agents.  I have one son who is 30.  He has

8     decided to be homeless.  He's bipolar.  And we are raising his

9     daughter, seven-year-old daughter.  And I'm a high school

10    graduate.

11         THE COURT:  Okay, good.

12         And, Juror 0018.

13         JUROR 0018:  I am from Visalia.  I have -- I am

14    divorced.  I have two sons, 18 and 23.  My 18-year old is a

15    high school student senior.  My 23-year old is living in

16    Los Angeles.  He is working for a lighting company.  There are

17    no other adults in the home.  I have a high school degree.  I

18    work for a company called BI, a GR Group Company.  I have been

19    in sales for almost two years.  Before that, I worked for BI

20    as a program manager for electronic monitoring programs and

21    the day reporting program.  I've been with BI for almost 15

22    years.

23         THE COURT:  Now, you had mentioned something earlier,

24    next Wednesday you had a training session.  Seemed like it had

25    something to do with law enforcement or probation or

1    something?

2           JUROR 0018:  We have -- it's a private company that

3    has contracts with the state and counties and federal as well.

4    And my job is to meet with the departments and make sure they

5    know how to utilize the equipment.  Its training its customer

6    service assisting with sales.  We work in teams of two.  I

7    have the west coast territory, and my partner is currently on

8    leave.  He just had a baby, so I'm covering for him as well.

9           THE COURT:  So you're not training to be a law

10   enforcement officer, you're training to get the background

11   information?

12          JUROR 0018:  Right.  I'm working with the officers,

13   but not training to be a law enforcement officer.

14          THE COURT:  Okay.  Okay.  Great, thank you.

15          Okay, all right, the next area I'm going to cover

16   really relates to what experience, if at all, you've had with

17   the court system, the legal system, et cetera.  I'll be

18   focusing in on a couple specific areas.  First of all, if

19   you've ever served as a juror before, and the next area is if

20   you've ever been a party to or a witness to any legal

21   proceedings.  And then third, is sort of a catchall.  If you

22   have any other experience, exposure or otherwise, to the legal

23   system, the court system, et cetera.  That would be the

24   opportunity for you to let us know.

25          You don't have to repeat anything you've already

1  explained to us, but certainly, this is a chance to add on to

2  that.

3         So I'm going to start off -- yeah, we can start off

4  in the front row since the microphone is there, and I'm going

5  to ask those of you in the front row, have you ever served as

6  a juror before.  If you have, raise your hand.

7         Okay, three of you have.  So why don't we pass the

8  microphone down to Juror 0017 first.

9         Okay, now, when you're called to serve as a juror,

10  you're going to serve in one or two types of cases.  One is a

11  criminal law case where you're asked to find whether someone

12  is guilty or not guilty of certain crime or crimes.

13         The other civil cases where you're usually asked,

14  someone is suing someone usually for money damages.  It could

15  be a traffic accident.  It could be a breach of contract,

16  whatever, et cetera.  So with that little bit of background,

17  Juror 0017, how many times have you served as a juror?  One

18  time?

19         Okay.  Was it a criminal law case or civil?

20         JUROR 0017:  It was civil.

21         THE COURT:  Okay.  Do you remember what kind of a

22  case it was?

23         JUROR 0017:  Yeah, it was one guy wanting to sue

24  another guy because his property was floating over to his

25  property.  It was that kind of a thing.

1            THE COURT:  Okay, great.  How long ago was that?

2            JUROR 0017:  Years ago.

3            THE COURT:  Okay, all right.  Okay.  Was a verdict

4    reached in that case?

5            JUROR 0017:  Yes.

6            THE COURT:  Was there anything about that experience,

7    anything the judge did, the parties, the lawyers, anything

8    during jury deliberations that cause you some concern that

9    would affect your service as a juror here today?

10           JUROR 0017:  No.

11           THE COURT:  Now, whatever you might remember about

12   that case, you have to totally disregard for this case.  Both

13   factually, and the law is very different on civil cases as

14   opposed to criminal law case.  Are you okay with that?

15           JUROR 0017:  That's fine.

16           THE COURT:  Okay, great.  If you can pass the

17   microphone down.  See, Juror 0016, how many times have you

18   served as a juror?

19           JUROR 0016:  Once.

20           THE COURT:  Criminal or civil.

21           JUROR 0016:  It was criminal.

22           THE COURT:  Do you remember what kind of a case it

23   was?

24           JUROR 0016:  It was an assault case.

25           THE COURT:  Was a verdict reached in that case?

1          JUROR 0016:  Yes, it was.

2          THE COURT:  Anything about that experience that would

3     affect your service as a juror here today?

4          JUROR 0016:  No.

5          THE COURT:  How long ago was that case?

6          JUROR 0016:  It was about six years ago.

7          THE COURT:  Whatever you might remember about that

8     case, including maybe some of the jury instructions, you have

9     to totally disregard for the purpose of this case.  Are you

10    okay with that?

11         JUROR 0016:  Yes.

12         THE COURT:  Okay, thank you.  And there was one other

13    person that served as a juror.

14         Okay, yes, Juror 0014.  Was it criminal or civil.

15         JUROR 0014:  Civil.

16         THE COURT:  How many cases have you served on?

17         JUROR 0014:  Once.

18         THE COURT:  How long ago was that case?

19         JUROR 0014:  About six or eight years ago.

20         THE COURT:  Do you remember what kind of a case it

21    was?

22         JUROR 0014:  It was an accident, and they were suing

23    for damages.

24         THE COURT:  All right.  Was a verdict reached?

25         JUROR 0014:  Yes.

53

1          THE COURT:  Anything about that case that would spill
2   over and affect your service as a juror here today?
3          JUROR 0014:  No.
4          THE COURT:  Okay.  Can you totally disregard whatever
5   you might remember about that case for the purposes of this
6   case?
7          JUROR 0014:  Yes.
8          THE COURT:  Great.  Thank you.
9          Okay, anybody else in the front row that I missed?
10          Let's pass the mike to the next row above you.  If
11   any of you have ever served as a juror before, if you would
12   just raise your hand.
13          Okay, three of you have.  So we'll start off with,
14   Juror 0007, how many times have you served as a juror?
15          JUROR 0007:  I have served -- I have served twice.
16   Twice on the jury.  One, it was a Workers' Comp case.  It was
17   approximately 10 years ago.  And another one was about nine
18   years ago.  They were both civil.  It was a discrimination
19   case, university versus a coach.  And I was the foreman on
20   that case.
21          THE COURT:  Okay, and were verdicts reached in both
22   cases?
23          JUROR 0007:  Yes.
24          THE COURT:  Anything about either one of those
25   experiences that would spill over and affect your service as a

1    juror here today?

2              JUROR 0007:  No.

3              THE COURT:  And can you totally disregard what you

4    might remember about those cases for the purpose of this case

5    here?

6              JUROR 0007:  Yes.

7              THE COURT:  Thank you very much.

8              All right, pass the mike down, and let's see, Juror

9    0009.  Okay, how many times have you served as a juror?

10             JUROR 0009:  One time.

11             THE COURT:  Okay, criminal, civil?

12             JUROR 0009:  Criminal.

13             THE COURT:  Do you remember what kind of a case it

14   was?

15             JUROR 0009:  It was a robbery.

16             THE COURT:  Okay.  How long ago?

17             JUROR 0009:  I'm guessing 30 years ago.

18             THE COURT:  Was a verdict reached in that case?

19             JUROR 0009:  Yeah.

20             THE COURT:  Anything about that case that would

21   affect your service as a juror here today?

22             JUROR 0009:  No.

23             THE COURT:  Can you totally disregard whatever you

24   might remember about it?

25             JUROR 0009:  I think I forgot most of it.

1          THE COURT:  Great.  Perfect.  Thank you.

2          All right, and Juror 0010.

3          JUROR 0010:  Twice as a juror, both criminal.  One

4    was a drug transportation, and the other one was an assault

5    case.

6          THE COURT:  Were verdicts reached?

7          JUROR 0010:  Yes, they were.

8          THE COURT:  Anything about either one of those

9    experiences that would affect your service as a juror here

10   today?

11         JUROR 0010:  No.

12         THE COURT:  Can you totally disregard what you might

13   remember about those cases for this case here?

14         JUROR 0010:  Yes.

15         THE COURT:  Thank you.

16         Anybody else in the middle row that we missed?

17         If we can pass the mike up to the back row, then.

18   Have any of you in the back row ever served as a juror before?

19   Just raise your hand.

20         Okay, a couple of you have, so we'll pass the mike

21   down to Juror 0004.  And how many times?

22         JUROR 0004:  Once.

23         THE COURT:  Criminal or civil?

24         JUROR 0004:  Criminal.

25         THE COURT:  Do you remember what kind of a case it

1    was?

2              JUROR 0004:  Yeah.  It was a frauded check.

3              THE COURT:  How long ago was that?

4              JUROR 0004:  Twelve years ago probably.

5              THE COURT:  Was a verdict reached?

6              JUROR 0004:  It was.

7              THE COURT:  Okay, anything about that experience that

8    would affect your service as a juror?

9              JUROR 0004:  No.

10             THE COURT:  And you can totally disregard what you

11   might remember about that case?

12             JUROR 0004:  Yes.

13             THE COURT:  Thank you very much.

14             Okay, and then we had one other person, I think?

15             JUROR 0005:  Yes.  Mine was criminal.  I've only

16   served once.

17             THE COURT:  Okay.

18             JUROR 0005:  And it was trespassing, and a verdict

19   was reached.  It's been probably 12 to 15 years ago.

20             THE COURT:  Okay.  And you can totally disregard --

21             JUROR 0005:  Yes.

22             THE COURT:  And that won't affect your service as a

23   juror here today?

24             (Juror 0005 shakes head.)

25             THE COURT:  Anybody else?

1              Okay, Juror 0006.

2              JUROR 0006:  Yes, I've been in three juries before.

3              THE COURT:  Okay.

4              JUROR 0006:  It's been like -- one like a year, year

5    and a half ago, and one about five years ago.

6              THE COURT:  Okay.  Do you remember what kinds of

7    cases?

8              JUROR 0006:  One was like a speeding one, like

9    speeding across the town.  And the other one was just this guy

10   carrying a stick.  It was like a weapon or something, like a

11   tree branch or something.

12             THE COURT:  Were verdicts reached in both of those

13   cases?

14             JUROR 0006:  Yes.

15             THE COURT:  Okay.  Anything about either one of those

16   experiences that would affect your service as a juror here

17   today?

18             JUROR 0006:  Oh, no.

19             THE COURT:  And you can disregard whatever you might

20   remember about those cases for the purpose of this case.  Are

21   you okay with that?

22             JUROR 0006:  Yes.

23             THE COURT:  Anybody else on that?

24             Okay, the next area is whether or not you've ever

25   been a party to, or a witness to, any legal proceedings.  You

1  might have brought a lawsuit.  There might have been a lawsuit

2  brought against you.  Sometimes in your occupation, you wind

3  up being dragged into a lawsuit.  You might have been a

4  witness to something, a traffic collision, or whatever.  Small

5  claims case, traffic ticket that you went in and contested,

6  et cetera.

7          So let me start in the back row.  Have any of you

8  ever been a party to or a witness to any of the legal

9  proceedings?  Anybody in the back row.

10          Okay, one person.  If we can pass the mike down to

11  Juror 0002.

12          Okay, and were you a party or a witness?

13          JUROR 0002:  I prefer to discuss that with --

14          THE COURT:  Oh, okay, so we'll pass on that for now.

15          Anybody else in the back row?

16          All right, how about the middle row?  Any of you ever

17  been a party to -- okay, we'll go ahead and start off with

18  Juror 0007.

19          JUROR 0007:  We have a case in our company that it's

20  an unemployment lawsuit.

21          THE COURT:  Is it still pending?

22          JUROR 0007:  It's pending.

23          THE COURT:  Okay, have you had your deposition taken

24  on that?

25          JUROR 0007:  Yes.

1          THE COURT:  Anything about that experience that would

2     affect your service as a juror?

3          JUROR 0007:  No.

4          THE COURT:  Anything the lawyers did, or anything

5     else?

6          JUROR 0007:  No.

7          THE COURT:  You're okay with that.

8          Okay, and that would not affect your service as a

9     juror here today?

10          JUROR 0007:  No.

11          THE COURT:  Thank you very much, and then, Juror

12     0008.

13          JUROR 0008:  I actually -- there was a break-in in my

14     house probably about 20 years, 25 years ago, and I actually

15     walked in on the break-in.  So that did go to trial.

16          THE COURT:  And you --

17          JUROR 0008:  And also my husband and I have been sued

18     on real estate by our neighbors.  They sued us and the county

19     in Calaveras.

20          THE COURT:  Okay.  Did that get resolved?

21          JUROR 0008:  Both of them were resolved, yes.

22          THE COURT:  Anything about any one of those

23     experiences that would affect your service as a juror here

24     today.

25          JUROR 0008:  I would try hard not to, but I admit, I

1    don't like being in court, particularly when I've been dragged
2    into it.
3            THE COURT:  And now one of them, the criminal law
4    case, you testified in front of a jury; is that correct?
5            JUROR 0008:  Correct.
6            THE COURT:  How long ago was that?
7            JUROR 0008:  That was about 25 years ago.
8            THE COURT:  And then that other civil lawsuit, how
9    long ago was that?
10           JUROR 0008:  That was finally resolved
11   approximately -- I'd say 10 or 11 years ago.
12           THE COURT:  Okay, all right.  And did it actually get
13   into the courtroom?
14           JUROR 0008:  Correct, yes.
15           THE COURT:  So there was actually a trial on that?
16           JUROR 0008:  Um-hmn.
17           THE COURT:  Was there a jury involved?
18           JUROR 0008:  That was not a jury trial.
19           THE COURT:  That was a bench trial.  All right.
20           Now, this is a totally different situation.  You're
21   the decision maker in this particular case, and the parties
22   are now presenting their case to you so it's a very different
23   dynamic.  Obviously, the bottom line question to all of you or
24   the thing you have to resolve is based upon your own life's
25   experiences, would you not be fair and impartial to both

1    sides.  So that's the bottom line inquiry.  So both Juror 0008

2    and anyone else, as you're thinking about the questions that

3    were asked and maybe some of the questions that weren't even

4    asked, that you have any thoughts, you might let us know.

5         But, Juror 0008, do you think based on your own prior

6    experiences, that you would not be able to be -- and it's sort

7    of a harsh word, but fair and impartial to both sides?

8         JUROR 0008:  I have actually some personal

9    experiences that I would have some problems with, yes.

10        THE COURT:  Is that something you can disclose here?

11        JUROR 0008:  Yes.

12        THE COURT:  If you can let us know.  Is it something

13   that you can just mention very briefly to us?

14        JUROR 0008:  Yes, my first husband actually -- I'm

15   divorced from him now.  He actually -- I would say is a sex

16   addict and went through counseling for it and had serious

17   trouble with pornography and prostitutes, which is what caused

18   our divorce.

19        THE COURT:  Did any of those ever wind up in court?

20        JUROR 0008:  No, not that.

21        THE COURT:  And then how long ago was that, as far as

22   your involvement or your understanding of what was happening?

23        JUROR 0008:  We were divorced in 1991, I believe.

24        THE COURT:  Okay.  All right.  Now, basically -- and

25   I'm going to go some through more detail.  I want you to keep

1    that in mind, and if at some point in time, you say stop, wait

2    a minute, I'm basically fair and impartial, but based on my

3    own life's experiences, this is not the case for me.  You can

4    say that now, or I'm going to be asking you a number of

5    questions regarding the kind of case that this is.  But at any

6    point in time -- and this applies to any juror.  You can say,

7    "Stop," I need to tell you something that would cause me to

8    have a problem being a juror in this particular kind of case."

9    Let me know, and then we can pursue it.  All right.  Okay.

10           Anybody else in the middle row?

11           Okay, yes, Juror 0011.

12           JUROR 0011:  Yes, I was a witness in a civil case in

13   which I was also one of the attorneys, but was called to the

14   stand and was a witness and had to testify.

15           THE COURT:  Anything about those experiences that

16   would affect your service as a juror here today?

17           JUROR 0011:  No.

18           THE COURT:  Great.  Perfect.

19           There were a couple of folks in the back row.  We'll

20   go back up to Juror 0005 and Juror 0003, so if you can pass

21   the microphone back up to Juror 0003.

22           JUROR 0003:  We had a Workers' Compensation -- an

23   employee of ours was killed in our company vehicle.

24           THE COURT:  Okay,  did that actually get in the

25   courtroom, or was that resolved?

1          JUROR 0003:  No, it didn't get in the courtroom.

2          THE COURT:  Did you ever have your deposition taken,

3    that is, testifying under oath maybe about your knowledge or

4    anything?

5          JUROR 0003:  No, I didn't.  My husband did.

6          THE COURT:  Anything about that experience that would

7    affect your service as a juror here today?

8          JUROR 0003:  I don't think so, no.

9          THE COURT:  Okay, great.  Thank you.

10         And then, Juror 0005, you also.

11         JUROR 0005:  Mine is probably not being able to be

12   very fair because a child was molested, so it was my sister.

13   So I don't feel I can be fair whatsoever on this.

14         THE COURT:  All right, and that's understandable.

15   And I can ask for an inquiry, otherwise, I'll just go ahead

16   and excuse Juror 0005.  Are you okay with that?

17         MR. ENOS:  Yes.

18         MS. McGLENON:  I would agree.

19         MR. ENOS:  Agree, Your Honor.

20         THE COURT:  And, Juror 0005 -- and anybody I excuse,

21   if you need to go down to the jury administrator to get a note

22   as evidence you were here, if you have any follow-up

23   questions, you can go downstairs.  Otherwise, just call that

24   800 number after 5:00 on Friday to see if there's another

25   assignment.  I appreciate that.  Thank you very much for

1    letting us know right away.

2            All right, and what I'm going to do is, I'm going to

3    ask Miss Gaumnitz to call one of you in the audience area to

4    take that seat.

5            THE CLERK:  Juror 0019.

6            THE COURT:  Okay, Juror 0019 -- well, let me get you

7    up to speed with everyone else.  I've been asking a specific

8    question, and I'll just cover them with you.  First of all, do

9    you know anything about this case?

10           JUROR 0019:  No.

11           THE COURT:  Do you know anybody I've mentioned by

12   name so far?

13           JUROR 0019:  No.

14           THE COURT:  Okay.  Can you give us some background

15   information on yourself?

16           JUROR 0019:  I work in a law office.  We do civil

17   litigation, mostly car accidents, medical malpractice.  I have

18   a son, and he's six.  And I'm currently going to school to get

19   my paralegal certificate.

20           THE COURT:  Perfect.  Good.  All right.  And any

21   other adults living in your household?

22           JUROR 0019:  No.

23           THE COURT:  Anything scheduling-wise that we need to

24   address?

25           JUROR 0019:  No.

1          THE COURT:  Okay, good.  Have you ever served as a

2    juror before?

3          JUROR 0019:  No.

4          THE COURT:  And now we're back to a party to, a

5    witness to, any legal proceeding.  Anybody in the back row

6    that we didn't get a chance to follow up on?

7          We're, now going to go to the front row.  Will you

8    pass the microphone all the way to the front row -- oh, I'm

9    sorry, yes.  Going back to Juror 0008.

10         JUROR 0008:  I think I must have misunderstood you

11   because I don't feel I can be partial towards this gentleman

12   either.  Excuse me.

13         THE COURT:  It's not working.

14         JUROR 0008:  I apologize.  Given my background, I

15   honestly don't.  And I don't want to hold up the proceedings.

16   I thought you were going to ask us later also.

17         THE COURT:  All right.  And that's understandable

18   based upon both -- you indicated you had two court experiences

19   yourself, and also --

20         JUROR 0008:  Mostly my husband's and my religious

21   beliefs, which are quite strong also.

22         THE COURT:  In addition to that.

23         JUROR 0008:  Yes.

24         THE COURT:  All right, any inquiry, either side?

25         MS. McGLENON:  No, Your Honor.

1          MR. ENOS:  No, Your Honor.

2          THE COURT:  You're excused from this particular case.

3    I appreciate that.  Thank you.  And, again, check back with

4    the jury clerk if you need to.  Otherwise, call that 800

5    number after 5:00 on Friday.

6          Okay, we'll go ahead and fill that seat.

7          THE CLERK:  Juror 0020.

8          THE COURT:  All right.  All right, Juror 0020, why

9    don't you grab that microphone.  Let me get you up to speed

10   with everyone else.

11         JUROR 0020:  Hello.

12         THE COURT:  Do you know anything about this case?

13         JUROR 0020:  No, I do not.

14         THE COURT:  Do you know anybody I mentioned by name

15   so far?

16         JUROR 0020:  No, I do not.

17         THE COURT:  Can you give us some background,

18   information on yourself?

19         JUROR 0020:  Yes, I am a marketing manager for an

20   insurance company.  I live in Merced.  My wife is retired.

21   And we have three daughters.  They're not in the household.

22   One is in Miramar teaching English.  The other one is -- what

23   is she?  Project manager for Apple.  And the third one is --

24   she works for Tuolumne County with the CPS Department.  And we

25   have two grandkids.

1          THE COURT:  CPS, Child Protective Services?

2          JUROR 0020:  Yes.

3          THE COURT:  And your wife before she retired, what

4     was she doing?

5          JUROR 0020:  She was a librarian for the County of

6     Merced.

7          THE COURT:  And then your educational background is?

8          JUROR 0020:  I have a BA in English.

9          THE COURT:  Okay.  Any scheduling issues that we need

10    to address?

11         JUROR 0020:  No.

12         THE COURT:  Have you ever served as a juror before?

13         JUROR 0020:  Yes, I have.

14         THE COURT:  How many times?

15         JUROR 0020:  Once.  And it was about 30 years ago.

16    It was a civil case, trespassing.

17         THE COURT:  Was a verdict reached?

18         JUROR 0020:  Yes.

19         THE COURT:  Can you disregard whatever you might

20    remember about that case for the purpose of this case?

21         JUROR 0020:  Yes.

22         THE COURT:  Perfect.  Great.

23         Okay, and have you ever been a party to a witness to

24    any legal proceedings?

25         JUROR 0020:  I have been a party.

1            THE COURT:  Okay.

2            JUROR 0020:  Prior to working for an insurance

3    company at an insurance agency, I ended up being sued.  And it

4    did not get to trial.  It was arbitration.

5            THE COURT:  All right, and ultimately, then, it

6    resolved?

7            JUROR 0020:  Yes.

8            THE COURT:  Before the arbitration, did you have your

9    deposition taken?

10           JUROR 0020:  Yes.

11           THE COURT:  Anything about that experience or the

12   overall experience that would affect your service as a juror

13   here today?

14           JUROR 0020:  No.

15           THE COURT:  Thank you very much.

16           Anybody else in any legal involvement that you have

17   not had a chance to mention?

18           Okay, couple of folks.  Let me go back up to Juror

19   0003.

20           JUROR 0003:  I just want to say I do know somebody

21   that's been molested.  I could not be impartial.  I -- I don't

22   want to view anything.  I'm queasy at the thought.  I just --

23   I don't think I could be impartial at all.

24           THE COURT:  Okay, all right.  And then -- and I don't

25   want any detail on this, but the person that you know, did

1    that ever go to court or anything like that?

2              JUROR 0003:  No.

3              THE COURT:  And did you have any involvement like

4    counseling or --

5              JUROR 0003:  No.

6              THE COURT:  Just simply that you know the person?

7              JUROR 0003:  Um-hmn.

8              THE COURT:  Okay, and then just that knowledge, does

9    that understanding causes you a concern about this kind of a

10   case?

11             JUROR 0003:  Yes, because I heard some of the things

12   that she went through, and, yes.

13             THE COURT:  Okay.  All right.  Any further inquiry by

14   either side?

15             MS. McGLENON:  No, Your Honor.

16             MR. ENOS:  No, Your Honor.

17             THE COURT:  Okay, I'll excuse from you this

18   particular case.  Again, check with the jury clerk if you need

19   to.  Otherwise, call that 800 number after 5:00 for your next

20   assignment.

21             THE CLERK:  Juror 0021.

22             THE COURT:  All right.  And, Juror 0021, again, let

23   me get you up to speed with everyone else.  Do you know

24   anything about this case?

25             JUROR 0021:  No.

1          THE COURT:  Do you know anybody I've mentioned by
2    name so far?
3          JUROR 0021:  No.
4          THE COURT:  Any scheduling issues that we need to
5    address?
6          JUROR 0021:  No.
7          THE COURT:  Have you ever served as a juror before?
8          JUROR 0021:  Yes.
9          THE COURT:  How many times?
10         JUROR 0021:  Once.
11         THE COURT:  Okay, criminal or civil?
12         JUROR 0021:  Criminal.  It was about a year and a
13   half ago in Visalia.  It was an exposure.  Somebody exposing
14   himself to a minor.
15         THE COURT:  Okay.  All right, and was a verdict
16   reached in that case?
17         JUROR 0021:  Yes.
18         THE COURT:  Whatever you might remember about that
19   case, you to have totally disregard for the purpose of this
20   case.  Are you okay with that?
21         JUROR 0021:  Yes.
22         THE COURT:  Can you give us some background
23   information on yourself?
24         JUROR 0021:  I'm from Visalia.  I work for Adventist
25   Health.  I am a certified medical coder.  I code for clinics

1   in Dinuba, Sanger, and Hanford.  I completed two years of

2   community college.  I was a criminal justice major.

3           THE COURT:  All right.

4           JUROR 0021:  And I have a daughter that's 10.  And my

5   elderly parents live with me.

6           THE COURT:  And do they work outside --

7           JUROR 0021:  They're retired.

8           THE COURT:  Oh, they're retired.  What did they do

9   before they retired?

10          JUROR 0021:  My father was a foreman for a turkey

11  farm.  And my mother worked in a preschool.

12          THE COURT:  Now, when you got your criminal justice

13  background, did you follow up with occupation, profession --

14          JUROR 0021:  No.

15          THE COURT:  Have you kept up with that at all?

16          JUROR 0021:  No.

17          THE COURT:  Okay, great.  Okay.

18          All right, let me go ahead and proceed on.  And,

19  again, Juror 0021, if there is something that you have not had

20  a chance to mention as far as any exposure to the Court or

21  jury service --

22          JUROR 0021:  I have been a witness because I was

23  burglarized in my home.

24          THE COURT:  Okay.

25          JUROR 0021:  I was a witness in that.

1        THE COURT:  How long ago was that?

2        JUROR 0021:  That was about 20 years ago.

3        THE COURT:  Did it actually get to court?

4        JUROR 0021:  Yes.

5        THE COURT:  Okay, and you testified then?

6        JUROR 0021:  Yes.

7        THE COURT:  Anything about that experience that would

8   affect your service as a juror here today?

9        JUROR 0021:  No.

10        THE COURT:  Thank you very much.

11        Okay, and anybody else in terms of the whole legal

12   area -- oh, yes, okay great.  Juror 0019.

13        JUROR 0019:  Just a custody case with my son.

14        THE COURT:  Okay, all right.  Was that ultimately

15   resolved then?

16        JUROR 0019:  Yeah.

17        THE COURT:  Anything about that experience that would

18   affect your service as a juror here today?

19        JUROR 0019:  No.

20        THE COURT:  Okay, anybody else?

21        Oh, yes.  Okay.  Pass the mike all the way down to

22   Juror 0018.

23        JUROR 0018:  I was a party of a civil lawsuit

24   recently.  It resolved in mediation.

25        THE COURT:  Did you have your deposition taken?

1          JUROR 0018:  No.

2          THE COURT:  Anything about that experience that would

3    affect your service as a juror here?

4          JUROR 0018:  No.

5          THE COURT:  Anybody else?

6          Okay.  My usual course is to go through some basic

7    principles, et cetera, but because we've had some jurors that

8    have had some concern regarding the kind of case this is, I'm

9    just going to jump right to that.  I usually talk a little bit

10   about the dynamics of the case later on, but let me go

11   straight to it.

12         MS. McGLENON:  Your Honor, I'm sorry to interrupt,

13   but can we do a sidebar for just a moment?

14         THE COURT:  Oh, sure.  Hold on just a second.

15         (All counsel left the courtroom for a sidebar, which

16   was not reported.)

17         THE COURT:  Okay, so, again, what I'm going to be

18   asking you about that you need to think about is the kind of

19   case that this is.  And obviously you don't know anything

20   about it, except I read you a statement the parties prepared

21   just to let you know the kind of case this is.  Let me

22   preference my questions to you with generalities about juries.

23   We obviously take you out of our own lives and subject you to

24   whatever case you happen to be called in for.  And jurors --

25   you might have read different accounts of jury service and

1    what it might entail, and it's sort of, you know, you come

2    into the courtroom.  Is it going to be a landlord tenant case,

3    or something about documents, or is it going to be

4    something -- for example, a case that might involve some

5    actual injuries.  It could be a criminal law case where

6    someone is charged with assaulting someone, serious injuries

7    maybe.  It could be a homicide.  You could be called as a

8    juror in a murder case.  In those kinds of cases -- or it

9    could be a civil case involving a traffic collision where

10   there were horrific injuries.

11          In those kinds of cases, jurors really -- the parties

12   must present to the jurors what occurred, and so during the

13   course of the trials on those kinds of cases, you're going to

14   hear testimony, and it could be very graphic about people who

15   have suffered injuries.  Or if it involved a death, you could

16   see autopsy photos.  If it were an assaultive-type case, for

17   example, a forensic pathologist may come in, and you're going

18   to see pictures or diagrams of a body and entry -- bullet

19   entry wounds or knife wounds, or whatever, and so there are

20   very difficult cases that jurors have to address.  I mean,

21   you've seen some publicity.  We have that Boston Marathon

22   bombing.  You can imagine the kind of testimony that those

23   jurors have to hear in terms of the injuries and the people

24   coming in.  Some have lost limbs.  Obviously others have lost

25   lives, and the jury has to hear all that.

1          And so we do really impose a burden on jurors in some

2    types of cases because they're going to hear some very graphic

3    testimony, they're going to see some graphic photos, very

4    graphic diagrams, and that's something that jurors have to do.

5    This is a kind of case, as you saw from the information that I

6    read to you and some of the responses from your other

7    prospective jurors, that you're going to be hearing testimony

8    regarding someone who was a minor at the time.  There may have

9    been some sexual conduct.  You may well see some photographs,

10   some testimony regarding what might have occurred, and just

11   like any other case that involved graphic information that

12   might have some emotional aspects, what a juror has to do is

13   be objective and say, okay, this is information that I have to

14   receive, that they have to present in order to make my

15   determinations.  And so that is something that jurors have to

16   do.

17         Now, we also recognize, as I said right at the

18   outset, sometimes your own life's experiences might impact you

19   such that you can say, you know, I can -- you know, I'm not

20   really crazy about it, but if you showed me pictures of a

21   decedent, and -- you know, like I've seen on the movies where

22   on the slab, and the autopsy is performed, et cetera, I can

23   handle that, but I can't handle a traffic collision because I

24   was in one a couple of years ago, and I just remember I can

25   still hear the tires screeching, et cetera.  So we recognize

1    that sometimes, you know, life's experiences, you can handle

2    some sorts of cases, and maybe other cases you can't simply

3    because of your own background.

4            So the reason I wanted to mention that right now and

5    just jump to it, is this is a kind of case where you're going

6    to hear fairly graphic testimony, maybe perhaps see some

7    photographs regarding basically the sexually explicit either

8    activity or photographs or diagrams.  The lawyers aren't in

9    this to be -- you know, just to display stuff to you.  They're

10   going to be very discreet about it, but you're going to have

11   to hear testimony.  You heard what kind of case this is.

12           And the bottom line question for you folks is we're

13   going through the jury selection process, understanding that

14   this is the obligation of the jury is, will you be able to be

15   fair and impartial, and whatever testimony it might be, that

16   you're going to be able to listen to it impartially and not

17   say, "Oh, my gosh, this is horrible.  I'm just going to block

18   this stuff out."  Or "I don't want to see any pictures.  Don't

19   show me any pictures.  Show it to everybody else, but don't

20   show it to me."  You can't do that.  Every juror has to hear

21   the same thing, see the same thing, and when you deliberate,

22   you're going to be working off the same information.

23           So the bottom line question will be, and it may have

24   occurred to you folks, because it obviously occurred to three

25   other prospective jurors is, is there anything about this kind

1  of a case that would cause you a concern that you couldn't be

2  fair and impartial?  Is there anyone just because of the

3  nature of the case?

4          Yes, Juror 0002.  I'm not sure where the microphone

5  is.

6          JUROR 0002:  Due to the sexual nature of it, there

7  have been incidents in my life in the past -- again, details

8  which I would rather discuss in chambers.

9          THE COURT:  Okay, and you had mentioned that already.

10  Okay, so we'll -- and as a matter of fact, when we take our

11  break, which would be in a few minutes, the jury panel will

12  leave, but you'll just remain in here, and then you can

13  mention to the parties here.

14          All right, anybody else?

15          Yes, pass it down to Juror 0012.

16          JUROR 0012:  Okay.  I don't know that this makes me

17  impartial or not, but I am very uncomfortable with the idea of

18  evidence that might be presented.  I just wanted to throw that

19  out there.

20          THE COURT:  Yeah.  Okay, and that's fine.

21          JUROR 0012:  And we might all be.  Right?

22          THE COURT:  Yes.  You would.  And I'll tell you in

23  all candor, having seen and heard different kinds of cases, I

24  get a little squeamish on injury cases, too, whether it's a

25  civil case or not.

1    The bottom line question for everyone, understanding

2    that, and -- I don't want to trivialize this.  You know, we've

3    seen so much on the movies, on television, et cetera, and I

4    hope ultimately we have not all gotten to the point where

5    we're so -- become immune to that.  I mean, certainly this is

6    going to be important.  But the bottom line is, ultimately for

7    the jury, you do have to hear all the testimony.  You do have

8    to see whatever exhibits are presented, and ultimately you

9    decide the case on the merits.  You know, emotions -- and

10   there is a specific jury instruction, you're not to be

11   influenced by any sympathy, prejudice, et cetera.  So you'll

12   need to keep that in mind as you hear the evidence presented,

13   because ultimately what the parties want really is someone who

14   can sit back objectively and look at the case and decide no

15   matter what is thrown at you, that you can look at it

16   objectively, talk to your fellow jurors about it, and come to

17   a rational decision and not say, "Well, this is a horrible

18   case.  We're going to find Mr. Davis -- let's just find him

19   guilty and get out of here," or "Let's just find him not

20   guilty and get out of here.  I just don't want to hear that

21   kind of stuff."  Your role as a juror is to absorb everything

22   that comes before you.

23        Now, the interesting thing, as you've heard, this is

24   a very diverse jury.  You all have very, very interesting

25   backgrounds.  Many of you, either you or your family members,

1   have experiences with young people.  But bottom line is,

2   obviously, ultimately, the jury makes your determination.  The

3   reason we have a jury is that we rely on your common sense to

4   determine on the facts in the law in this case.  You do have

5   to be careful about interjecting your own experiences because

6   many of you actually are involved in what I would call

7   school-aged children, girls by your profession, by the nature

8   of your occupation, or your spouse's occupation or family

9   member's occupation.  Basically, you're going to have to

10  decide this case on the evidence that is presented to you.

11          Now, let me just ask in general, is there anything

12  else about the kind of case this is, or you're thinking, "You

13  know, no matter what you say, Judge, I've got a lot of

14  experience here, and I'm going to -- you know, if the evidence

15  that's presented is contrary to my own personal beliefs or

16  views, then I'm sorry."  But you can't do that because the

17  jury has to decide this on the same facts and evidence

18  presented, not on your personal background and experience.  We

19  obviously rely on your common sense, but that is -- could be a

20  problem.  But, again, is there anything about this kind of

21  case that would be a problem?  All right, Juror 0016.

22          JUROR 0016:  Well, first of all, I feel I can be very

23  open-minded.  So -- but I think it's just fair that both sides

24  here, being a foster parent for four years, I've had kids come

25  into my home after being abused.

1              THE COURT:  Um-hmn, yeah.

2              JUROR 0016:  And there's been some abuse on my wife's

3    side of the family.  So I just thought you should know.

4              THE COURT:  And I'm glad you mentioned that.  But in

5    this particular case, understanding that, and you recognizing

6    that you've had those experiences, would you be able to set

7    that aside and decide this case strictly on what you see and

8    hear in this courtroom as presented to you?

9              JUROR 0016:  I feel I can.

10             THE COURT:  Now, if the Government fails -- because

11   the Government has the burden of proof, and I was going to get

12   back to that.  If the Government fails in its burden of proof,

13   you might think, "Oh, wow, this is horrible.  You know, this

14   is, you know, I've got these foster children, and I can't let

15   this guy go.  The Government hasn't proven its case, but I'm

16   going to find him guilty anyway."  You can't do that.  Or

17   maybe there's something that -- you know, the Government's

18   presented its case, and there's something that maybe in your

19   own background, well, you know, there's something that nobody

20   mentioned, but this will be in Mr. Davis' favor.  You can't

21   decide that either.  You just have to decide strictly on

22   what's presented in court.  The Government either proves the

23   case, or it doesn't.  Do you understand?

24             JUROR 0016:  Yes.

25             THE COURT:  Anybody else?

1          Yes, Juror 0020.

2          JUROR 0020:  Your Honor, I just have a problem.  I've

3    got three daughters and a granddaughter.

4          THE COURT:  Right.

5          JUROR 0020:  And I'm trying, but I just -- right now,

6    with what I've seen, and, I mean, with what little I've

7    heard --

8          THE COURT:  Uh-huh.

9          JUROR 0020:  I, you know, if it was my daughter, I'd

10   like to strangle the guy.

11         THE COURT:  Right.  Exactly.

12         JUROR 0020:  I'm trying, but I don't know.  It's

13   tough.

14         THE COURT:  Yeah, and that's -- you know, many of the

15   jurors here have either children or grandchildren, et cetera.

16   Now, this isn't a matter of protecting your children or

17   thinking if it was my child, you know, I would convict him in

18   a heartbeat.  This is not your child, and that's why we have a

19   jury come in who are really objective and are looking at the

20   Government's witnesses, the defense witnesses, et cetera,

21   objectively, and you've got -- and I know this is difficult,

22   but you have to divorce yourself from the notion that am I

23   doing this for my children or my grandchildren, or am I

24   letting my children or my grandchildren down if I vote for an

25   acquittal.  If the Government doesn't prove its case,

1   Mr. Davis is not guilty, period, and you can't speculate as to
2   what went on, what's going to go on, et cetera.  He's entitled
3   to a not guilty verdict, and you can't say or think, am I
4   letting my kids down, my grandkids down or not.  You'd be
5   letting them, frankly, and from a -- this maybe sounds a
6   little too preachy, but you'd be letting down if you came to
7   the wrong decision, and you knew it was a wrong decision.  In
8   other words, if you felt that the Government had not proven
9   its case, but you still find Mr. Davis guilty because of your
10  family, then, that's wrong.  That's as wrong as anything
11  else -- at least within the legal system for a jury to do is
12  to decide the case not based on the law and the facts, but on
13  emotion.  But I totally understand where you're coming from,
14  Juror 0020.  But for all of you, you have to understand if you
15  serve as a juror in this case, you have to be objective.  Now,
16  if it's a problem, again, you have to let us know.  We just
17  excused three jurors because they simply could not, and that's
18  totally understandable.  But if it does come down to that
19  situation for any of you, you just need to let us know.
20          Now, we're going to take our morning recess.  Think
21  about it and come back, and we'll continue on.  I'll probably
22  keep that theme in mind, but I do want to cover some other
23  areas as far as the general role that you have, which I
24  usually cover at the outset, but I thought we should cover
25  this area sooner than later.

1          All right, we'll take a 15-minute recess.  You can go

2    ahead and step out, and, Juror 0002, you can just remain here,

3    and then we'll remain in session.  But we'll take a 15-minute

4    recess.

5          (The prospective jury panel was excused from the

6    courtroom.)

7          THE COURT:  All right, are there any other jury panel

8    members in the courtroom?  No?  All right.

9          Okay, yes, Juror 0002 -- and, again, we're not going

10   to require a lot of detail, but obviously you have a

11   significant concern.

12         MR. ENOS:  Your Honor, if defendant's parents --

13   should they be in here for this as well?

14         THE COURT:  As long as someone -- anyone is welcome

15   to be in here as long as they're not witnesses or prospective

16   witnesses.

17         MS. McGLENON:  Your Honor, may I take just a moment?

18         THE COURT:  Sure.

19         (Pause in the proceedings.)

20         THE COURT:  All right.  They left the courtroom.

21         Yes, Juror 0002.

22         JUROR 0002:  Your Honor, this is the third time I've

23   been called for jury duty, and all three occasions, it

24   happened to be a sexual case concerning a minor.

25         THE COURT:  Um-hmn.

1          JUROR 0002:  Myself and my sister were both molested

2     by our father growing up.  This led to an incident when I was

3     19, probably 35 years ago, where I was a defendant in a case

4     involving an underage individual.  It was handled in a

5     deferred prosecution.  And that required me to go through five

6     years of counseling, and I completed everything, and it has

7     been expunged from my record.  So I just wanted to make you

8     aware of that.

9          THE COURT:  Oh, no, I appreciate that.  Let me ask

10    you objectively, would that affect your service as a juror

11    here today?

12         JUROR 0002:  I don't believe so.  It's something that

13    I've dealt with very successfully, and I guess I know both

14    sides of the fence.

15         THE COURT:  Okay, great.  Now, the one thing about

16    those experiences, and as you saw other jurors, they all have

17    very similar experiences in terms of dealing with young

18    people.  We have a middle school principal, we have a

19    counselor, et cetera.  But the important thing is, if you can

20    be fair and objective -- fair and objective to both sides --

21    in other words, you can look to both sides and, look, I have

22    an open mind on this, I'm just going to decide this case on

23    the facts and the law.  I have revealed to you my life's

24    experiences, but it's not going to affect my service as a

25    juror, that's perfectly fine.  It's like your traffic

1   collision scenarios where I may have been involved in a

2   traffic collision.  I may have been hurt as a family member,

3   but I can still set that aside and still hear a traffic

4   collision case.

5           But one key thing is, as you hear the evidence, let's

6   say someone testifies, you know, that this, this, and this,

7   and sometimes we'll have expert witnesses that will testify to

8   this, this, and this.  And you can't say, well, you know, my

9   experience -- I mean thinking to yourself, my experience is

10  totally different.  I'm going to disbelieve this witness, not

11  because of anything that occurred in the courtroom, but

12  because of my own experience, I think he's wrong, or she's

13  wrong.  You can't do that.  So you have to separate out what

14  you know personally versus what you see and hear in the

15  courtroom.  Are you okay with that?

16          JUROR 0002:  Yes, sir, I am.

17          THE COURT:  Any inquiry, first, plaintiff's side,

18  anything?

19          MR. ENOS:  Juror 0002, did this case 19 years ago

20  have anything to do with your perceived knowledge with respect

21  to how old this person was that was also involved?  For

22  example, did you think, oh, I didn't know how old this person

23  was, or anything like that?

24          JUROR 0002:  No, I was aware of their age.

25          MR. ENOS:  Okay.  And if you can disclose, how close

1   was your age to this person's age?

2           JUROR 0002:  Three years.

3           MR. ENOS:  Thank you.

4           THE COURT:  Defense, anything?  Any questions?

5           MS. McGLENON:  No questions.

6           THE COURT:  All right.  Okay.  Thank you very much.

7   And we'll continue on.  Go ahead and take your break, and then

8   we'll be taking a break for 15 minutes from now.

9           JUROR 0002:  Okay.

10          THE COURT:  And so you'll have a chance to take a

11  full break, too.

12          JUROR 0002:  Okay, thank you.

13          (The prospective juror left the courtroom.)

14          THE COURT:  All right, Juror 0002 has left the

15  courtroom.

16          We did have an unreported sidebar.  The defense did

17  have a concern -- two concerns that they raised, one that

18  Juror 0002 had mentioned that he wanted to say something, and

19  I did say we would take him up at the break, which we did.

20          The other thing was concerns about people's

21  willingness or reluctance to disclose their own personal

22  histories and backgrounds, and I will try to again to make it

23  clear to them that they need to let us know.  And if

24  necessary, that they can do it in private just as Juror 0002

25  did.

1          But anything else on the unreported sidebar that

2     anybody wants to place on the record, defense side, anything?

3          MS. McGLENON:  No, Your Honor.

4          THE COURT:  Government, anything?

5          MR. ENOS:  No, Your Honor.

6          THE COURT:  Anything else about jury selection?  I'm

7     going to continue on.  I'm probably going to get into the

8     noonhour.  We'll take our break at noon, and then we'll chat a

9     little bit about proceeding after that.  But if there is

10    nothing else right now, we'll go ahead and take a recess.

11         We'll take 15 minutes from now, and we'll just need

12    to make sure that the jury panel does not come in for 15

13    minutes from now.

14         We'll be in recess.

15         (Recess.)

16         THE COURT:  All right.  The panel has returned.  Is

17    there anything from a follow-up from the break that any juror

18    needs to address?

19         Okay, we'll pass the mike.  Yes, Juror 0011.

20         JUROR 0011:  Okay, yes.  If this case was to go to

21    the full duration until Friday, a week from Friday, I've got

22    tickets that morning.  I had forgotten that.  I'm flying with

23    my family to Washington, D.C. for spring break, and so we're

24    going down to LA on Thursday, and we're flying out Friday

25    morning at 8:00 for Washington D.C. for a week.  Those tickets

1    are purchased.  We got hotel rooms.  That was at the end of

2    the week, so that just didn't trigger until I remembered now,

3    so --

4            THE COURT:  And then that would be -- what time are

5    you leaving on Thursday?

6            JUROR 0011:  I would leave after work on Thursday

7    after school, so we'd probably head down to LA like at 4:00 or

8    5:00 and then spend the night, and then first flight out to

9    D.C. for a week.

10           THE COURT:  Okay.  All right.  Okay, it's likely

11   we'll be done by Thursday, but I can't guarantee it.  Counsel

12   have any questions or --

13           MR. ENOS:  Government feels the same way as the

14   Court.

15           THE COURT:  I would excuse him.

16           All right, Juror 0011, what I'll do, I'll excuse from

17   you this particular case.  You'll have to call that -- check

18   with the jury clerk because if you're going to be gone next --

19   next Friday, she'll just have to reschedule you in so that we

20   can work around that.  But just check with the jury clerk to

21   reschedule your next court date.

22           JUROR 0011:  Thank you.

23           THE COURT:  All right, thank you.

24           THE CLERK:  Juror 0022.

25           THE COURT:  All right, Juror 0022, I need to get you

1   up to speed with everyone else.  First of all, do you know
2   anything about case?

3        JUROR 0022:  No.

4        THE COURT:  Do you know anybody I've mentioned by
5   name so far?

6        JUROR 0022:  No.

7        THE COURT:  Can you give us some background
8   information on yourself.

9        JUROR 0022:  I live in Dos Palos.  I'm a high school
10  vice principal.  My husband is a college administrator.  I
11  have a bachelor's degree in vocational education, a master's
12  degree in education administration.  I have three grown
13  children, one of which is a full-time student at Cal State
14  Stanislaus.  My two other children are certified nursing
15  assistants.  All three live outside of the home.

16        THE COURT:  Any scheduling issues?

17        JUROR 0022:  No.

18        THE COURT:  Have you ever served as a juror before?

19        JUROR 0022:  I was a juror last summer on a civil
20  trial that we found the defendant guilty.

21        THE COURT:  All right.  Anything about that
22  experience that would affect your service as a juror here
23  today?

24        JUROR 0022:  No.

25        THE COURT:  Do you remember what kind of a case that

1    was?

2          JUROR 0022:  It was a homeowner suing a contractor,

3    and the contractor was counter-suing the homeowner.

4          THE COURT:  All right, good.  Ever been a party to or

5    a witness to any legal proceedings?

6          JUROR 0022:  I have appeared before Judge Bender in

7    Madera County for my job for SARB court and juvenile court.

8          THE COURT:  Anything about those experiences that

9    would affect your service as a juror?

10          JUROR 0022:  No.

11          THE COURT:  Any other exposure to the legal system?

12          JUROR 0022:  No.

13          THE COURT:  Anything else that was asked so far or

14    answers that were given that you would have said anything

15    differently or would have wanted to say anything more about?

16          JUROR 0022:  No.

17          THE COURT:  Anything about the kind of case that this

18    is that causes you a concern about being fair and impartial to

19    both sides?

20          JUROR 0022:  No.

21          THE COURT:  And, again, I'm going to move back to the

22    general areas that I cover at the outset, but I just want you

23    folks to keep in mind, if there is anything about the kind of

24    case that this is based upon your beliefs, your life's

25    experiences, whatever, please mention at any time, and, again,

1    if there is something that is very personal to you that you'd

2    rather than mention in front of the entire panel, let us know.

3    When we take our noon break, we'll just have you stay behind,

4    and you can go ahead and follow up on that.

5           And I do appreciate, we obviously took longer than 15

6    minutes.  A couple matters I had to address with the

7    attorneys.  We got those resolved, and now we're going to move

8    forward.

9           Okay, so I'm going to back up and get to where I

10   usually start off, which is really to discuss with you

11   basically the principles that are involved, the legal

12   principles that are involved in a criminal law case.

13          Now, I don't expect you to be familiar with all this,

14   but I'm going to mention some words and phrases that you

15   probably heard about before, and I'm going to try to put it in

16   context of what this case -- how we deal with it in a criminal

17   law case.

18          Okay, these are the basic principles that apply in a

19   criminal law case.

20          First of all, there is what we call the presumption

21   of innocence.  That is, as Mr. Davis is sitting there, he is

22   presumed to be innocent.  The little thing that lawyers,

23   sometimes judges like to do is say, okay, the presumption of

24   innocence works like this:  If you are selected as a juror,

25   and I say is Mr. Davis guilty or not guilty, you would say

1   instinctively, well, I haven't heard any evidence.  And the

2   bottom line is, you find him not guilty.  There is no evidence

3   against him.

4          Now, if you're sitting there and thinking, well, wait

5   a minute, he's got to be guilty of something; he's sitting

6   there, isn't he, then you're not affording him the presumption

7   of innocence.

8          So the bottom line for you in this questioning is

9   before we have you raise your hand and be sworn as a juror,

10  you have to be satisfied in your own mind, is that not only do

11  you understand the principle of presumption of innocence, but

12  you're actually affording Mr. Davis that presumption of

13  innocence.  If you're thinking your only decision in this case

14  right now is to decide what he's guilty of, then you're not

15  affording him the presumption of innocence.  The Government

16  doesn't prove his case, he walks.  And that's the bottom-line

17  rule.

18         Does any of you have a problem with the presumption

19  of innocence as a principle or as a practical matter?  Anybody

20  have any concerns?

21         Okay, now, the next principle is what we call the

22  burden of proof.  In every dispute, someone has the burden of

23  proof.  In your own lives, whether it's an argument amongst

24  your kids, whether it's neighbors, whether it's part of your

25  job, when someone comes to you with a dispute and wants you to

1  do something, you don't think about this, but they have

2  a burden of proof.  They have to prove to you that somebody

3  did something to them, or something, that they deserve your

4  action.  Okay, and that is basically the burden of proof.  And

5  that's true in your own lives, you deal with that every day.

6  You don't think about it like that, but that's what you're

7  doing.  Every time you make a decision that affects somebody

8  else, that person has -- someone has met their burden of proof

9  to you that you're going to take some kind of action.

10          The same thing is true in a lawsuit, civil law or

11  criminal law case.  There is a burden of proof.  And in a

12  criminal law case, of course, the plaintiff, in this case, the

13  Government has the burden of proof.  They must prove that

14  Mr. Davis is guilty, which means there is different elements

15  to a charge, and they have to prove each one of those

16  elements.  And if they prove them, then they've met their

17  burden of proof.  If they haven't, then they have not met

18  their burden of proof.

19          The unique thing about a criminal law case is

20  generally when you're dealing with a dispute, again, family

21  members and your occupation, neighbors, whatever,

22  instinctively -- and we've heard this phrase before, before I

23  make a decision, I want to hear both sides, or I want to hear

24  what everybody has to say.  Right?  And that's only fair.

25  That doesn't apply in a criminal law case.

1    In the criminal law case, the burden of proof rests

2  solely on the plaintiff, the Government.  The defense, the

3  defendant has no burden of proof.  The reason we have that

4  rule, and it's true in the state court and the federal court,

5  is that the possible consequences to someone charged with a

6  crime are so serious, that we have said, and this is

7  historically through our whole history, is that if the

8  Government is going to prosecute someone, they have the burden

9  of proof.  The defendant doesn't have to prove anything.

10  Okay?

11    What that means is that the defendant, Mr. Davis,

12  doesn't have to testify, he doesn't have to put on any

13  evidence.  That doesn't mean that they're not participating.

14  Obviously his attorneys are participating both pretrial,

15  during the course of the trial, they will cross-examine

16  witnesses, et cetera, so the bottom line for you is, that if

17  you're called to serve as a juror in this case, and the

18  Government presents its evidence, the defense does not

19  affirmatively present evidence, Mr. Davis doesn't testify, you

20  go back and deliberate, and you're not really satisfied that

21  the Government has proven its case, but someone says, well,

22  yeah, they haven't really proven their case, but, you know,

23  Mr. Davis didn't testify, he didn't put on any evidence, that

24  must mean something.  No, it doesn't mean anything.  You

25  cannot use that to bolster the Government's case.

1          Does anyone have any concerns about that burden of

2     proof, that it's solely on one side in a criminal law case,

3     Mr. Davis doesn't have to testify or put on any evidence.  Is

4     everyone okay with that as a practical matter?

5          All right, the last principle, then, is the standard

6     of proof.  If the Government has the sole burden, what's their

7     standard?  What do they have to prove?  It's a standard that

8     we call beyond a reasonable doubt.

9          Now, I can't quantify that for you.  I can't give you

10    an imaginary scale and say it has to tip so far, or a rule

11    that says it has to go this far.  This instruction basically

12    is something to the effect that it's the standard of proof.

13    Once you've heard all the evidence, you're satisfied beyond a

14    reasonable doubt that the Government has proven its case.

15         Now, the Government is not required to prove its case

16    beyond all possible doubt because everything in life is

17    subject to some doubt.  So as a jury, you're going to hear all

18    the evidence, you'll hear the jury instructions, and then

19    you're going to have to decide on the facts of the case and

20    whether or not there is a reasonable doubt in this case.

21         Let me give you an example here.  Let's say that you

22    were called to serve as a juror, and what you have to decide

23    as the jury is whether or not we landed someone on the moon.

24    Okay?  So the plaintiff brings in their scientists, they bring

25    in their astronauts, they bring in geologists with rock

96

1    samples, et cetera.  Okay?  And you've heard this evidence.

2           The defense side presents evidence that says, wait a

3    minute, they've shown you this video, this film of the

4    astronaut landing on the moon.  But technology back then was

5    good enough, such that that could have been done in a studio.

6    I mean, we have now seen so many movies where you really can't

7    tell whether someone is in outer space or not.  The technology

8    is so good.  Okay?  So that might create a doubt in your mind.

9           Well, you know, the plaintiff's side showed you this

10   video of someone purportedly landing on the moon.  The other

11   side has presented evidence, said, look, this is a video we

12   took in a studio in Hollywood, and you can see that they look

13   very similar.  Now, That might cause some doubt in your mind

14   as to whether or not that photo that the plaintiff presented

15   was really someone landing on the moon, or was it done in some

16   studio lot somewhere?

17          As far as the moon rocks, the other side may say,

18   "Look, how do you really know that's a moon rock?"  I mean,

19   you go out in the desert, you can probably find rocks that

20   look just like that.  Okay?  So that may cause some doubt in

21   your mind as to whether or not that evidence presented, that

22   those rocks were really from the moon.

23          Now, obviously in a case like that, you'd hear a lot

24   more evidence.  But simplistically, that's sort of an example

25   of, you know, someone will present evidence, and the other

1    side might refute that evidence with either evidence or

2    calling it into mind that, you know, you really can't really

3    rely on that.  So, again, everything is subject to some doubt,

4    you just have to think in your own mind, based upon all the

5    evidence presented, is, yeah, there's some doubt in my mind,

6    but in looking at all the evidence, if it's reasonable, then

7    there is reasonable doubt, and if there's reasonable doubt,

8    then the plaintiff, in this case, the Government has not

9    proven its case beyond a reasonable doubt.  If you have some

10   doubt, but then you assess all the evidence and say, well, you

11   know, I have some doubt, but it's really not reasonable.  I

12   think the other evidence refutes that, or the other evidence

13   is strong enough for me to determine that, you know, I had

14   some doubts, but it's not a reasonable doubt, and otherwise,

15   the plaintiff, the Government has proven its case, and,

16   therefore, I have found that they have proven their case

17   beyond a reasonable doubt.  And if so, the Government's

18   entitled to a verdict in their favor.

19          If not, if there is a doubt in your mind, and you've

20   determined ultimately it's a reasonable doubt, then the

21   Government has not proven its case, and then you vote for the

22   defense.  Is everyone okay with that?

23          Okay, so those are the basic principles, then,

24   presumption of innocence, burden of proof, standard of proof.

25          Now, in terms of your roles as jurors, specifically,

1    those are the guiding principles.  I will give you jury

2    instructions that give you more detail on the specific law

3    that applies to this case.  Your role as jurors is to decide

4    the facts in this case.  And you will decide the facts from

5    evidence presented to you, both by testimony from witnesses,

6    by exhibits, which are admitted into evidence.

7            The one thing that you have to decide in terms of

8    witnesses -- because you're going to see witnesses.  They may

9    come on to the witness stand, they'll be testifying five

10   minutes or five hours.  For every witness that appears on the

11   witness stand, you have to decide credibility or

12   believability.  That is, it is your sole province to decide

13   whether or not to believe all the witness says, just part of

14   what a witness says, or none of what a witness says.  Okay?

15   And you base that really on your own common sense, you

16   individually and collectively as a jury.  I give you some jury

17   instructions that talk about things like you look at the --

18   whether there's any bias, interest, or motive in their

19   testimony, whether or not it's contradicted or supported by

20   other evidence, et cetera, but bottom line is, you're looking

21   at a witness on the witness stand, you have to decide their

22   credibility or believability.  Is everyone okay with that?  Is

23   there someone who cannot do that for moral, religious, or

24   other reasons or grounds?

25           Okay.  Now, again, I give you some basic jury

1   instructions on credibility or believability.  But we

2   basically rely upon the jury, your common sense, your

3   reasoning individually and collectively.

4        There is something that I did want to touch upon.  In

5   terms of credibility or believability, one thing that you

6   cannot use in and of itself to decide credibility or

7   believability is someone's job title.  Okay.  And let me give

8   you an example.  Let me just pick on a profession.

9        If someone were to appear to testify in court, and

10  they identify themselves in education, and you happen to be in

11  education, you can't automatically give that witness more

12  credibility or believability because you also are in

13  education, or you really like your children's teachers, or

14  whatever.  Okay, that's not something that you would consider

15  in terms of credibility.  That is simply the job title or

16  occupation.  Is everyone okay with that?

17       Okay.  Now, I'll give you another example of

18  credibility or believability.  If this were a situation where

19  there was a traffic collision at an intersection, and you were

20  to determine who had the red light and who had the green

21  light, and two witnesses were to testify here in court for you

22  to make that determination, and the first witness appears

23  under oath and says I was standing at the intersection, I was

24  very careful, looking at the traffic, the flow of traffic, and

25  the signal light because I was going to cross that street, and

1   it's a very busy street, so I was very cognizant.  I saw the

2   two cars coming, and I thought, oh, my gosh, you know, neither

3   one of them is going to be able to stop. I looked up at the

4   signal light, and car A had the green light.  That would make

5   car B liable, of course, for running a red light.  So that

6   witness testifies.

7          Okay, the second witness comes in, the second witness

8   under oath testifies, "I was at that same intersection.  I was

9   also cognizant because I was going to cross that street, so I

10  was watching the traffic, and I was watching the signal light.

11  Car B had the green light."  And I tell you now you decide who

12  had the red light and who had the green light.

13         Now, based on that, your answer is I can't tell.

14  Your little hypothetical was one person says that car A had

15  the green light, and the other person said car B had the green

16  light.  I really can't tell from that.

17         If I gave you one -- which is correct.  If I gave you

18  one other piece of information, and I'll just pick on a

19  profession.  One of the witnesses -- the other piece of

20  information, one of the witnesses happens to be a doctor.

21  Now, you may be in the medical arena, you may really like your

22  doctor, but, again, job titles don't make a difference.  So

23  the fact that one of the witnesses happen to be a doctor

24  doesn't mean that they had better vision than you or I.

25         Is everyone okay with that and understand that?  So,

1    again, job title itself shouldn't sway or impact your decision

2    as to who had the red light or green light, the credibility of

3    either one of those witnesses.  Are you okay with that?

4         Okay, now, if, on the other hand, the issue is what

5    happened in the emergency room, and someone were to appear to

6    testify and say, "I'm a doctor," and then went on and

7    explained to you their background, training, and experience,

8    and that they were the treating physician and that this person

9    suffered a broken leg, if you believe that witness' testimony,

10   that is, the doctor, you can conclude that the person suffered

11   a broken leg.

12        Again, that goes not simply because of the title of

13   the person, but his background, training, and experience and

14   his assessment of the situation.  Is everyone okay?

15        Okay, that's really what we call more quality of

16   testimony.  That is the testimony itself.  Not simply the job

17   title, but what that person had to say.  Is everyone okay with

18   that?

19        Okay, generally those are not a problem with any

20   juror.  There is an occupation or job title that does create

21   some concern sometimes for jurors, and that is when one of the

22   witnesses' job title or occupation is law enforcement.

23   Witnesses appear to testify and says I'm a police officer,

24   highway patrol officer, Sheriff's deputy, whatever, the same

25   ground rules apply.  Job title in and of itself should not

1    influence when you're just going to automatically believe or

2    disbelieve a witness.  It applies to -- as I indicated

3    earlier, it applies to the doctor, judge, lawyer, whatever, it

4    also applies to people in law enforcement.  We're not asking

5    this jury to determine whether or not they generally support

6    law enforcement or that they respect law enforcement.  That's

7    not the issue.  The issue is credibility or believability,

8    and, again, it's based upon the quality of the testimony, not

9    merely the job title.  Is everyone okay with that?  Okay.

10           Now, in this case, there are going to be a number of

11   witnesses that are going to be called that are in law

12   enforcement.  Okay?  But basically the ground rule that

13   applies in terms of the witnesses is the same, and that is you

14   don't decide this case based on which party called more

15   witnesses, or whether or not someone who testified simply is a

16   law enforcement officer, or even your decision-making process.

17   You may know people in law enforcement.  You may respect law

18   enforcement.  If the Government has presented its case to you,

19   and you're not convinced beyond a reasonable doubt that

20   Mr. Davis is guilty, you can't say, well, they called more

21   police officers, or more police officers testified, and I

22   respect law enforcement, and I really don't want to let anyone

23   down who likes law enforcement, so even though the Government

24   hasn't proven its case, I'm still going to vote guilty.  You

25   can't do that.  Is everyone okay with that?

1          There are two sides to this obviously.  Some people

2    may have had bad experiences relating to law enforcement.

3    Maybe it was a traffic ticket.  Maybe you got pulled over one

4    night, and you didn't think you should be pulled over.  Maybe

5    the officer is rude, whatever.  Maybe you had yourself, a

6    family member, a close friend that were pulled over, arrested,

7    maybe even prosecuted for something, and that may have left a

8    bad taste in your mouth.  Okay?  So there are two sides in the

9    law enforcement question.  But the bottom line is, you know,

10   when you think about your own background, life's experiences,

11   your relationship, or your contacts with law enforcement, the

12   same ground rules apply for witnesses and how you decide the

13   case.

14         So with that, I'm just going to ask you, and it is

15   really very brief, and that is whether or not you know people

16   in law enforcement.  I'll ask the flip side question after

17   that, and I really don't want any detail on either one.  The

18   first one is if you know people in law enforcement.  The

19   bottom line question is, the fact that you might be related to

20   or that you know people in law enforcement, would that affect

21   your service as a juror?  Would you tend to lean for or

22   against one side or the other, would you tend to lean for or

23   against certain witnesses simply because you are acquainted

24   with or related to people in law enforcement.

25         And then the flip side of that is, if you've had any

1    what might be considered bad experiences related to law

2    enforcement, would that affect yourself service as a juror?

3    Would you automatically be opposed or against the party that

4    called more law enforcement officers?  Would you automatically

5    discount or disregard law enforcement officers' testimony?

6    During your deliberations, would you lean for or against a

7    verdict just based on the fact that you know people in law

8    enforcement, or you've had a bad experience relating to law

9    enforcement.

10          That's really what I'm looking for, so I don't really

11   need any detail on this, but I just want to get you thinking

12   about this.  So, first of all -- and I'll just ask a couple of

13   questions just to follow up on it, and then I'll just ask in

14   general whether or not any of you would respond any

15   differently.

16          So let me just start off in the back row, are any of

17   you related to or acquainted with people in law enforcement?

18   Okay, we'll start off, Juror 0021?

19          JUROR 0021:  Yes, I have a brother, sister,

20   brother-in-law, they all work in law enforcement.

21          THE COURT:  Okay.  And have you chatted with them

22   about their jobs and what they do, et cetera?

23          JUROR 0021:  Yes.

24          THE COURT:  Now, would that relationship with them,

25   would that affect your service as a juror; in other words,

1  would you automatically lean for the side that called more law

2  enforcement?  Would you automatically lean towards someone who

3  testified and identified themself in law enforcement, just

4  that in itself, just job title, not what they have to say.

5  And in deciding this case, if you didn't think the Government

6  has proven its case beyond a reasonable doubt, but you don't

7  want to let your family down, or whatever, would you

8  automatically vote for a guilty verdict?  Do you think that

9  would enter into --

10         JUROR 0021:  No.

11         THE COURT:  Okay, great.  Anybody else in the back

12  row, then?

13         Okay, all right, let me just follow up.  Those are

14  the basic inquiries.  Is there anyone thinking in your own

15  background, as far as knowing people in law enforcement,

16  related to people in law enforcement, would your answer be any

17  differently?  Do you think in all honesty that because you are

18  related with people in law enforcement, acquainted with people

19  in law enforcement, or maybe you have a sense or feeling of

20  law enforcement, that, yeah, you know, if a person testifies,

21  just identifies himself with law enforcement, I'm just going

22  to automatically believe them and disbelieve anyone who says

23  anything that's contrary or different.  Anyone have any

24  thoughts about that?  Okay.

25         The other flip side is, and I don't really need any

1    detail on this, but if you, a family member, or close friend

2    have ever had any -- arrested or charged -- and I won't go

3    into any great detail on this, and I really don't really care

4    whether it's you or someone else.  I just want to know if

5    you've had any experiences.  And, frankly, I've had jurors

6    that said, yeah, I was arrested and charged, but, you know, I

7    deserved it, or my son got arrested, and he deserved it,

8    whatever, that sort of thing.  So the fact that you may have

9    been exposed to some aspect of law enforcement on the law

10   enforcement side doesn't disqualify you as a juror, but the

11   general question, again, is the flip side, any bad experiences

12   relating to law enforcement that might affect your service as

13   a juror.

14          So let me ask if the back row, I don't want detail.

15   If you've already mentioned this, you don't have to mention it

16   again.  But have any of you, a family member, a close friend

17   ever been arrested and perhaps prosecuted for any criminal

18   offense other than a traffic ticket?  Anybody in the back row?

19   Okay, how about anybody in the middle row?

20          Juror 0001, did you raise your hand?

21          JUROR 0001:  Yeah, are you talking about being

22   arrested or something?

23          THE COURT:  Yeah, something like that.

24          JUROR 0001:  Yes, I've been arrested.

25          THE COURT:  How long ago was that?

1          JUROR 0001:  Oh, probably 20 years ago.

2          THE COURT:  Did it ever go to court?

3          JUROR 0001:  Yeah.  Yeah, of course, I've had to

4    appear in traffic court and stuff like that about stuff.

5          THE COURT:  Sure.  That's understandable.  Anything

6    about any of those experiences that would affect your service

7    as a juror here today?

8          JUROR 0001:  No.

9          THE COURT:  Anybody else in the back row?

10         How about the middle row, anybody with any

11   experiences like that?

12         How about the front row?

13         Okay, yes, Juror 0018.  Will you pass the mike down

14   to Juror 0018, all the way down to the front row.

15         JUROR 0018:  It's a close family friend, arrested,

16   prosecuted.

17         THE COURT:  Okay.  Did you attend any of the

18   proceedings?

19         JUROR 0018:  Yes.

20         THE COURT:  Okay.  Anything about any of those

21   experiences that would affect your service as a juror here

22   today?

23         JUROR 0018:  No.

24         THE COURT:  Okay, great.  Anybody else?

25         Yes.  Okay, yes, Juror 0017?

1      JUROR 0017:  My son who is homeless, has been in and
2  out.

3      THE COURT:  Sure.  Have any of those gone -- you've
4  gone to court?

5      JUROR 0017:  We've gone rarely.

6      THE COURT:  Okay, all right.  Anything about any of
7  those experiences that would affect your service as a juror
8  here?

9      JUROR 0017:  No.

10     THE COURT:  Okay, thank you.  Anybody else?

11     Okay, now, I've mentioned something in general about
12  witnesses and your role in terms of deciding credibility or
13  believability as to each witness.  There are some witnesses
14  that might be called in this case, which is typical of most
15  cases, civil and criminal, that are designated as expert
16  witnesses.  Expert witnesses are allowed to testify, and
17  basically, their role is to assist the jury in deciding a
18  case, and they'll provide some background information or
19  some -- some technical information that would help the jury in
20  its decision-making process.

21     Now, in terms of expert witnesses, sometimes we think
22  of experts as someone who has six degrees behind their name,
23  et cetera, et cetera.  Basically an expert witness, an expert
24  is someone who has more specific knowledge than the average
25  person.  For example, if you had great gardening skills, and

1   you planted your vegetable garden, and I don't know what to

2   do, and I come to you and say, "You know, I want to plant some

3   tomatoes."  I'll say, "What variety should I get?  How should

4   I plant them?"  And you're telling me you're an expert.

5   You're an expert in vegetable gardens, okay?  Or maybe you

6   know how to bake a pie better than anybody else.  You're an

7   expert.  Or you may have some technical expertise.  Many of

8   you have identified your own occupations or family members'

9   occupations where they are really experts in their area.  So

10  being an expert witness or designated as an expert doesn't

11  mean you have to have a Ph.D. or anything like that, as long

12  as a person has greater knowledge than the average person, and

13  that knowledge might help the jury, then they are allowed to

14  testify, and they can render opinions based upon facts that

15  are given to them.

16          Now, with respect to expert witnesses, though, even

17  though they're designated as expert witnesses, the same ground

18  rules apply.  If a person comes before you and testifies and

19  is designated as an expert, just like any other witness, you

20  can believe all of that witness' testimony, part of that

21  witness' testimony, or none of that witness' testimony.  So

22  the fact that they're designated as an expert doesn't give

23  them any greater weight to you than any other witness in terms

24  of deciding credibility or believability.

25          So I know sometimes people say, well, you know,

that's the expert.  Who am I to argue with the expert?  Well, you don't just automatically accept what an expert witness has to say.  You judge his or her testimony by all the evidence that has been presented and make your decision on that.

Some people say, well, you know, expert witnesses, I don't even listen to expert witnesses because we all know that anyone can pay a person to say anything that the person is willing to say for money.  And so sometimes people say, well, okay, they've been designated as an expert witness, but I'm sure that they're being paid, which most experts are, so I'm not going to believe what they have to say.  And you can't do that.  I mean, sure, a person comes in, is called by one side or the other.  They have some information for you, but you can't automatically discount or disregard their testimony simply because one side might have called them.  They might have been compensated in some way, or whatever.  You still have to decide their credibility just like anybody else.  Is everyone okay with that?  Okay.

Okay, as you've seen just from that very brief statement, there is some technology, if you will, involved in terms of pictures, photos, et cetera.  And I think a lot of people now are familiar with technology.  I'm not so good at that, but in terms of taking pictures, apparently now with these cell phones, the quality of pictures that are taken are as good as cameras.  Do any of you take pictures with either a

1    digital camera or your cell phone?  Anybody take any pictures?

2    Okay, most of you probably do.

3            And do you go ahead and keep and preserve those

4    either on the cell phone or on the camera, or maybe store them

5    in a memory card?  Everyone do that?

6            Now, in this case, you might hear evidence regarding

7    taking of photos, et cetera, et cetera.  Now, you may have

8    some expertise, maybe even more than the average person as far

9    as taking photos, whether it's with a digital camera, a cell

10   phone, or whatever, but you have to listen to the testimony

11   that's presented in this particular case as far as whether or

12   not those sort of instruments were used to take pictures and

13   how they were stored, or how they were taken, et cetera, and

14   that evidence has to come before you, and you can't rely on

15   your background.  Maybe you took a class or a course in

16   photography, or whatever, and you can't rely on that.

17           Is everyone okay with that?  You still have to decide

18   the case based upon the evidence that's presented to you.

19           Now, and I'm just going to say this in general:

20   Sometimes in a technical case, and there may be some

21   technicalities in this case, if you have a question, maybe a

22   word or phrase that's used that you're not familiar with, or

23   some concept that you're not really familiar with, and you're

24   not sure, you do have the ability to just write down a

25   question.  During the trial, you can write down a question,

1    present it to me.  What I have to do on questions, though,

2    that you submit to me is I hand them to the lawyers, and they

3    have to decide whether or not they're going to ask the

4    question.

5            Sometimes they won't ask a question because, as it

6    turns out, although you might be interested in it, it would

7    not be relevant to their particular case, or I might have

8    ruled that it would not be admissible.  So -- but I can assure

9    you, that if you write down a question, they're going to pay

10   very careful attention to it because they know you want to

11   know the answer.  So they're not going to avoid your question

12   just because they don't want to answer it.  If they don't

13   answer it, it's because they can't because they don't have the

14   witnesses available, or it's not technically relevant.  I

15   might have ruled that they can't get into that area.  So

16   please do not hold it against either party if you write down a

17   question and they're not able to give you an answer to it.

18           But feel free, certainly, during the course of the

19   trial if you have a question or concern -- a question that

20   you'd like to ask or have answered, go ahead and jot it down.

21           Okay, now, the unique situation about this particular

22   case because sometimes people wonder -- okay, if this is

23   something about -- I heard the word "prostitution," and I

24   heard the word -- you know, displaying some photos over the

25   Internet, or whatever, and I really wasn't sure why that's in

1   federal court, why it's a criminal offense in the federal

2   courts.  The unique aspect, of course, is that the allegation,

3   and this is still one element the Government has to prove,

4   with respect to the age of the individual or the perception of

5   the age of the individual.  Whether or not the person knows

6   that the person was -- and the magic age, of course, is 18.

7        So those are various aspects, and I'll give you jury

8   instructions relating to that, but it is why we're in federal

9   court, and there are some laws that relate to individuals

10  under the age of 18 that might otherwise be legal if the

11  person was over the age of 18.  So there's that age

12  differential.

13       Is there anyone who could not follow the law -- and,

14  again, I have not been able to give you the law, but it will

15  relate to someone under the age of 18, at least in terms of

16  the jury instructions, and so that's something, you have to

17  follow the law, whatever it is that I provide to you.  Does

18  anyone have any concern, a problem about that?

19       Okay, I asked you in general about people in law

20  enforcement, but I would like to ask you specifically because

21  there are some agencies involved that might be involved in

22  this case.  And the question is whether or not -- a follow-up

23  question is whether or not you, a family member, or a close

24  friend has ever worked for certain law enforcement agencies,

25  the Federal Bureau of Investigation, the South San Francisco

1    Police Department, the Sacramento Police Department, the

2    Riverbank Police Department, or the United States Attorney's

3    Office.  Does anyone have any -- either you, a family member,

4    or a close friend ever been involved with any of those

5    agencies?

6            Okay, now, I've asked you a number of questions --

7            MR. ENOS:  Your Honor, I'm sorry to interrupt.  I

8    believe the Stanislaus County Sheriff is the local agency in

9    that county rather than Riverbank Police Department.

10           THE COURT:  Oh, okay, Stanislaus County Sheriff's

11   Department.  Yes, Juror 0018.

12           JUROR 0018:  I work with Stanislaus Sheriff's

13   Department.

14           THE COURT:  Okay, if we can get the mike down to you.

15   And then what is your relationship or role -- professional

16   role with that Sheriff's Department.

17           JUROR 0018:  I'm their customer service sales rep.  I

18   meet with them or speak with them once every month or every

19   two months.

20           THE COURT:  Okay, great.  Now, do you work primarily

21   with departments within -- or maybe offices within, like,

22   their technical support or as opposed to maybe the line

23   officers, the patrol officers or detectives, or do you work

24   with them because they have to be aware of how systems work.

25           JUROR 0018:  I work closely with the line officers,

1   sergeants, captains, and officers out in the field.

2        THE COURT:  Okay, I read off a whole bunch of names,

3   and let me ask if any of these are familiar with you:  Mark

4   Copeland, Steve Watson, James Walsh.  Do any of those ring a

5   bell with you in terms of people maybe you've come in contact

6   with?

7        JUROR 0018:  There's so many names in my head, I'm

8   not sure.

9        MR. ENOS:  Your Honor, I believe the defendant listed

10  Eric Torres who also worked for the same agency.

11       THE COURT:  Oh, and Eric Torres.  Any of those?  And

12  that's understandable.  There are a bunch of folks.

13       Now, do you think that your working relationship with

14  them would affect your service as a juror, that if the

15  Government -- now, let me use my typical example.  If the

16  Government hasn't proven its case beyond a reasonable doubt so

17  that you would feel -- well, you would have to vote not

18  guilty, do you think back in the jury room, you'd say, you

19  know, I'm going to see the Stanislaus County deputies or

20  detectives next week, and if they find out that I voted not

21  guilty, they might terminate our contract, or they might view

22  me differently or might give me a dirty look, whatever.  Do

23  you think that that would influence how you decide the case or

24  how you view the case including witnesses that might testify?

25       JUROR 0018:  I don't think so.  Just to make it

1   uncomfortable possibly, but --

2          THE COURT:  And I think the Government would agree.

3   I mean, the jury decides the case.  Once the jury decides the

4   case, that's it.  We rely on the jury, and we respect their

5   verdict.  We just want to make sure obviously that the folks

6   aren't influenced by any particular witness in the case.  You

7   have to decide the case strictly on the merits.

8          If a person were to appear to testify and they

9   identified themselves as a deputy or detective with the

10  Stanislaus County Sheriff's Office, do you think you would

11  automatically tend to give them more weight or less weight

12  based upon your experiences just in general with that

13  department?

14         JUROR 0018:  I'd try hard not to, but I may.

15         THE COURT:  Okay, now if -- because the basic

16  standard is like all witnesses -- now, it could well be that

17  whatever they say is not contradicted or very minor

18  contradictions, you can believe them, but if there is a

19  dispute between what that person said, testifies to and

20  somebody else, you still have to compare the two and look at

21  all the evidence, and you still have to make your credibility

22  determination.  And it isn't necessarily that one person is

23  lying.  It's like the example that I give on the traffic

24  collision scenario.  What I guess researchers have discovered

25  is, if you have six people witnessing the same incident, and

1    you interview them right after that, their answers are

2    different.  Their perspectives are different.  It's not that

3    they're lying, it's just that that's their perspective.

4    Sometimes it is a matter of perspective.  So it's not like

5    you're calling a witness a liar, or they're not being

6    truthful, it's just that there's a different perspective, and

7    this person happened to have a better view, or the evidence

8    seems to support this person's version as opposed to the other

9    person's version, so that's really the role of the jury to

10   look at all the evidence.  Are you okay with that?

11          JUROR 0018:  Yes.

12          THE COURT:  Now, I will say this:  If you're selected

13   to serve as a juror in this case, you do have to be objective,

14   and it could well be if someone from the Stanislaus County

15   Sheriff's Office says one thing, and somebody says something

16   that's different, you still have to do that objective

17   assessment and evaluation.  Are you okay with that?

18          Now, if it turns out that someone were to appear to

19   testify, and you go, "Oh, my gosh, I do recognize him, I have

20   seen him before," you just need to let us know right away

21   during the course of the trial.  We will have to ask you if

22   that's going to affect your continuing service as a juror, but

23   don't feel you have to say, "You know, I told them I didn't

24   remember, now I remember, what am I supposed to do?"  You just

25   have to let us know that you do recognize that person.

1          JUROR 0018:  All right.

2          THE COURT:  Okay.  So is there anything else that you

3     have not had a chance to mention because I didn't ask a

4     question, or I was getting to that area, and I just started

5     off on a different track?  Anybody about your service as a

6     juror that you have not had a chance to mention that you feel

7     that the parties should be aware of, anybody, anything?

8          All right, let me ask counsel, are there any

9     follow-up questions that you might have at this point in time

10    that you want me to ask?

11         MR. ENOS:  That I want the Court to ask?

12         THE COURT:  For me to ask.  Obviously you'll get a

13    chance to ask.

14         MR. ENOS:  No, Your Honor, not on the Government's

15    side.

16         THE COURT:  Defense, anything further you want me to

17    ask at this point in time?

18         MS. McGLENON:  No, Your Honor.

19         THE COURT:  Okay.  All right, it's almost 12:00.

20    We're going to take our noon recess to 1:30.  When you come

21    back at 1:30, I'm going to give the attorneys an opportunity

22    to ask you some questions.  Now, their time frame is limited,

23    but they're going to ask some questions of you.  They may ask

24    you individually, they may ask you as a group.  Same ground

25    rules apply.  If they ask you a question and you're not sure

1   what they're asking, just ask them to repeat or rephrase it.

2   If they ask you a question and you really don't want to answer

3   it in front of the entire panel, let us know, and when we take

4   a break, we'll give you an opportunity to respond to whatever

5   those questions were.

6          Now, during the noon break, I do need to just

7   mention, and I'll give a jury instruction that's in more

8   detail.  But obviously you don't know anything about the case.

9   But as you go out for lunch, this is a big building, but

10  there's so many -- there are only very limited common areas

11  that you're going to see, the lawyers, some of the parties,

12  witnesses, et cetera, the hallway, the rest rooms, the cafe

13  downstairs, the elevators, et cetera.  You know, they're not

14  going to talk to any of you folks, and they really aren't

15  allowed to.  They know that if you're to approach one of them

16  and you recognize them, and you say, "Is there a good place to

17  go get something to eat really quickly," or something like

18  that, that may be perfectly innocuous to you, but to somebody

19  else, they'll say, "Look at that lawyer, he or she is trying

20  to influence that prospective juror," and it just creates a

21  problem.

22         So rather than have that issue, the lawyers, they

23  don't know all of you, obviously although you do have the

24  stickers on you.  You know, in order to not create any

25  sub-issues, they're just not going to talk to people.  So if

1    you see them in the hallway, and they're like ignoring you,

2    don't think, oh, doesn't that lawyer know I'm a juror, or

3    whatever?  You know, they're just trying to respect your

4    independence, and they don't want any issues.  So they are not

5    going to speak with anyone.  They'll try to avoid you the best

6    they can.  Now, sometimes -- and this happened in the past, so

7    I'll just forewarn you.  You may be eating your lunch

8    downstairs in the cafe, or maybe a restaurant and you're

9    minding your own business, and someone starts talking in the

10   seat next to you or whatever, and you realize they're talking

11   about the case.  Now, sometimes they don't recognize you, or

12   it might be a witness that doesn't realize that.  Try to avoid

13   that.

14          Elevators, I had a juror one time, they were the

15   first one in the elevator.  Everyone came in.  Couple people

16   in the very front didn't realize there was a juror in the

17   back, and they were chitchatting about the case.  Okay, try to

18   avoid situations, and, again, the lawyers know that shouldn't

19   happen.  Usually it's inadvert, and usually it's witnesses

20   who aren't particularly aware of the environment.  But if

21   anything like that should happen, please report it to me right

22   away, and we'll try to get it resolved.

23          But otherwise -- okay, and you did a really good

24   job, and I'd like to remind you, when you come back, make sure

25   you take the same seats because they're all assigned seats.

1    Those of you in the audience area, you can just go ahead and

2    retake a seat.

3         We're going to take our noon recess until 1:30 this

4    afternoon.  We'll complete the jury selection process today

5    and then move forward.  But with that, then, go ahead and take

6    your noon break, and we'll see you at 1:30 this afternoon.

7         (The prospective jury panel was excused.)

8         THE COURT:  All right, are there any prospective

9    jurors left in the courtroom?

10        All right.  Okay, I pretty much completed this.  When

11   we get back at 1:30 this afternoon, plaintiff's side, the

12   Government will -- 15-minute voir dire after they're done,

13   then defense side, 15 minutes.  And then I'll just turn to

14   you, and if there is a cause issue, just mention that, and

15   I'll send the jury panel out.  If both sides pass for cause,

16   then we'll start the peremptory challenge stage.  Again,

17   you're focusing on the 12 in the box, and you know that 13

18   through 18 are going to be your next jurors in line.  Once

19   we've exercised six plus one, seven peremptories so that there

20   is a vacant seat in the jury box, Miss Gaumnitz will go ahead

21   and fill those.  The first replacement will fill the empty

22   seat in the jury box.  The next six will be seated in the

23   front row.  We'll continue on with the voir dire of the new

24   seven, and I'll probably give you folks six or seven minutes,

25   after I'm done with voir dire of the new seven, to go ahead

1   and do your individual voir dire of the new seven that are

2   seated.

3           But with that, is there anything else you want to

4   place on the record or any thoughts, concerns, plaintiff's

5   side, anything?

6           MR. ENOS:  Just to clarify, Your Honor.  After the

7   first challenge, 13 would be the next to go in the box?

8           THE COURT:  Yes.  Once you exercise your first

9   challenge, prospective juror number one will be excused, and

10  13 will go sit in their seat.

11          Okay.  All right, defense side, anything?

12          MS. McGLENON:  No, thank you, Your Honor.

13          THE COURT:  Okay, we'll see you at 1:30 this

14  afternoon.

15          (Recess.)

16                    **AFTERNOON SESSION**

17          THE COURT:  All right, the record will reflect that

18  all prospective jurors are present in the jury box in the

19  audience area.  We'll go ahead and continue with the jury

20  selection process.

21          As I mentioned just before the noon break, I am going

22  to allow the counsel for the parties to go ahead and ask

23  questions.  A reminder, again, if they ask you a question and

24  you're not sure what they asked, go ahead and ask them to

25  repeat or rephrase it.  If they ask you a question that you

1    don't want to answer in open court, let us know.  When we take

2    a break, we'll give you an opportunity to respond out of the

3    presence of your fellow prospective jurors.

4            So if there is nothing further preliminarily, we'll

5    go ahead and commence, and plaintiff's side, Government, may

6    inquire.

7            MR. ENOS:  Thank you, Your Honor.  Is it okay for me

8    to stand here, or does the Court prefer me to be at the

9    lectern?

10           THE COURT:  Either way.  Just make sure you keep your

11   voices up.  That would apply to both sides.  You can either

12   speak from counsel table or at the podium, whichever you

13   prefer.

14           MR. ENOS:  I'll just limit my questions to jurors one

15   through 12.

16           THE COURT:  All right.  Either one.  All 18.

17           MR. ENOS:  All 18.  Okay, great.

18           Good afternoon everyone.  I'm curious about a couple

19   of you that either teach or work with kids, and, Juror 0010,

20   is that correct?

21           JUROR 0010:  Correct.

22           MR. ENOS:  What age kids do you teach?

23           JUROR 0010:  High school age.

24           MR. ENOS:  And you're a special education teacher?

25           JUROR 0010:  Special education teacher.

124

1          MR. ENOS:  Do you teach special day class, or I can't
2    remember the term.
3          JUROR 0010:  Some are more moderate and special day
4    in RSP.  I teach ED students, which is emotionally disturbed,
5    emotionally delayed.
6          MR. ENOS:  Okay.  And this ranges from 9th through
7    12th grade?
8          JUROR 0010:  Yes.
9          MR. ENOS:  Thank you.
10          Juror 0007, and you also work with kids with
11    disabilities.
12          JUROR 0007:  I do.
13          MR. ENOS:  What's the age range?
14          JUROR 0007:  Zero to 22-year old.
15          MR. ENOS:  Zero to 22.  And what types of
16    disabilities do you commonly see with respect to your work?
17          JUROR 0007:  We --
18          THE REPORTER:  I'm sorry, you all are speaking over
19    there.  I need your voices to come this way.
20          MR. ENOS:  Would you like me to start with my
21    question?
22          THE REPORTER:  That would help.
23          MR. ENOS:  I'll just start over.  What age range of
24    kids do you work with?
25          JUROR 0007:  Zero to 22 years old.

1    MR. ENOS:  And typically, what type of disabilities

2  do you most commonly work with?

3    JUROR 0007:  Specialty is in autism, but it's also

4  other behavioral disorders like ADD, ADHD, Rett syndrome, a

5  few other disabilities.

6    MR. ENOS:  Okay, thank you.

7    And, Juror 0001, I'm going to try to just ask you a

8  generalized question, and hopefully that takes care of it.

9  But you said you've got a son in rehab; is that correct?

10    JUROR 0001:  No, actually I have a son, and I like to

11  refer to him as rehabilitating.  He's actually unemployed.  He

12  is -- well, he's just not functioning in society correctly

13  right now.

14    MR. ENOS:  I see.  Generally medically based, or is

15  he just trying to gain traction more generally.

16    JUROR 0001:  He's just trying to get on his feet.

17  There is a medical condition involved.

18    MR. ENOS:  Okay, thank you.

19    And, Juror 0021, you mentioned earlier that you were

20  a juror in a criminal case; is that correct?

21    JUROR 0021:  Yes.

22    MR. ENOS:  And the general subject matter was someone

23  exposing themselves to a minor?

24    JUROR 0021:  Yes.

25    MR. ENOS:  And my apologies if the Court already

1    asked you this precise question.  But would your experience in

2    that case influence you either way with respect to your

3    ability to remain neutral and impartial in this case?

4            JUROR 0021:  No.

5            MR. ENOS:  Thank you.

6            Is it Juror 0015?

7            JUROR 0015:  Juror 0015.

8            MR. ENOS:  Oh, I'm sorry.  Juror 0015.  You mentioned

9    you've got a sibling who is a social worker?

10           JUROR 0015:  My dad.

11           MR. ENOS:  What kind of work does he do?

12           JUROR 0015:  He's a vocational worker for the County.

13   Fresno County.

14           MR. ENOS:  Okay, thank you.  That's all I have for

15   now, Your Honor, thank you -- oh, one generalized question.

16   This goes to all 18 of you.  Irrespective of your personal

17   feelings about any issue that may arise in this case, would

18   any of you have difficulty following the law as the Court

19   gives it to you at the conclusion of this case?  Nobody?

20           Okay, thank you.  I have nothing further.

21           THE COURT:  All right.  And defense?

22           MS. McGLENON:  Good afternoon.  My name is Ann

23   McGlenon, and I'm representing Mr. Davis, and my first

24   question that -- that I have, and I don't want anybody to feel

25   they're being picked on or anything.  But, Juror 0012, you

1   have a bachelor's in physics; correct?

2            JUROR 0012:  Yes.

3            MS. McGLENON:  And that -- as a person with a science

4   degree, you rely on evidence; correct?

5            JUROR 0012:  Yes.

6            MS. McGLENON:  And -- but you've had some hesitation

7   about your ability to do that here based on the subject

8   matter; is that correct?

9            JUROR 0012:  Yes.

10           MS. McGLENON:  Okay.  And you so you don't believe

11  that the work you do could carry over to the work you would

12  have to do here?

13           JUROR 0012:  It was a pure science degree.  I don't

14  see any relevance to this case, other than they're both

15  factually-based circumstances.

16           MS. McGLENON:  Okay.  But you do recognize that

17  they're both factually-based circumstances?

18           JUROR 0012:  Yes.

19           MS. McGLENON:  And would you be able to -- if you

20  were chosen as a juror, would you be able to distinguish the

21  facts and follow the law, do you think?

22           JUROR 0012:  Yes, I believe that was my hesitation

23  before I appreciate the nature of this case.  It would just be

24  uncomfortable to me.

25           MS. McGLENON:  Okay.  If I can speak for everyone,

1    it's probably uncomfortable for everyone, to -- we don't -- we

2    don't sit around and talk about sex with each other,

3    especially with total strangers.  And there is going to be

4    talk about sex in this case.  And that makes everybody

5    uncomfortable.

6              Now, let's see, one of the -- Juror 0022, you work

7    with junior high --

8              JUROR 0022:  High school.

9              MS. McGLENON:  High school.  Okay.  And -- and you're

10   an assistant principal?

11             JUROR 0022:  Correct.

12             MS. McGLENON:  Is that like what I would call a

13   vice-principal?

14             JUROR 0022:  I'm the Duchess of Discipline.

15             MS. McGLENON:  Okay.  So you've had experience with

16   kids?

17             JUROR 0022:  Correct.

18             MS. McGLENON:  And you've probably even had

19   experience with kids and cell phones?

20             JUROR 0022:  Right.

21             MS. McGLENON:  And you're a mandated reporter, right?

22             JUROR 0022:  Yes.

23             MS. McGLENON:  And what that means is that you would

24   have to -- if you saw something that made you uncomfortable,

25   you would have to report it, is that how that works?

1          JUROR 0022:  Yes.

2          MS. McGLENON:  Okay.  And -- and work -- I mean, I

3    have the good fortune of not having to work with teenagers,

4    only having them.  When you do that -- do you see all range of

5    behaviors in kids?

6          JUROR 0022:  I'm not quite sure what your question

7    is.

8          MS. McGLENON:  My question is, have you seen good

9    kids, bad kids, and in-the-middle kids?

10         JUROR 0022:  I've had all extremes.  I used to be the

11   vice-principal at juvenile hall.  I've worked with court

12   community day school, boot camp, Special Ed, regular Ed; I

13   have a very wide range of background.

14         MS. McGLENON:  Oh, okay.  You're probably pretty sure

15   that you may not be comfortable with everything, but you could

16   tolerate --

17         JUROR 0022:  I've seen my fair share of nude

18   photographs from students.

19         MS. McGLENON:  Okay.  Thank you.

20         Juror 0020, you expressed some the discomfort?

21         JUROR 0020:  Yes.

22         MS. McGLENON:  Because you have daughters.

23         JUROR 0020:  Yes.

24         MS. McGLENON:  And in your experience with -- what

25   kind of work do you do?  You're an insurance marketing

1    manager?

2              JUROR 0020:  Yes.

3              MS. McGLENON:  But your daughters are grown now?

4              JUROR 0020:  Yes.

5              MS. McGLENON:  And in your experience with them as

6    teenagers or with their friends, did you ever see them do

7    things that made you terribly uncomfortable?

8              JUROR 0020:  No.

9              MS. McGLENON:  Never.  Okay.

10             And if you saw a young woman doing something that

11   made you terribly uncomfortable, that would be intolerable for

12   you?

13             JUROR 0020:  Yes.

14             MS. McGLENON:  Okay.  Do you think that there is any

15   way that you could be fair in this -- fair to either party in

16   this case, the party that is representing this young woman or

17   to Mr. Davis?

18             JUROR 0020:  Honestly, I'd like to say I could.  All

19   I can say is I'd try.

20             MS. McGLENON:  If you were on trial today with a

21   person in your frame of mind, would you be comfortable?

22             JUROR 0020:  No.

23             MS. McGLENON:  Your Honor, do you want us to approach

24   sidebar or --

25             THE COURT:  No, if there is follow-up inquiries by

1    both sides, then we can go ahead and address it.  And I can

2    ask -- any party can ask a follow-up question.

3           MS. McGLENON:  Do you want me to do that now, or

4    should I continue to ask questions?

5           THE COURT:  Yes, go ahead and follow up, just to

6    clear this up so we can get it resolved, or I could ask the

7    question.

8           MS. McGLENON:  If you would, Your Honor.

9           THE COURT:  All right.  And, again, this applies to

10   everybody, but, Juror 0020, since you responded, the big

11   question for you, as I mentioned to all 18 of you, is in this

12   particular case, what little you know about it, which is

13   nothing except what I read to you, but you know the kind of

14   case this is, and the bottom line -- and I think, you know,

15   Juror 0020, you're being as honest as possible.  And I think

16   the bottom line is, given the kind of case this is, can you be

17   fair and impartial to both sides?  Now, fair and impartial,

18   again, is some kind of a harsh term because everyone is

19   basically fair and impartial, and if you say "no," then it's

20   like, okay, am I admitting that I'm biased, et cetera,

21   et cetera, that sort of thing.  It's not really.  It's just

22   the kind of case this is.

23           For all of you -- and, Juror 0020, I'm going to focus

24   in on you.  When you receive evidence in this particular case,

25   if you say, you know, if I see a picture of a nude girl, and

1   if I am satisfied she's under the age of 18, he's toast, he's

2   going to be -- because I don't care what the elements are.

3   That's all I need to convict him because there are many

4   elements in an offense.  It isn't just the fact that

5   someone -- or the jury finds that someone is under the age of

6   18.  There are a lot of elements.  We can't get into any

7   detail on jury selection, but what the parties are asking for

8   is 12 people who are fair and impartial; that is, sitting

9   right there, knowing the kind of case this is, that you can be

10  fair and impartial.  If the Government proves his case beyond

11  a reasonable doubt, you'll find him guilty.  If the Government

12  does not prove him beyond a reasonable doubt, you find him not

13  guilty.  That's the province of the jury.  If you think that

14  if you hear evidence about someone who is under the age of 18,

15  or you believe someone is under the age of 18, and that's all

16  I need, I'm going to convict this guy, then you're not being

17  fair.  And, again, I use that term not being fair very

18  loosely, and it's not an accusation.  It's just the parties

19  need to know.  Both sides need to know.  The Government is not

20  asking for 12 people or even one person leaning for them.  The

21  defense is not asking that.  Just asking that 12 people have

22  an open mind, and given the kind of case this is, that they

23  are going to, not that maybe, possibly, maybe, but they can be

24  fair and impartial.  They're going to decide this case

25  strictly on the facts and the law and not on pure emotion that

1   will drive them to find them guilty or not guilty based on

2   personal emotions based on what they see here in the

3   courtroom.

4          So with that little bit of a speech, Juror 0020, the

5   question that we all are asking you, that you have to answer

6   for yourself, is given the kind of case this is, given your

7   family, given your feelings for your family, can you be fair

8   and impartial to both sides in this case?  That's all we're

9   asking.  That's all we're asking anybody.

10          And, again, I want to make sure, this is why we're

11   asking people because you all come in with your backgrounds,

12   and then sometimes it's hard to say, no, I can't be fair, you

13   know, because I don't want people to think I'm just not a fair

14   person.  So it's just the kind of case this is.

15          JUROR 0020:  I don't think so.

16          THE COURT:  Okay, that's good.  Anything else for

17   either side?

18          MR. ENOS:  No, Your Honor.

19          THE COURT:  Anything further by defense?

20          MS. McGLENON:  Your Honor, I have a few more general

21   questions.

22          THE COURT:  No, no, just for Juror 0020.

23          MS. McGLENON:  No, nothing more for Juror 0020.

24          THE COURT:  Submit it as to Juror 0020?

25          MS. McGLENON:  Yes, Your Honor.

1          THE COURT:  Okay, all right, I appreciate that, and

2     you've really struggled on this, and you said right at the

3     outset what your concerns are and your family, so I'll go

4     ahead and excuse you from this particular case.  Call that 800

5     number after 5:00 on Friday to see if there is another

6     assignment for you, but I'll go ahead and release you from

7     this particular case.  Okay?

8          THE CLERK:  Juror 0023.  Is it Juror 0023?

9          JUROR 23:  Juror 0023.

10          THE CLERK:  Juror 0023, thank you.

11          THE COURT:  All right, Juror 0023, were you able to

12     hear and understand all the questions that were asked so far?

13          JUROR 0023:  Yes, Your Honor.

14          THE COURT:  Okay, and were you able to form an answer

15     in your own mind as to each of the various questions?

16          JUROR 0023:  Yes, sir.

17          THE COURT:  Okay.  Now, I'm not going to repeat every

18     question to you because you and everyone else in the audience

19     has heard all the questions and formed an answer.  You've

20     heard the answers of 18 other -- more than 18 other people,

21     but if I don't ask you a specific question, it's not that I

22     don't think it's important.  It's just that I understand

23     you've heard them.  So I'm going to ask you a few questions

24     that relate to you specifically, and then if there's anything

25     else that you would comment on, based upon what you've seen

1    and heard, please let me know.

2            JUROR 0023:  Okay, Your Honor.

3            THE COURT:  So let me start off with some personal

4    matters first.  Have you heard anything about this case?

5            JUROR 0023:  No.

6            THE COURT:  Do you know anybody I've mentioned by

7    name so far?

8            JUROR 0023:  No.

9            THE COURT:  Can you give us some background

10   information on yourself?

11           JUROR 0023:  Well, I am from Bakersfield.  I'm

12   married; 61 years old; I got three kids.  They're grown-ups,

13   with my daughter with us.  The two boys is -- one in New York,

14   and one in Bakersfield, too, with a family.  I have one

15   grandson, two years old.

16           My husband is a U.S. Navy, retired for 21 years.  And

17   he's now working at the Bolt House Farm in Bakersfield, too,

18   and that's about it.  This is my first time in Fresno, driving

19   myself, and I'm kind of -- Saturday we drove -- my husband

20   drove me here to -- familiar the place here, and I thought I

21   make it, but then I missed one.

22           THE COURT:  Well, thank you for being here.

23           Let me ask you a -- following up on your children, do

24   any of them work outside the home?  Do they have jobs outside?

25           JUROR 0023:  Yes.  My daughter works in hospital, a

1   CNA.  My other son is in New York taking Master's.  And my

2   youngest is working at Best Buy.

3          THE COURT:  Okay.  And this on the Master's, the son

4   that's working on the master's degree, what is that in?  Do

5   you know?

6          JUROR 0023:  Say it again.

7          THE COURT:  The master's degree, what is it, is it

8   business or --

9          JUROR 0023:  He's counselor.  He graduated 2008 at

10  UCLA in psychobiology and counseling.

11         THE COURT:  Okay, great.  And he's in a counseling

12  major now for counseling?

13         JUROR 0023:  Yes.  He works three years in UCLA and

14  works in China for three years.

15         THE COURT:  Okay, great.  And, I'm sorry, did you

16  mention -- are you working outside the home?

17         JUROR 0023:  No.  Before, I have a home care facility

18  for adults with mental illness.  For 17 years, I -- I stopped

19  doing -- working with them 2012 to take care of my ailing

20  mother, and my mother passed away.  And, again, it will be one

21  year this March 30th.

22         THE COURT:  All right.  Okay.  And then your

23  educational background?

24         JUROR 0023:  High school.

25         THE COURT:  Anything about scheduling that we need to

1    take into consideration?

2            JUROR 0023:  Yes, actually I do have the 20th and

3    27th.  The 20th, I have a dental appointment, and 27th is my

4    follow-up checkup on my backache.  I got X-rayed.  The result

5    will be discussed on.

6            THE COURT:  Okay.  Now, the 20th, we're not going to

7    be in session, so you're okay.

8            JUROR 0023:  Okay.

9            THE COURT:  The 27th, we might be.  If we are, can

10   you reschedule the appointment on the 27th if we have to?

11           JUROR 0023:  I can try.  So if I can make or change

12   the appointment, do I need to call -- do I need to call if I

13   change in case?

14           THE COURT:  Yeah, if you can -- yeah, because if you

15   serve as a juror, and if we do spill over into Friday, you

16   might have to change that appointment.

17           JUROR 0023:  Yeah.

18           THE COURT:  Okay?  All right.

19           Okay, have you ever served as a juror before?

20           JUROR 0023:  Just like this, but I didn't make the

21   last thing or to help, I guess.

22           THE COURT:  Okay.  Anything about that experience

23   that would affect your service as a juror here today?

24           JUROR 0023:  Well, kind of because I have a friend

25   who was convicted with molestation.  So --

1          THE COURT:  How long ago was that?

2          JUROR 0023:  It's about like 15 -- 10 years.

3          THE COURT:  Did you go to court to see what was

4    happening?

5          JUROR 0023:  No, I just like -- I don't know the

6    system, but we went there with -- like support for -- for him,

7    like make a letter, write the letter for the Court, for him,

8    so I'm not sure really.

9          THE COURT:  Okay.  Now, you understand this is a

10   totally different case, and you have to not think about that

11   other case when you decide this case.  Can you do that?

12         JUROR 0023:  Yes, I can -- well, based on the

13   presented evidence maybe.

14         THE COURT:  Because that's what you have to do, just

15   what you see and hear in court is all you can decide on, and

16   you can't think about that other case to help you decide this

17   case.  Okay, are you okay with that?

18         JUROR 0023:  Yes, Your Honor.

19         THE COURT:  All right.  Now, I asked a number of

20   questions.  I'm not going to repeat them specifically, but we

21   do have basic principles that apply in this case, the

22   presumption of innocence, the burden of proof, no requirement

23   on the defense to present anything, standard of proof beyond a

24   reasonable doubt.  Are you okay with those principles and how

25   they apply in this court?

1          JUROR 0023:  Yes, Your Honor.

2          THE COURT:  Okay, and then credibility,

3    believability, you decide credibility of every witness,

4    including expert witnesses.  Are you okay with that?

5          JUROR 0023:  Yes, Your Honor.

6          THE COURT:  And then you understand what kind of case

7    this is.  Is there anything else?  You already mentioned your

8    friend there, but is there anything else about this case or

9    anything else that you have not had a chance to mention that

10   the parties should know about you as far as your ability to be

11   a fair and impartial juror in this case?

12         JUROR 0023:  No, Your Honor.

13         THE COURT:  Okay, all right.  So right now -- is

14   there anything else that you have not had a chance to mention

15   about your service as a juror that we should know about?

16   Anything?

17         JUROR 0023:  No, except my -- excusing me from court,

18   if granted.

19         THE COURT:  Okay.  But I mean -- but if you're

20   selected as a juror, you have to serve as a juror in this

21   case, pay attention and everything, are you okay with that?

22         JUROR 0023:  Yes, Your Honor.

23         THE COURT:  Okay, good.  All right, now, I'm going to

24   allow the parties since you just came on board to follow up.

25   First, and we'll get back to defense side.  So, Government,

1    questioning of the new prospective juror?

2            MR. ENOS:  Thank you, Your Honor.

3            Good afternoon, Juror 0023.  You said you wrote a

4    letter for a friend who was convicted of a child molest case;

5    is that correct?

6            JUROR 0023:  Correct.

7            MR. ENOS:  Did you happen to watch any of the

8    evidence of the trial?

9            JUROR 0023:  No.

10           MR. ENOS:  Did you have an opinion with respect to

11   whether you thought he was guilty?

12           JUROR 0023:  No, because we were just asked by the

13   lawyer to -- to like describe how -- what the person is, how

14   the person is.

15           MR. ENOS:  Okay, so did you develop any opinion with

16   respect to whether this person was treated fairly by the

17   criminal justice system?

18           JUROR 0023:  No, except just the relationship being a

19   friend.  And with a friend, you know, knowing his other

20   character, that's just about it.

21           MR. ENOS:  And did you believe he was personally

22   innocent?

23           JUROR 0023:  Well, to me, with our relation with --

24   our friendship, I find like he's innocent.

25           MR. ENOS:  So notwithstanding the fact that he was

1   convicted, you still believed he was innocent?

2            JUROR 0023:  Convicted to me is in the sense because

3   there's proof of what he's doing.  But in my own judgment, he

4   is not -- he cannot do it because I know him long enough to

5   know the character he is, what kind of a person.

6            MR. ENOS:  So, in your opinion, based on your opinion

7   of his character, you don't think he did it?

8            JUROR 0023:  Yes.

9            MR. ENOS:  Is that correct?

10           JUROR 0023:  Correct.

11           MR. ENOS:  Okay, thank you.

12           THE COURT:  And now we'll continue with defense

13   voir dire.

14           MS. McGLENON:  Thank you, Your Honor.

15           Juror 0019?

16           JUROR 0019:  Yes.

17           MS. McGLENON:  Don't be scared.  I don't know much

18   about you.  You said you're -- are you a currently practicing

19   paralegal?

20           JUROR 0019:  No, I'm going to school to become a

21   paralegal, but I do work at a law firm.

22           MS. McGLENON:  And law firm where?

23           JUROR 0019:  In Bakersfield.

24           MS. McGLENON:  In Bakersfield.  Okay, and do you do

25   any criminal law matters?

1          JUROR 0019:  No, we do civil litigation.

2          MS. McGLENON:  Okay.  And one of the things that

3    we're sometimes concerned about -- and there's a lot of stuff

4    that we get concerned about, but one of them is people

5    bringing their certain areas of expertise, whatever they may

6    be, into the jury room to try to persuade people, you know,

7    they did that wrong, or they did that right, or whatever.

8    Will you be able to set aside your education and training?

9          JUROR 0019:  Yeah.  I've just started school, so I

10   don't know much about the legal field.  I know filing and

11   clerk duties, but --

12         MS. McGLENON:  Okay, thank you.  That answers that.

13         Juror 0007?

14         JUROR 0007:  Yes.

15         MS. McGLENON:  I have a similar question for you.

16   You have your doctorate?

17         JUROR 0007:  Yes.

18         MS. McGLENON:  In behaviorism?

19         JUROR 0007:  Yes, it's psychology with minors,

20   concentration, applied behavior analysis.

21         MS. McGLENON:  Okay, and my similar question for you

22   would be -- I suspect that you -- and I may suspect wrong, but

23   you're a person that looks at people and kind of analyzes?

24         JUROR 0007:  Yes.

25         MS. McGLENON:  And will you be able to set that aside

1  in the jury room -- I'll ask it.  You can answer it.

2          JUROR 0007:  I think being a behaviorist, we look at

3  the function of the behavior.  We look at the behavior to see

4  why this behavior did what it says that it did.  So it's the

5  form of it.  It's the function of it, and then we analyze it

6  to see what was the antecedent to the behavior and what's the

7  consequence.

8          So I think when I look at anything, that's how I

9  review everything.  But we never interpret.  It's always

10 observation, being specific and observable in any certain case

11 or any certain, you know, child that we treat.

12         MS. McGLENON:  Okay.  And that's your focus, is in

13 pediatrics?

14         JUROR 0007:  Yes.

15         MS. McGLENON:  And you said autism?

16         JUROR 0007:  Yes.  Specialty is autism, but it's

17 Asperger's, ADD, ADHD, neurological disorder cases.

18         MS. McGLENON:  Okay.  Is there anything about your

19 particular education that you think is going to be a problem

20 in the jury room, or that you would not be able to set aside

21 your education?  We don't ask that people, you know, set aside

22 everything they know, but specifically, if we have an expert

23 up here that says one thing, and you say, "That doesn't look

24 right to me," would you be able to follow the directions of

25 the Court?

144

1          JUROR 0007:  Yes, absolutely.

2          MS. McGLENON:  Okay.  Juror 0018, just a couple of

3   questions.  You work with -- you work with a lot of law

4   enforcement, including officers from Stanislaus Sheriff's who

5   may or may not be present here testifying.  Let's assume that

6   you don't know anybody, and three or four people testify, and

7   they testify on ancillary matters that are not necessarily --

8   go to guilt or innocence.  Will you be able to give their

9   testimony the same credence as you would give a layperson that

10  comes in and testifies?

11         JUROR 0018:  Yes.

12         MS. McGLENON:  Okay.  And are you -- if it's okay for

13  me to ask, did I hear you say something about ankle monitors,

14  is that something --

15         JUROR 0018:  Correct, yes.  I train on that

16  equipment.

17         MS. McGLENON:  Okay.  So you teach the line officers

18  how to -- how to use the, like, global positioning monitors?

19         JUROR 0018:  Correct.

20         MS. McGLENON:  Okay.  Okay.

21         JUROR 0018:  It's the equipment and software.

22         MS. McGLENON:  Okay.  Okay, great.  Thank you.

23         The other general questions I have are is anybody a

24  member of any club or group that is specifically pro --

25  supporting law enforcement, and I don't mean that, you know,

1    Sheriff's that call for donations.  We say call my house.  But

2    like, say, Mothers Against Drunk Drivers, or some kind of a

3    specific -- specific justice group?  No?  Okay.

4              And -- okay, this weekend, I was driving up to the

5    Bay Area.  On the gas station window was a flier about human

6    trafficking.  It's kind of all over the news.  And what I want

7    to ask you is whether you can separate anything that you --

8    well, first, has anyone seen any news accounts, fliers on the

9    Love's gas station in Ripon, any other kinds of things about

10   human trafficking?  Okay.

11             JUROR 0018:  Not necessarily there, but -- yes.

12             MS. McGLENON:  Right.  But you have seen -- and will

13   you be able to separate any kind of news accounts or

14   information from the actual information and the actual case

15   charged here?

16             JUROR 0018:  Yes.

17             THE COURT:  Okay.  Anybody else?

18             JUROR 0001:  Yeah, several months ago, I looked at

19   some ministry that was directly involved with freeing ladies

20   that had been taken captive on a foreign wide scale, and

21   they're directly involved with, you know, getting them out of

22   slave rings, is what they call it, you know, into a safe house

23   and get them rehabilitated and healed and back into a

24   functioning -- you know, to be able to -- to get them back

25   into their families, a functioning family environment and

1    stuff like that.

2         MS. McGLENON:  And having heard that and made inquiry

3    into it, you would be able to separate whatever evidence is

4    here that may portray itself as having to do with human

5    trafficking from the -- you would be able to separate those

6    things and listen to the evidence here; am I correct?

7         JUROR 0001:  Yes.

8         MS. McGLENON:  Okay.  Anybody else?  Do you have any

9    questions -- well, not questions, but issues regarding any

10   news accounts on that scale?

11        And would all of you be able to follow the law

12   regardless of what your personal opinions are?  Okay.

13        And, Juror 0016, a quick question for you.  You're a

14   foster parent?

15        JUROR 0016:  Yes.

16        MS. McGLENON:  Much like a person who is a high

17   school administrator or otherwise.  You have experience

18   with -- with kids that have been in trouble?

19        JUROR 0016:  Yes.

20        MS. McGLENON:  Because sometimes they come to you

21   because they're -- they've been hurt -- well, probably always

22   they come to you because they've been hurt, but also sometimes

23   they come to you in trouble.  Right?

24        JUROR 0016:  Yeah.  Well, all of them are removed

25   from their families for -- you know, whether the parents have,

1  you know, legal issues, drug issues, or there is battery and

2  things like that, yes.

3          MS. McGLENON:  And if the child, the minor in this

4  case, had been in foster care, do you think that you would

5  hold her -- her to a different level of -- would you require

6  more or less of her than you would require from other

7  witnesses?

8          JUROR 0016:  I -- with the children we have in our

9  home and have had at our home, we've been equal to all of

10  them, no matter what their circumstances.

11          MS. McGLENON:  Okay.  And if there were testimony

12  from a witness here who had been in foster care, would you

13  take her testimony as more true or less true than the

14  testimony of other people that might take the stand?

15          JUROR 0016:  No, I wouldn't do that.

16          MS. McGLENON:  Okay.  I have no further questions.

17          THE COURT:  All right.  As to cause matters, either

18  party wish a sidebar.  On that?

19          MR. ENOS:  Briefly, Your Honor.

20          THE COURT:  Can we just have a very quick one.

21          (There was a bench conference outside the courtroom,

22  which was not reported.)

23          THE COURT:  Okay, we've obviously pretty much

24  exhausted our questions of all of you.  You basically

25  understand where we're going, what we're looking at.

1          I did want to mention one thing.  Juror 0023, if I
2   can have the microphone to you.

3          I just have a quick follow up question.  Now, you had
4   mentioned something about your friend, and you understand your
5   position.  You know that person, and obviously you have faith
6   in that person.  But the bottom line question is, can you set
7   whatever you might remember about that case, can you set that
8   aside and decide this case strictly on the facts here?

9          JUROR 0023:  Yes, Your Honor.

10          THE COURT:  Okay, and if it turns out -- let me just
11   use a general phrase.  You can't say, "Oh, Mr. Davis, he
12   reminds me of my friend, and the Government has proven his
13   case, so I'm going to find him not guilty because he reminds
14   me of my friend."  Okay, you can't do that.  If the Government
15   proves his case, then you have to find Mr. Davis guilty no
16   matter what happened with your friend.  Do you understand
17   that?

18          JUROR 0023:  Yes, Your Honor.

19          THE COURT:  On the other hand, if they don't prove
20   their case beyond a reasonable doubt, no matter what you think
21   personally of Mr. Davis, you have to find him not guilty, do
22   you understand that?

23          JUROR 0023:  Yes, Your Honor.

24          THE COURT:  Now, Juror 0018, you had mentioned -- and
25   I know you had some stuff going on next week, but if you're

1    selected to serve as a juror in this case, you'd have to hang

2    in there with us.  Is that something you might be able to work

3    out, scheduling-wise?

4              JUROR 0018:  Yeah.  I don't know, it was a hard -- it

5    took us about --

6              THE CLERK:  Hold it down.  Just push on the bottom

7    until the light comes on.

8              JUROR 0018:  Okay.  Took us a long time to come to

9    that date and time to agree upon that meeting.  So it would

10   be -- it would be a hardship to have to reschedule that, but

11   I'd do my best to get that done if I have to.

12             THE COURT:  Because if you were selected to serve --

13   and this applies with everyone, of course, you've just got to

14   hang in there with us for the duration of the trial, the

15   scheduling and rescheduling.  If you can do it, that would be

16   great if you'd serve as a juror or an alternate.

17             JUROR 0018:  I'm a little concerned because, as I

18   mentioned, there's two of us that we work in teams, and my

19   partner is out, so I'm covering for him meanwhile, and I am

20   concerned with my workload, with our workload, that it

21   wouldn't be able to move forward, and we really need to keep

22   it going.

23             THE COURT:  And that's understandable, but if you are

24   selected to serve as a juror in this case, you've got to focus

25   in.  Obviously what you do on outside time -- basically we

1  meet 9:00 to noon, 1:30 to 4:30.  As I mentioned, we're not
2  going to convene on Friday.  We won't be reconvening until
3  next Tuesday.  If you can work that in your schedule, that
4  would be great too.  But the bottom line is -- and this
5  applies to all the jurors.  If you're selected to serve as a
6  juror, when we're in court, you really need to focus in on the
7  trial itself.
8          JUROR 0018:  Absolutely, yes.
9          THE COURT:  Thank you.
10         Okay, are there any other cause matters that we need
11 to discuss, plaintiff's side?
12         MR. ENOS:  No, Your Honor.
13         THE COURT:  Defense side?
14         MS. McGLENON:  No, Your Honor.
15         THE COURT:  All right, understanding what we
16 discussed outside, which we'll put on the record later, are
17 the parties ready, then, to proceed on the peremptory
18 challenge portion?
19         MR. ENOS:  Yes, Your Honor.
20         MS. McGLENON:  Yes.
21         THE COURT:  Okay, now, members of the jury panel,
22 we've gone through the process, and in terms of questioning,
23 obviously the key was to get you thinking whether or not you
24 could be, quote, fair and impartial in this particular case.
25 We're now going to move into the next phase, which is what we

1    call the peremptory challenge stage, which means that both

2    sides are entitled to exercise what we call peremptory

3    challenges, that is to thank and excuse any one of you to

4    serve on this jury.

5          They're going to focus in on the 12 of you in the

6    jury box, and if any of you are excused, then those of you in

7    the front row will take their place starting with Juror 0013

8    and working our way down the line.

9          So we're still in the middle of the process, but it

10   will go fairly quickly even if we have to replace people

11   because you've heard all the questions and you've heard all

12   the answers, and we're not going to repeat them all if you do

13   come forward and replace any of the 12.

14         So basically this part goes pretty quickly.  Each

15   side will exercise a peremptory challenge.  Basically they'll

16   ask the Court to thank and excuse -- they'll cite the seat

17   number and the name, and so if you hear your name, basically,

18   you are excused.  Now because it goes go fairly quickly,

19   obviously we can't spend unfortunately a lot of time thanking

20   you for serving as prospective jurors, but obviously we do

21   appreciate it.  All I can tell you, if you are excused, if you

22   need to check with the jury clerk before you leave, you can do

23   that.  Otherwise, call that 800 number after 5:00 to see if

24   there is another assignment.

25         So we're going to begin the peremptory challenge

1   stage, and then if we exhaust the folks here, then we'll go

2   ahead and start replacing the folks here.

3         So now basically, then, it would just go

4   sequentially.  First of all, we're going to start on the

5   plaintiff's side and -- and plaintiff may exercise its first

6   peremptory.  This is orally on the record because we're

7   replacing bodies.

8         MR. ENOS:  Okay, Your Honor.  Thank you.  Juror

9   number 8, Juror 0023.

10        THE COURT:  All right, Juror 0023, you are excused

11   with our thanks.  Thank you very much.  If you need to check

12   downstairs with the jury clerk, you can do that.  Otherwise,

13   you're free to leave.  Again, just call the 800 number after

14   5:00 Friday.  But you are excused with our thanks.  Thank you

15   very much.

16        All right, and so, Juror 0013, if you can go ahead

17   and take that seat, please.

18        It is the defense peremptory.

19        MS. McGLENON:  The defense would thank and excuse

20   juror number 12, Juror 0012.

21        THE COURT:  Okay, Juror 0012, you are excused with

22   our thanks.  Thank you very much.

23        And, Juror 0014, if you can just go ahead and take

24   that seat, please.

25        All right, and it is the plaintiff's peremptory.

1      MR. ENOS:  Government thanks and excuses juror 6,
2  Juror 0006.
3      THE COURT:  Juror 0006, you are excused with our
4  thanks.  Thank you very much.
5      All right, Juror 0015, if you can go ahead and take
6  that seat, please.  It is the defense peremptory.
7      MS. McGLENON:  Your Honor -- oh, juror number 3,
8  Juror 0021.
9      THE COURT:  All right, Juror 0021, you are excused
10  with our thanks.  Thank you very much.
11      All right, Juror 0016, if you can go ahead and take
12  that seat, please.  And it is again the defense peremptory.
13      MS. McGLENON:  Juror number 8, Juror 0013.
14      THE COURT:  Juror 0013, you are excused with our
15  thanks.  Thank you very much.
16      All right, and, Juror 0017, if you can go ahead and
17  take that seat, please.  And it is the plaintiff's peremptory.
18      MR. ENOS:  The Government thanks and excuses juror
19  number 2, Juror 0002.
20      THE COURT:  All right, Juror 0002, you are excused
21  with our thanks.  Thank you very much.
22      And, Juror 0018, if you could take that seat, please.
23      MS. McGLENON:  Your Honor, before Juror 0018 takes
24  that seat, if it's our peremptory, we would thank and excuse
25  Juror 0018.

154

1        THE COURT:  All right, Juror 0018, you are excused.

2   Thank you very much.

3        All right, and it is again the defense peremptory.

4        MS. McGLENON:  We need --

5        THE COURT:  Oh, we've got -- oh, no, we have 11.

6   Okay, sorry.  Okay, yeah, what we're going to do now is we'll

7   go ahead, and the next name that's called up, we'll fill seat

8   number 2.

9        THE CLERK:  Juror 0024.

10       Juror 0025.

11       THE COURT:  Is it Juror 0025?

12       JUROR 0025:  Yes.

13       THE COURT:  Go ahead and have a seat there in the

14  front row, that first seat.

15       THE CLERK:  Juror 0026.

16       Juror 0027.

17       Juror 0028.

18       Juror 0029.

19       And, Juror 0030.

20       THE COURT:  Okay.  Now we're going to continue on

21  with that process we started this morning, but we're going to

22  focus in on the seven of you because you're new on the -- in

23  the jury box.  I'm not going to repeat all the questions that

24  I had asked previously, but, again, as I mentioned a little

25  bit earlier, that doesn't mean I don't think they're

1    important, but I know you've sat through the entire morning

2    and the beginning of the afternoon.  You know what we have

3    asked, you have hopefully formed an opinion -- an answer in

4    your own minds.  You've heard the other answers.  You

5    understand basically what we're looking at.  So the fact that

6    I or the attorneys when they follow up don't ask you the

7    specific questions that were asked earlier, it doesn't mean

8    that they're important, we're just going to ask you to speak

9    up.  We do respect the fact that you understand what we've

10   been asking for.

11          There are a few things that are personal to you

12   folks, and I'm going to go ahead and cover those first.  And,

13   again, we're just talking about the seven of you.  Do any of

14   you know anything about this case?

15          All right, do any of you know anybody that we've

16   mentioned by name so far?  Okay.

17          What I'm going to do, are there any scheduling issues

18   we need to address for the seven of you?  We'll start off

19   first, Juror 0025, with you, and then we'll pass it down.

20   Yes.

21          JUROR 0025:  Excuse me.  This is definitely not the

22   case for me.  I can tell you that right now.  But my

23   scheduling is I have surgery on the 2nd.

24          THE COURT:  Okay, that would be April 2nd?

25          JUROR 0025:  Yes.

1          THE COURT:  Now, that's okay because we will be done

2    long before then.  But I don't want any detail, but is it the

3    kind of case that --

4    **A.**   JUROR 0025:  Yes, definitely.

5          THE COURT:  Okay.  Now, I don't want any detail, I

6    don't want to know if it's you or otherwise, but is there

7    anything because of the nature of this case and your own

8    background and experience, family members or friends that have

9    caused you to -- and you've been sitting here all day, I

10   understand that, that cause you particular concern about the

11   kind of case, based on life's experiences of you or somebody

12   else that's close to you?

13         JUROR 0025:  Yes.

14         THE COURT:  Is it something that ever went to the

15   courts?

16         JUROR 0025:  Yes.

17         THE COURT:  Okay.  How long ago?

18         JUROR 0025:  Well, for myself, it's when I was a

19   child; for my daughter recently.

20         THE COURT:  Okay.  All right.  Is it still

21   proceeding?

22         JUROR 0025:  Just finished.

23         THE COURT:  Okay.  And those two incidences somehow

24   relate to the kinds of things that we've been talking about

25   today; is that correct?

157

1          JUROR 0025:  Yes.

2          THE COURT:  And as you've been sitting back there,

3   you recognize that as something that would be a specific

4   concern to you because a very personal nature; is that

5   correct?

6          JUROR 0025:  Yes.

7          THE COURT:  Inquiry?

8          MR. ENOS:  No, Your Honor.

9          THE COURT:  Defense?

10         MS. McGLENON:  No.

11         THE COURT:  All right, I'll go ahead and excuse you

12   from this particular case and just check with the jury clerk

13   if you need to.  Otherwise, you're free to leave.  Check that

14   800 number after 5:00.  I'll excuse you from this particular

15   case.  And we'll go ahead and fill that seat.

16         THE CLERK:  Juror 0031.

17         THE COURT:  Yes, and Juror 0027.

18         JUROR 0027:  Yeah, I'm a caregiver, and I get paid to

19   take care of the person that I take care of.

20         THE COURT:  Yes.

21         JUROR 0027:  And she has an appointment on the 24th.

22   And then I travel with my sister to UCLA because she has

23   cancer, and her appointment is on the 26th.

24         THE COURT:  Okay.  Now, with respect to the care

25   giving, is that something -- is it a situation where if you're

1    not able to handle something, that someone else can step in

2    and cover for you?

3            JUROR 0027:  Well, right now, I have somebody to take

4    care of her.

5            THE COURT:  That's while you're here in court.

6            JUROR 0027:  While I'm here.

7            THE COURT:  Is that possible that they can take care

8    of that person -- on that person's appointment next week?

9            JUROR 0027:  Well, I could try because I work for

10   in-home service.  So I'm getting paid to take care of her.

11           THE COURT:  Okay.  The other one, the more critical

12   is on this cancer matter, is that something that can be

13   rescheduled?

14           JUROR 0027:  No.  We just -- well, we go every

15   month -- once a month to pick up her medicine, so I do the

16   driving for her to take her down there.

17           THE COURT:  Now, when she goes down there, does she

18   visit the doctors?

19           JUROR 0027:  Yes.  Yes.

20           THE COURT:  And that's something -- is it an ongoing

21   cancer situation?

22           JUROR 0027:  Yeah, well, it's reoccurring.  It just

23   came back.  So I'm the driver and caregiver of her to take her

24   down to UCLA.  And the appointment was already scheduled

25   because we just came back last month from picking up her

1   medicine, so we have to go this month.  We have to go once a

2   month to pick up the medicine.

3           THE COURT:  Is it something that can be rescheduled,

4   or is it pretty much regulated as far as when she has to be

5   there?

6           JUROR 0027:  She has to be there because she's on a

7   clinical trial medicine, and she takes it 21 days, and then

8   when she's done, she has to go back and get the refill.

9           THE COURT:  All right.  Okay, Counsel, do you wish to

10  inquire?

11          MR. ENOS:  Not on the Government's end, Your Honor.

12          MS. McGLENON:  No, Your Honor.

13          THE COURT:  If you stipulate under those

14  circumstances, I'll excuse her.

15          All right, Juror 0027, I'll go ahead and excuse you

16  from this particular case because of the scheduling issues,

17  and so -- but it may well be that on the next trial, it would

18  not interfere with the scheduling, and it sounds like you

19  might be able, as far as your care giving to the other person,

20  might be able to have someone take over, but it is the other

21  situation that is of a concern.

22          I'll excuse you from this particular case.  You can

23  check with the jury clerk downstairs if you need a note or

24  other information, but you will still have to call that 800

25  number after 5:00 on Friday.

1      JUROR 0027:  Okay.  Thank you.

2      THE COURT:  Thank you.

3      THE CLERK:  Juror 0032.

4      THE COURT:  Go ahead and have a seat.  Let me get you

5  up to speed, Juror 0032.  First of all, do you know anything

6  about this case?

7      JUROR 0032:  No.

8      THE COURT:  Do you know anybody we mentioned by name

9  so far?

10      JUROR 0032:  No.

11      THE COURT:  And then as I was asking everyone else,

12  any other scheduling issues we need to address?  Yes, let me

13  go to Juror 0030.

14      JUROR 0030:  I can't remember, did you say Fridays

15  are off?

16      THE COURT:  Now, this coming Friday is.  The 20th is

17  off.  Next Friday would not be -- if we go that long -- and we

18  may be finished before then, but I didn't want to tell the

19  jurors don't worry about next Friday, and it turns out that

20  we're still in session on Friday.  So we'll make the

21  assumption that you're free this Friday, but not next Friday.

22      JUROR 0030:  My wife is disabled, and I've been

23  taking her to the Bay Area for treatments every other Friday

24  for six months now.  And the 27th, I believe, is the next

25  Friday that she has treatments.

1    THE COURT:  You do go up that day and come back, is
2    that what it is?
3    JUROR 0030:  Actually we go up Thursday, but it's
4    difficult for her to travel.  I suppose it could be done on
5    the same day, but it won't be easy for her.
6    THE COURT:  Okay.  Now, is this something that can be
7    moved like -- because we're not in session on Mondays, but I
8    don't know if that's a situation or whether or not --
9    JUROR 0030:  No, not really.
10   THE COURT:  And I don't want to pry, but is it -- so
11   she's getting regular treatments.  What kind of --
12   JUROR 0030:  It's a kind of a physical therapy.
13   THE COURT:  But it's not something that they can
14   schedule like, say, for instance, for the following Friday,
15   which is April 3rd or a Monday.  Is it something that they can
16   accommodate her on or not?
17   JUROR 0030:  I guess we could move it one, but --
18   anyways, it's kind of a pattern that's been ongoing.  So I'm
19   not really sure how that will affect her or impact her
20   progress.
21   THE COURT:  Now, if you are selected to serve as a
22   juror, again, we might be done on Thursday, we might not be.
23   But if you are selected to serve as a juror, the duration
24   would be what it is, and it might spill over to that Friday,
25   in which case you probably have to check.  You might want to

1    check right away to see if maybe they can reschedule to the

2    following Monday or even the following Friday, if that works,

3    and it does not disrupt her therapy to the extent that it

4    would cause her harm because that's obviously not what we want

5    to have done.

6            JUROR 0030:  I'm just unsure about that.

7            THE COURT:  I appreciate that.  Thank you.  I think,

8    Juror 0024, you had raised your hand.  We need the mike all

9    the way back to the back row.

10           JUROR 0024:  Yes, I have a scheduling issue on the

11   24th, 25th, and the 27th.

12           THE COURT:  Okay, and so that's all for next week.

13   What are they?

14           JUROR 0024:  The 24th, I'm a presenter for the

15   National Academy Foundation.  We're doing a link pathway for

16   the high school.  I'm the lead teacher doing the presentation

17   to be certified in the program.  And then on the 25th, I'm a

18   WASC presenter for the WASC accreditation for the high school

19   as well.  And on the 27th, my infant daughter is having ear

20   and cheek surgery.

21           THE COURT:  On the school programs, are those

22   things --

23           JUROR 0024:  No, I'm the lead presenter.  I can't

24   miss it.  It's already developing.

25           THE COURT:  All right.  Any inquiry?

1      MR. ENOS:  No, Your Honor.

2      MS. McGLENON:  No, Your Honor.

3      THE COURT:  All right, the only thing I can do is

4  excuse from you this particular case, but you have to call

5  that 800 number on Friday to see if there is another

6  assignment.  Okay, but I'll excuse from you this particular

7  case.

8      All right, we'll fill that seat.

9      THE CLERK:  Juror 0033.

10     THE COURT:  Okay.  Just pass that.  Thank you.  All

11 right.

12     Again, Juror 0033, I need to get you up to speed very

13 quickly.  First, do you know anything about this case?

14     JUROR 0033:  No, sir.

15     THE COURT:  Do you know anybody we've mentioned by

16 name so far?

17     JUROR 0033:  No.

18     THE COURT:  Any scheduling matters by any of the

19 seven of you that we haven't had a chance -- any scheduling

20 issues?

21     JUROR 0033:  No.

22     THE COURT:  All right.  What I'm going to ask you

23 folks to do is give us a little bit of background information

24 on yourselves.  Because it's been a little while, I'll go over

25 them with Juror 0033 individually, and then when we get down

1    to the front row, I'll just ask you for the background

2    information.

3              So, Juror 0033, first, where do you live?

4              JUROR 0033:  I live in Lemoore.

5              THE COURT:  Okay, do you work outside the home?

6              JUROR 0033:  No, I do not.

7              THE COURT:  Are you retired now?

8              JUROR 0033:  No, I have my own business.

9              THE COURT:  Oh, you own your own business.

10             JUROR 0033:  Yes, I build furniture.

11             THE COURT:  Okay.  And how long have you owned the

12   furniture business?

13             JUROR 0033:  Six months.

14             THE COURT:  Okay, great.  And before that?

15             JUROR 0033:  I was a manager at Creaton Foods.

16             THE COURT:  And your marital status?

17             JUROR 0033:  I'm married.  My wife is a

18   schoolteacher.

19             THE COURT:  What grade level does she teach?

20             JUROR 0033:  Third.

21             THE COURT:  And any children?

22             JUROR 0033:  None.

23             THE COURT:  Any other adults living in your

24   household?

25             JUROR 0033:  No, sir.

1          THE COURT:  Okay.  And then your educational

2   background?

3          JUROR 0033:  High school.

4          THE COURT:  Great.  Thank you very much.

5          If you'd pass the microphone down, we'll go all the

6   way down to Juror 0031 there and ask you, Juror 0031, if you

7   can give us some background information on yourself.

8          JUROR 0031:  Can you hear me?  Clerk.

9          THE REPORTER:  No.

10          JUROR 0031:  Can you hear me?

11          THE COURT:  Perfect.  Thank you.  Yes, if you can

12   give us some background.

13          JUROR 0031:  I work with P.G.&E. in the Bay Area for

14   the past seven years.  I live in Gustine.  Single, but I have

15   a live-in girlfriend.  She has a -- we have a Stepdaughter,

16   three-years old; four pit bulls.  Those are my kids.  And

17   that's about it.  High school is my education.

18          THE COURT:  And your girlfriend works outside the

19   home.

20          JUROR 0031:  Actually, yes.  She works in

21   Mississippi, all over for a restaurant business.

22          THE COURT:  Okay.  Good.  All right, okay.  Thank

23   you.  If you'd pass the microphone down, then.

24          And, Juror 0026, can you can give us some background

25   information.

1        JUROR 0026:  Hi.  I live in Merced.  I live at home

2   with my mom and dad and sister.  My dad is a programmer out in

3   Manteca.  My mom works as a doctor, both at her own practice

4   and at a prison out in -- I think it's like Stockton.  And,

5   let's see, what else?  My sister is going to college.  She's

6   business, chemistry, double major, and she also works at my

7   mom's practice, too, with billing.  I'm a math major.  I have

8   tutored some for maybe -- about a year total, but over three

9   different semesters, and I also do some private tutoring in

10  math and actually chess, too.

11       This isn't like a scheduling issue, but I don't own a

12  car, and currently my dad is staying at a hotel in -- near his

13  workplace near where him and my mom work, and I think I'll be

14  able to make it to the trials, but I was wondering if, like, I

15  could take his hotel receipt in like instead -- I'm not

16  staying at a hotel, but he'd be having to stay.  I don't know

17  if you'd be that person or not.

18       THE COURT:  Yeah, you know, I'm not.  Every time I

19  give information, it's wrong.  That's how much I know about

20  that.

21       But other than that, you'd be able to make it during

22  the course of the trial, then?

23       JUROR 0026:  Yeah.

24       THE COURT:  Now, I'm sorry, did you have an emphasis

25  or major in college?

1          JUROR 0026:  Yeah, I'm a math major.

2          THE COURT:  Now, the people that you tutor, what's

3    the age range?

4          JUROR 0026:  Oh, let's see, maybe like 17, 18, to --

5    I'm tutoring privately a guy like now, he must be like 63 or

6    something.

7          THE COURT:  Don't say he's old, please.

8          JUROR:  No, not at all.

9          (Laughter in the courtroom.)

10         THE COURT:  All right, great.  Okay, well, thank you

11   very much.  You can pass the mike down to Juror 0032.

12         JUROR 0032:  Hi. I'm a registered nurse.  I'm

13   married.  I have three kids.  And my husband also work in

14   Foster Farms Poultry.  And my kids, the oldest one is also a

15   registered nurse in program.  Last semester, she'll be

16   graduating in two months.  And then my middle one also in

17   private school in a nursing program.  My youngest boy is in

18   UCLA doing premeds.

19         THE COURT:  And your educational background is --

20         JUROR 0032:  I have a high school education in India.

21   Then I have some college there.  So I transfer my -- all the

22   education here.

23         THE COURT:  Oh, good, great.  And I'm sorry, where

24   does your husband work?

25         JUROR 0032:  He work in Foster Farms in Livingston.

168

1          THE COURT:  Oh, Foster Farms.  Okay, what does he do

2     there?

3          JUROR 0032:  He's in Poultry.  He's -- do the

4     scheduling and all the stuff.

5          THE COURT:  Oh, okay.  Thank you very much.

6          And, Juror 0028, then.

7          JUROR 0028:  I live in Riverbank, and I'm retired

8     from Modesto Junior College.  I was a financial aid accountant

9     for 30 years.  I have an AA and a BA in business.  My wife

10    works at a middle school library.  She's at the library.

11         I have an adult daughter that lives at home still and

12    does tutoring, but she's about ready to start a master's

13    degree at Cal State Hayward or East Bay.

14         THE COURT:  Does she have a major that she's going

15    to --

16         JUROR 0028:  Well, she has a bachelor's in

17    psychology, and now she's going into public administration.

18         THE COURT:  Okay, good.  Great.  Thank you.  And,

19    Juror 0029.

20         JUROR 0029:  Juror 0029.  I'm from Fowler.  I'm

21    retired chancellor of the State Center Community College

22    District, and now I serve as the executive director of a local

23    nonprofit Fresno Compact.

24         My wife and I live at home.  She is a retired health

25    aid for Fresno Unified School District, and we have two

1   children, both in education.  We care for -- half time for our

2   six grand kids, and that -- due to scheduling, divorce,

3   unfortunately.  I have a Ph.D.  I have been involved in two

4   jury trials, both criminal.  One was a drug trafficking and

5   sales.  The other one was multiple rape accusation, including

6   a young school-aged girl.  There was verdicts in each one of

7   those.

8          THE COURT:  And anything about either one of those

9   experiences would affect your service as juror here today.

10         JUROR 0029:  Not in those two experiences.  I have a

11  personal situation involving a sexual assault to an immediate

12  family member that I would be happy to explain to the

13  attorneys at break if so needed.

14         THE COURT:  Okay, keep that in mind, then.  Go ahead

15  and pass it down to Juror 0030.

16         JUROR 0030:  Yes.  I've been a court reporter since

17  1980.  I live in Fresno.  I worked in Fresno since '81.  And

18  currently working -- see, with the -- for the State of

19  California at the Division of Workers Compensation.  And also

20  I have worked in the past with Alyson.  So that's pretty much

21  it.

22         THE COURT:  All right.  And just segueing from that,

23  would that affect your service as a juror -- in other words,

24  would you be leaning for or against the Government's side

25  because you know one of the attorneys?

1          JUROR 0030:  No.

2          THE COURT:  All right, great.  Okay, now, let me ask,

3     as a follow-up.  Juror 0029 has already responded on this one,

4     but have any of the other of you ever served as jurors before,

5     any of the seven of you?

6          Okay, first, Juror 0030?

7          JUROR 0030:  Yes.  Back -- before I was a reporter, I

8     know I served at least three times.  All three were criminal,

9     but I've seen so much action in courtrooms, that they all run

10    together after a while.  So I couldn't really say what it was

11    at this point.

12         THE COURT:  Okay, but anything about any of those

13    experiences or your experience as a court reporter that would

14    affect your service as a juror here today?

15         JUROR 0030:  I don't think so.

16         THE COURT:  Now, whatever you might remember about

17    anything you reported on or served as a juror, you have to

18    totally disregard for the purposes of this case.  Are you okay

19    with that?

20         JUROR 0030:  Right.

21         THE COURT:  Thank you.  And I believe -- let's see,

22    Juror 0028, you had served as a juror before?

23         JUROR 0028:  Yeah.  More than 35 years ago, and it

24    was criminal, and we did arrive at a verdict.

25         THE COURT:  Do you remember what kind of a case it

1    was?

2            JUROR 0028:  It was assault and battery.

3            THE COURT:  Anything about that experience that would

4    affect your service as a juror here today?

5            JUROR 0028:  No, sir.

6            THE COURT:  Okay, great.  Anybody else on that?  Any

7    of the seven?

8            Okay.  Oh, I'm sorry, yes, Juror 0033.

9            JUROR 0033:  I've been on three juries.

10           THE COURT:  Okay.  So there were three juries,

11   criminal, civil, some of each?

12           JUROR 0033:  They were criminal.

13           THE COURT:  Okay.  When was the most recent one?

14           JUROR 0033:  Probably seven years ago.

15           THE COURT:  Okay.  Do you remember what kinds of

16   cases they were?

17           JUROR 0033:  Criminal.  One was drunk driving, one

18   was drug related, and one was -- an inmate was trying to get

19   his verdict changed so he could get out of prison.

20           THE COURT:  Okay.  All right.  Anything about any of

21   those experiences that would affect your service as a juror

22   here today?

23           JUROR 0033:  No, sir.

24           THE COURT:  Thank you very much.

25           All right.  And then any of the seven of you ever

1  been a party to, a witness to any legal proceedings?  Okay.

2          Any other exposure to the Court, to the legal system?

3          Okay, yes, Juror 0029.  We'll pass the mike down.

4          JUROR 0029:  In my past position, I've been involved

5  with numerous depositions, subpoenas, appearance in court, and

6  we're serving as a witness as well.

7          THE COURT:  Anything about any of those experiences

8  that would affect your service as a juror?

9          JUROR 0029:  No.

10         THE COURT:  Okay, thank you.  I appreciate that.

11         Okay.  All right, now, we talked fairly extensively,

12  and I don't want to short-circuit this.  There are basic

13  principles that guide all of us in a criminal law proceeding.

14  I basically categorize those as presumption of innocence.

15  Mr. Davis, as he's seated there, is presumed by law to be

16  innocent, and we want to make sure that the jury, or whoever

17  that might be, is affording him that presumption of innocence.

18  The burden of proof is on the plaintiff's side, the

19  Government.  It is solely on the Government's side.  Mr. Davis

20  doesn't have to testify, he doesn't have to put on any

21  evidence.

22         The standard of proof is the highest that we have in

23  the legal system.  It's beyond a reasonable doubt.  Any of the

24  seven of you have any qualms or concerns about any of those

25  principles or being able to abide by or follow them?  Okay.

1          Now, your role as jurors is critical because you

2    decide what the facts are in this case, apply it to the law as

3    I give it to you in terms of jury instructions.  You're going

4    to have to decide the credibility of every witness that

5    appears before you.  Some may be in law enforcement, some may

6    not be.  There may be a minor that's going to be testifying.

7    There may be some individuals designated as expert witnesses

8    who might be testifying.  As to everyone of those folks, you

9    can believe everything they have to say, part of what they

10   have to say, or none of what they have to say in this case,

11   but you have to decide the credibility aspect.  Is everyone

12   okay with that?  The seven of you okay with that?  Okay.

13          Now, we've discussed what this case is about.  We all

14   recognize, and I think the attorneys have also mentioned this

15   is an emotional case.  It's potentially an emotional case.

16   Many of them are.  I don't want to try to compare this kind of

17   a case to even a murder case where you're seeing autopsy

18   photos or horrendous traffic collisions where you're seeing

19   people come in here with amputees or whatever.  Those are

20   horrific.  Jurors, unfortunately, have to hear those cases, of

21   course, and make a decision based objectively not on sympathy,

22   bias, prejudice, whatever, but simply on the facts of this

23   case.

24          Is there anything -- and I know we're going to have a

25   very brief follow-up at the next break with one of you.  But

1    other than that, any of you, anything about the kind of case

2    that this is that would cause you a concern about being able

3    to be a juror, being fair and impartial to both sides, decide

4    the case of both sides, any of the seven of you other than

5    what we've mentioned so far?

6              Okay, yes, Juror 0026.  Pass the mike down, please.

7              JUROR 0026:  I think I could be fair and impartial,

8    but I have something I want to talk with you guys about at the

9    break.

10             THE COURT:  Okay.

11             JUROR 0026:  Something you guys should know.

12             THE COURT:  Okay, great.  So we'll have the two of

13   you when we take the break.  Anything else on the seven of

14   you, then?

15             All right, okay, again -- and I did not want to just

16   breeze past all of these questions.  We've spent the whole

17   morning asking questions of everyone, but is there anything

18   that any of the seven of you that have not had a chance to

19   mention or say simply because I haven't asked that question

20   again, or maybe I didn't even ask it the first time around,

21   any of the seven of you have anything else that you feel that

22   the parties should be aware of with respect to your potential

23   service as a juror?  Any of the seven of you?

24             Okay.  All right, I'm going to have the -- allow the

25   parties to inquire, and at 3:00, we're going to take a break,

1    and then I'll go ahead and follow up with the two of you.  But

2    at this time, first of all, if there are any written follow-up

3    questions, I'll certainly entertain those.  Otherwise, we can

4    move right into the inquiry of the parties.

5            All right, go ahead.  We'll go ahead and start off,

6    then, with plaintiff's side.

7            MR. ENOS:  Nothing from the Government, Your Honor.

8    Thank you.

9            THE COURT:  Defense side?

10           MS. McGLENON:  Juror 0033?

11           JUROR 0033:  Yes.

12           MS. McGLENON:  I hate to say this to someone who is

13   married to a teacher, but I didn't hear everything you said.

14   I'll put it that way.  You are -- I didn't catch what -- I

15   caught that you are married, and your wife is a schoolteacher,

16   but I didn't catch what you do.

17           JUROR 0033:  I build furniture.  Self-employed.

18           MS. McGLENON:  Okay.  And you do it at your home?

19           JUROR 0033:  Yes.

20           MS. McGLENON:  Like custom furniture?

21           JUROR 0033:  Yes.

22           MS. McGLENON:  And you have been a juror several

23   times?

24           JUROR 0033:  Three times.

25           MS. McGLENON:  Okay.  It's okay with you to be here,

1    and nothing about those experiences are holding you back here?

2            JUROR 0033:  No, I'm fine.

3            MS. McGLENON:  Okay.  Anything about the charges that

4    bother you, particularly?

5            JUROR 0033:  Of course, yes, but that's not going to

6    persuade any decisions.

7            MS. McGLENON:  Okay.  So the charges bother you, but

8    you'll be able to consider Mr. Davis innocent until -- unless

9    they prove him guilty; correct?

10           JUROR 0033:  Sure, yes.  I hope I can, certainly.

11           MS. McGLENON:  Okay.  And, Juror 0014, you -- what do

12   you do?  You're not Juror 0014?

13           JUROR 0014:  Yes.

14           MS. McGLENON:  You are Juror 0014.  Okay.

15           THE COURT:  We already went past him.

16           MS. McGLENON:  Did we?  Okay.

17           THE COURT:  I suppose if you have a follow-up

18   question, I'll go ahead and allow it.

19           MS. McGLENON:  Your Honor, all I have is his name on

20   a piece of paper.  I apologize.  I just --

21           THE COURT:  It was a little different because we

22   moved him up from the -- from the front row to the --

23           MS. McGLENON:  Okay.

24           JUROR 0014:  I work for Adventist Health as a medical

25   assistant, and I am a full-time student at Fresno State.

1          MS. McGLENON:   Okay.   And what's your area of study?

2          JUROR 0014:   Biology and nutrition.

3          MS. McGLENON:    Ah, yes, it's all coming back now.

4          Okay, thank you.   Thank you.   I don't have any other

5      questions.

6          THE COURT:   Okay, you know, folks, it's not quite

7      3:00 when we normally take a break, but we're going to take a

8      break.   We're going to remain in session.   I know a couple of

9      the prospective jurors have had some follow-up things they

10     wanted to mention to the parties, so we'll still be in

11     session.

12          We'll take our break.   Remember, keep your same seats

13     when you get back here.   It will be at least 15 minutes, but

14     don't wander off too far because as soon as we're ready to

15     come back, it will be a little more than 15 minutes, we'll

16     have you come back in, we'll finish up the jury selection

17     today.

18          All right, but go ahead, take a break except the two

19     of you who had some follow-up information for us.   The rest of

20     you can take your break, and we'll remain in session.

21          (Prospective jury panel left the courtroom.)

22          JUROR 0032:   Can I say something?

23          THE COURT:   Sure.   Hold on just a second.   Other than

24     the three prospective jurors, are there any other prospective

25     jurors in the courtroom?

1          All right.  I'm not sure where the microphone is.

2          MR. ENOS:  On seat 12.

3          MS. BERG:  Thank you.

4          THE COURT:  Yes, Juror 0032.

5          JUROR 0032:  Honestly, this is my first time coming

6   in the Court.  I've never been in the Court.  And I came from

7   India.  And I stand on my feet, even here.  I'm honestly, I

8   feel like I don't think I will be ready.  I'm very nervous.

9          THE COURT:  Why is that?

10         JUROR 0032:  I don't know.  That's the way I have

11  been -- I have been environment, everything.  How I been

12  raised in my country, even though I came here.  I've been

13  working as a registered nurse over two years.  I don't think

14  I'm free here and adopt whole environment here.  So I don't

15  want to be injustice with anybody.

16         THE COURT:  Okay, all right, and I appreciate that.

17  I realize when you come from a different country, there may be

18  different cultural norms perhaps, and I don't pretend to be an

19  expert on that.  But basically, as a juror, it's pretty

20  straightforward.  You're really limited by the law that I

21  provide, which is by way of jury instruction.  You don't have

22  to worry about anything else, about how this country, either

23  in state court or other federal courts, handle cases because

24  it's just strictly the law that I provide to you.  It's fairly

25  straightforward.  It's by way of jury instructions.  I give

1    the jury a copy of the instructions so they can see it.  And

2    then it's just a matter of -- of listening to the evidence.

3           And one thing we recognize, that all of us, I don't

4    care what country you come from, make credibility assessments.

5    Every time you meet somebody, you decide whether you're going

6    to be -- whether you're going to believe that person.  In your

7    job, you have to make decisions based on what people tell you.

8    Maybe sometimes people are not truthful to you, and you have

9    to act accordingly, and that's really all -- nothing -- this

10   is a different setting, and I'm not going to claim that this

11   is making anybody comfortable coming into this courthouse, but

12   the reason we have a jury, people are generally not educated

13   in the law, is that that's what we require.  We want people

14   who are not so versed in the law, that they're going to try to

15   take over and tell us what the law is, or whatever.  You tell

16   us what the facts are.  But, you know, there is no training

17   that a juror has to go through to decide credibility because

18   we know that everyone in your life, in our lives, decide

19   credibility every day.  We don't see it technically that way,

20   but every time we meet somebody, we decide whether or not

21   we're going to trust them, believe them or not.  And so I

22   don't want to make it seem more complicated than it is, and,

23   you know, once you are seated as a juror, then you'll be

24   sitting up there with 11 other people.  You'll hear the people

25   testifying, and you'll make your own independent decision, how

1   much you're going to believe of that person.  And then you

2   talk to the other fellow jurors, and you'll come to a

3   decision.

4           So there's nothing really mysterious about it.  We

5   don't require any specific formal education to be a juror in

6   this particular case, as can you see, sometimes if there are

7   educational backgrounds, we want people to say -- we don't

8   want you to bring your educational background in to try to do

9   something that's different from what everyone else is.

10          So I understand you might be nervous.  I know a lot

11  of people are, but if it is that -- that's really what it is.

12  It's nothing -- we don't require anything in terms of

13  adjusting your own beliefs unless there is a moral or

14  religious belief that doesn't allow you to decide credibility

15  or doesn't allow you to follow the law that's prescribed.  So

16  hopefully that's explained -- I have explained it to you.

17          Do you have any questions?

18          JUROR 0032:  No, that's all.  I just have -- whatever

19  I have in my mind, I just spoke up, and I try to do the best.

20  Maybe I will be okay, but I'm not quite sure because this is

21  the first time I'm having this experience.

22          THE COURT:  As you can see by the other people who

23  have raised their hands when they served as jurors, most of

24  the people here have not served as a juror before, so this is

25  a different experience for most of the people here, and that's

1    not unusual.  What we're concerned about, of course, is that

2    if people cannot be fair and impartial, if they can't follow

3    the law, if they can't decide credibility, then that's a

4    problem.  But otherwise, we understand that people are here in

5    this sort of arena for the first time, and it is a little bit

6    intimidating.  We try not to spook or scare people.  You know,

7    we just try -- the lawyers are going to just try to present

8    the evidence, and you decide.

9         But if you're selected as a juror, would you be able

10   to do that?  You have to decide credibility, you have to help

11   decide what the facts are, and you follow the law.  You have

12   to follow the law.

13        JUROR 0032:  I understand that, and I will do the

14   best.

15        THE COURT:  And I appreciate that and thank you very

16   much.  You can go ahead and take a recess, and we'll continue

17   on.

18        Now, let me ask, Juror 0026.  Now, obviously Juror

19   0032 is going to leave.  Juror 0029 is still here.  If

20   necessary, I can have him leave.  I'm not sure how --

21        JUROR 0026:  No, that's fine.  He can stay.

22        THE COURT:  Okay, sure.  You had something you wanted

23   to mention?

24        JUROR 0026:  Growing up, I had a really close friend,

25   and she was sexually molested when she was young, and I mean I

1    know it doesn't have any relation to this case.  I don't even

2    know what this case is necessarily about.  It's just I've been

3    feeling fairly emotional, and I've also been -- like, I've had

4    girlfriends who have had like -- been sexually abused when

5    they were young.  I don't think it's going to stop me from

6    being impartial because I definitely wouldn't want to see an

7    innocent man be punished for -- you know, doing something

8    horrible, but I -- I don't even know what it is exactly yet.

9    But I just thought everybody should know that --

10          THE COURT:  No, and I appreciate that.  I think the

11   parties appreciate that.  A couple things to follow up.

12          First of all -- and I don't want to overstate this,

13   but -- and I usually tell this to jurors when they have

14   issues.  This is not the time or the place to try to make

15   amends to your friends, or whatever, or "This is my chance to

16   maybe help right the wrongs of my friends."  This isn't that

17   arena.  So you need to set aside whatever, no matter how

18   horrific those other experiences were, you still have to

19   decide this case on the merits.

20          And if the Government, even though there's some --

21   I'm sort of going to try to embellish this.  Even though there

22   are some horrific things, some testimony, some photos, or

23   whatever, that might be of a concern, you have to decide this

24   case strictly on the facts.  If the Government doesn't prove

25   its case beyond a reasonable doubt, Mr. Davis is entitled to a

1    not guilty verdict, and you can't feel guilty or sad that he's

2    found not guilty because you may be thinking you're letting

3    down your friend, or whatever.  You know, it is what it is,

4    and you have to decide this case on the merits.  Are you okay

5    with that?

6            JUROR 0026:  Yeah, I think people should, you know,

7    when they're accused of stuff like this, they should have a

8    definite chance to, you know, being able to prove their case,

9    and they shouldn't be assumed guilty, but I just -- I wasn't

10   trying to feel emotional, I just kinda am.

11           THE COURT:  No, I appreciate it.

12           JUROR 0026:  Just the whole -- just thinking about

13   that, it's totally unrelated to the case.  Well, kind of.  I

14   don't know.

15           THE COURT:  Okay.  No, and I appreciate that.  And

16   really, that's why a lot of the questions were being asked

17   about that because we recognize that some people, either

18   personally or through friends, have had emotional matters like

19   this, and it is something we need to be aware of.

20           One other thing I want to follow up, and I recognize

21   that this is something that technically you're not aware of,

22   but as I indicated, Mr. Davis doesn't have to prove anything

23   at all.  So -- this is his opportunity --

24           JUROR 0026:  Sorry, I misspoke.  I misspoke.

25           THE COURT:  And that's okay because we all do.

1   Frankly, I still do that.  And so he doesn't have to prove

2   anything, and this is his opportunity to, you know, actually

3   make the Government prove its case.  If the Government can't

4   prove its case, he's set free.  Even if you heard the

5   evidence, and you're thinking, you know, I'm pretty sure he's

6   guilty, but, you know, I do have this doubt in my mind.  It is

7   a reasonable doubt.  I think he's guilty, but I -- the

8   Government hasn't proven its case, and then you have to vote

9   not guilty even though there is evidence that makes you

10  believe that, you know, he's probably, possibly guilty, but if

11  the Government doesn't prove its case beyond a reasonable

12  doubt, Mr. Davis is entitled to an acquittal even if there is

13  some evidence against him.  Do you understand that?

14          JUROR 0026:  Yeah, I'd hate to put somebody who was

15  innocent like, you know, in jail.  I think that would be

16  horrible.  One of the most horrible things.

17          THE COURT:  I totally agree with that.  I think

18  everyone here agrees with that.

19          Okay, anything else, then?

20          JUROR 0026:  No, that was all.

21          THE COURT:  Go ahead and take your break.  We'll get

22  you back in.  Thank you very much.

23          All right, yes, Juror 0029.

24          JUROR 0029:  Sure.  Thank you.  I wanted the Court to

25  be aware my daughter was sexually assaulted in high school, on

1   a high school campus about 23 years ago.  And I just remember

2   the many months and years that it took us to put her back

3   together and to get her functioning and the heartache and the

4   real pain that it caused many, many people.  It was not

5   prosecuted because of mistakes in the investigation by the

6   particular police department.  And so that wouldn't have

7   changed much, but I think it's something the Court needed to

8   be aware of.

9           THE COURT:  No, and I appreciate your saying that,

10   and that really does strike home.  And you've heard all of

11   this and all the other questions and answers.  In your own

12   mind now, do you still think that you can still be fair and

13   impartial to both sides in this case?

14           JUROR 0029:  I think I can.

15           THE COURT:  Okay.  Any follow-up questions,

16   Government's side?

17           MR. ENOS:  None, Your Honor.

18           THE COURT:  Defense side, anything?

19           MS. McGLENON:  I would just -- you said you wanted to

20   bring this to the attention of the Court, and that you felt

21   that the police perhaps didn't investigate right, but is there

22   any reason that you would hold what happened, and 23 years

23   ago, when it's a personal family matter is no time at all.

24   Whether you would hold that against either party, against

25   Mr. Davis --

1           JUROR 0029:  No.

2           MS. McGLENON:  You just felt that it was important

3    for us to know?

4           JUROR 0029:  Yes.

5           MS. McGLENON:  Okay.  Thank you.

6           THE COURT:  Okay, you can go ahead and take

7    your break.  We'll take 15 minutes from now, and then we'll

8    resume.  But thank you very much.  I appreciate that.

9           (The prospective juror left the courtroom.)

10          THE COURT:  All right.  Okay, any issues that we need

11   to take up, plaintiff's side?

12          MR. ENOS:  The only thing is the Government wondered

13   if it would be prudent to turn our witnesses that are here

14   loose this afternoon, to be here for first thing tomorrow?

15   What's the Court's feeling about that?

16          THE COURT:  I would think so.  By the time we get the

17   jury picked and deal with the legal issues, maybe we should

18   start afresh tomorrow morning with the evidence itself, if

19   that works.

20          Let me ask defense side, your thoughts?

21          MR. FARKAS:  I don't think we have an issue with

22   that, Your Honor.

23          THE COURT:  And if push comes to shove, and you're

24   thinking that's really going to put us behind, we can always

25   do the legal issues that we need to address.  I can give the

187

1   preliminary jury instructions.  We can give the opening

2   statements today and just start with the evidence tomorrow.

3   So I would think that we would not get to a witness until

4   tomorrow, but I'll leave it to counsel depending on what time

5   we get wrapped up and get the jury and the alternate juror

6   selected.  If you prefer to give your opening statement today,

7   we can do that.  If you prefer tomorrow morning, we can do

8   that also.  That's fine.  You can release your witnesses for

9   today.

10           MR. ENOS:  Thank you, Your Honor.

11           THE COURT:  Anything else, plaintiff's side?

12           MR. ENOS:  No.

13           THE COURT:  Defense side?

14           MS. McGLENON:  No.

15           THE COURT:  All right, let's take our 15-minute

16   recess.

17           (Recess.)

18           THE COURT:  All right, back on the record.  I asked

19   staff to have the jury panel stay out because it occurred to

20   me I just needed to touch base with you folks on any cause

21   issues.  As to the new seven we need to take up, plaintiff's

22   side, anything.

23           MR. ENOS:  None from the Government's side,

24   Your Honor.

25           THE COURT:  Defense?

1    MS. McGLENON:  Your Honor, I was just looking at --

2    finally looking at my notes.  Juror 0030.

3    THE COURT:  Yes.

4    MS. McGLENON:  The hearing reporter that knows the

5    prosecutor.

6    THE COURT:  Uh-huh.

7    MS. McGLENON:  And who also has -- isn't he the one

8    also with the wife --

9    THE COURT:  Yes.

10    MS. McGLENON:  I mean, I don't have any objection to

11    him going if we could stip for cause.  I don't see any --

12    MR. ENOS:  Well, what I heard him say is that he

13    could still be fair and impartial.

14    MS. McGLENON:  That's fine.

15    THE COURT:  Now, that's true, and it sounds like he

16    may be able to reschedule his wife's --

17    MS. McGLENON:  I just -- if it were -- if I had that

18    kind of a problem, I would want to be able to go without --

19    you know, he's number 18.  I'm not worried about it.  I just

20    thought if we could stip to cause, we could help him out.  But

21    that's fine.

22    THE COURT:  All right.

23    MS. McGLENON:  Thank you.

24    THE COURT:  Well, I'll just consider that is a

25    challenge for cause, and I certainly understand that.  I'll go

1    ahead and deny that request.

2          Anything else for cause?  The reason I'm asking, that

3    when they come back in, would you be, then, prepared to

4    continue on with peremptory challenges?

5          MS. McGLENON:  Yes.

6          MR. ENOS:  The Government would, Your Honor.  Just to

7    be clear, I believe it would be defendant's turn, and they

8    would be embarking on there fifth.

9          THE COURT:  Yes, that's correct.  It would be the

10   defense fifth, and then it would go back to plaintiff, and

11   then defense, defense, et cetera.

12         MS. McGLENON:  Your Honor, as to Juror 0032, could we

13   ask some questions about the things that she raised in here

14   even though they were kind of in private?  For example, she

15   said she was narrow-minded, and didn't understand -- and

16   didn't want to participate.  I guess I'd like to challenge her

17   for cause, too.

18         THE COURT:  Okay.  And okay --

19         MS. McGLENON:  And I'm not sure that the Court was

20   able to rehabilitate her.

21         THE COURT:  Okay.  Well, the discussion was on the

22   record, and she did initially state a real concern based, as I

23   understand, mainly cultural from where she came from, and then

24   I explained to her, you know, basically in this courtroom, you

25   know, it's limited to what they see in the Court and the

1    instructions that I give.  And then she also indicated she was

2    very nervous about being here for the first time, and I also

3    mentioned to her that most of the people here based on

4    responses on prior jury service, and parties to and witness to

5    legal proceedings, most of the people here have not had this

6    exposure either.  It seemed to me, very frankly, like there

7    was some nervousness, but I think I dispelled that.

8         So in terms of -- I will accept that as being a

9    challenge for cause, and I'll deny that based upon the

10   response that she gave.

11        Anything else, cause, and I'm certainly open

12   otherwise, but anything else for cause, defense side?

13        MS. McGLENON:  No.

14        THE COURT:  Okay.

15        MR. ENOS:  No, Your Honor.

16        THE COURT:  All right, when they come back in, we're

17   going to go ahead and continue on with the peremptory

18   challenge stage, and I'll turn to defense for your next

19   peremptory challenge.  And, again, you're focusing on the 12

20   in the box, understanding that you know from that bottom row

21   who the next folks would be.

22        If, for whatever reason, we are able to select a

23   jury, and there are still a few folks left in the bottom row,

24   we'll start with them as far as alternate jurors, starting

25   with alternate juror number 1.

1          Now, let me ask you, in the past what I have done is

2     according to the rules, the parties are entitled to -- the

3     statute says, or the rule says an additional peremptory

4     challenge, and I always considered that to be a peremptory

5     challenge apiece, but I don't know if it also means all of the

6     challenges you still have left, plus one more, which seems

7     like an awful lot for an alternate, but I'm certainly open.

8          Defense, any comment on that?

9          MS. McGLENON:  I'm sorry, Your Honor.

10          THE COURT:  Just in terms of peremptories, once we

11     get to the alternate jurors, you're entitled to what the rule

12     says, it's an additional peremptory, and in the past, I

13     consider that to be, okay, you each have one peremptory each,

14     and I don't know if it can be interpreted as, no, you have all

15     your remaining peremptories, plus one more.  So I don't know.

16     That's the way I've handled it in the past.  So you can have

17     one peremptory challenge each on the alternates.

18          MS. McGLENON:  Well, I guess I, like the Court, like

19     all plus one.

20          THE COURT:  I mean, I don't have a problem with that.

21     I think we can go ahead and do that.  What I'll do, by then

22     it's just going back and forth in terms of the peremptories or

23     maybe -- depending on where you're at.  It's still maybe,

24     one-two-two, one-two-two.  We'll see where we are on that.

25     I'll do that.

1    Anything else before we have the panel come back in?

2    MR. ENOS:  Not on the Government's end.

3    MS. McGLENON:  No.

4    THE COURT:  Can we have the jury panel come back in,

5 please?

6    (The prospective jury panel returned to the

7 courtroom.)

8    THE COURT:  All right, the jury panel has returned.

9    All right, thank you for your patience.  I have

10 discussed further proceedings with the parties.  We're ready

11 to continue on.

12    Now, what's happened, of course, is the seven of you

13 have joined us now.  You recall the reason you joined us is

14 that peremptory challenges were exercised as to other

15 prospective members of the jury.  And we're going to continue

16 on now with that process.

17    And so on the peremptory challenge stage -- and,

18 again, we're focusing on the 12 of you in the jury box, and it

19 is the defense next peremptory.

20    MS. McGLENON:  Your Honor, the defense passes the

21 jury.

22    THE COURT:  All right.  And it is the plaintiff's

23 peremptory?

24    MR. ENOS:  Your Honor, the Government passes as well.

25    THE COURT:  All right.  All right, those of you in

1    the jury box, both sides have passed their peremptory

2    challenges.  They have obviously resolved any cause issues.

3    You would be the jury in this case.  Before I have you stand

4    up and Miss Gaumnitz issue -- gives you the oath of your

5    office, is there any reason why any of the 12 of you cannot

6    serve as a juror in this case?

7            Okay, being no response, then, if the 12 of you stand

8    right where you're at, Miss Gaumnitz will administer a oath to

9    you.

10           (The jury was sworn.)

11           THE COURT:  Please be seated.  Okay, now, we're going

12   to continue on, and basically we will now select two alternate

13   jurors.  The role of the alternate juror is very important.

14   You're still obviously very much a part of the jury and will

15   be seated with the jury.  If any of the 12 are excused for any

16   reason, then you would take their place.  So your role is as

17   an active juror in this case, and we'll go ahead and proceed

18   with the alternate jurors, and we're just going to go down the

19   list.  Obviously the parties can still exercise peremptories.

20           The first alternate juror would be seat number 13,

21   which is Juror 0031.  And as we left off, it would be the

22   defense peremptory as to Juror 0031 only for first alternate.

23           MS. McGLENON:  Your Honor, I would pass Juror 0031.

24   That's fine.

25           THE COURT:  All right.  And plaintiff Government's

194

1    peremptory as to Juror 0031, first alternate.

2            MR. ENOS:  Thank you, Your Honor.  The Government

3    thanks and excuses Juror 0031, juror number 13, or the first

4    alternate.

5            THE COURT:  All right, you are excused with our

6    thanks, Juror 0031.  Thank you very much.

7            All right, and then we would have -- the first

8    alternate juror would be Juror 0026.  Defense peremptory?

9            MS. McGLENON:  Your Honor, we would pass again.

10   Accept Juror 0026.

11           THE COURT:  All right.  And Government's peremptory?

12           MR. ENOS:  The Government passes as well, Your Honor.

13           THE COURT:  All right, Juror 0026, you would be the

14   first alternate juror, and, of course, if anything were to

15   occur to the 12, you would take their place.  Is there any

16   reason why you could not serve as an alternate juror,

17   ultimately a juror if called upon to do so?

18           JUROR 0026:  No.

19           THE COURT:  If you stand right where you're at, Miss

20   Gaumnitz would administer an oath to you.

21           (Alternate Juror 0026 was sworn.)

22           THE COURT:  Okay.  Juror 0026, what I'm going to ask

23   you to do is go ahead and take a seat in the jury box there.

24   You'll have your choice, either the top row or the lower.

25   Whichever you prefer, and you'll be the first alternate.

1          Okay, and now we'll do the second alternate.  First

2     person up is Juror 0032.  It is the defense peremptory.

3          MS. McGLENON:  Your Honor, the defense would thank

4     and excuse Juror 0032.

5          THE COURT:  All right, Juror 0032, you are excused

6     with our thanks.  Thank you very much.

7          Okay, and the first -- all right, the second

8     alternate next up is Juror 0028.  It is the plaintiff

9     Government's peremptory?

10         MR. ENOS:  I'm sorry, Your Honor.  You said the

11    plaintiff?

12         THE COURT:  Yes.

13         MR. ENOS:  Plaintiff passes, Your Honor.  Thank you.

14         THE COURT:  Defense peremptory.

15         MS. McGLENON:  Your Honor, we would thank and excuse

16    Juror 0028.

17         THE COURT:  All right, Juror 0028, you are excused

18    with our thanks.  Thank you very much.

19         All right, and then, Juror 0029, as the second

20    alternate, let's see, we're doing -- let's see, all right.

21    Government, plaintiff's peremptory?

22         MR. ENOS:  Do they just go one at a time?  Are we

23    back to one --

24         THE COURT:  Yeah, we're just going back and forth.

25         MR. ENOS:  The Government passes.

1          THE COURT:  Defense peremptory.

2          MS. McGLENON:  Your Honor, we would thank and excuse

3    Juror 0029.

4          THE COURT:  All right, Juror 0029, you are excused

5    with our thanks.  Thank you very much.

6          Okay, and, Juror 0030, as the second alternate juror,

7    plaintiff Government?

8          MR. ENOS:  Government passes, Your Honor.

9          THE COURT:  All right, and defense?

10         MS. McGLENON:  We would thank and excuse Juror 0030.

11         THE COURT:  All right, Juror 0030, you are excused

12    with our thanks.  Thank you very much.

13         Okay, and so at this point in time, what I'm going to

14    do is just call up one person at a time.  So we'll just have

15    one person come up and actually take a seat up in the jury

16    box.

17         THE CLERK:  Juror 0034.

18         JUROR 0034:  Pronounced Juror 0034.

19         THE CLERK:  Thank you.

20         THE COURT:  Juror 0034, I'm going to have you have a

21    seat all the way up there in the top row there.  And that will

22    be the seat ultimately occupied by the alternate juror.

23         All right, now, Juror 0034, I'm not sure where the

24    microphone is -- ah, perfect.

25         All right, were you able to hear and understand all

1    the questions that were asked so far?

2              JUROR 0034:  Yes.

3              THE COURT:  Were you able to form an answer in your

4    own mind?

5              JUROR 0034:  Yes.

6              THE COURT:  And were you able to hear all the answers

7    given by the other prospective jurors?

8              JUROR 0034:  Yes.

9              THE COURT:  Again, I'm not going to reask all the

10   questions.  You've sat here all day, and you know what we've

11   asked.  You know what the response has been, and you know what

12   your response would have been.  But by not asking all the

13   questions, that doesn't mean they're not important.  So if

14   there is anything that you need to comment on, feel you should

15   comment on, please do so.  Okay?

16             All right, so, first of all, let me ask you, do you

17   know anything about this case?

18             JUROR 0034:  No, I don't.

19             THE COURT:  Do you know anyone involved in the case?

20             JUROR 0034:  No, I don't.

21             THE COURT:  Any scheduling matters we need to take

22   up?

23             JUROR 0034:  None.

24             THE COURT:  Can you give us some background

25   information on yourself?

1          JUROR 0034:  I live in California City.  I'm not

2   presently working.  When I did work, I was an office

3   assistant.  My husband is a retired electronics technician.  I

4   have one grown daughter who lives in Denver, and she's a

5   medical assistant.  I'm a high school graduate with maybe one

6   year of community college.  And that's it.

7          THE COURT:  Okay, did you have a major or emphasis in

8   community college?

9          JUROR 0034:  Marketing in business.

10          THE COURT:  Okay, great.  Have you ever served as a

11  juror before?

12          JUROR 0034:  No, I haven't.

13          THE COURT:  Ever been a party to, a witness to, any

14  legal proceedings?

15          JUROR 0034:  No.

16          THE COURT:  Any other exposure to the legal system or

17  the court system?

18          JUROR 0034:  No.

19          THE COURT:  Okay, very quickly.  We went over some

20  basic principles, presumption of innocence, burden of proof,

21  standard of proof.  Any of those cause you any concern either

22  as a principle or as a practical matter?

23          JUROR 0034:  No.

24          THE COURT:  Okay.  In terms of credibility or

25  believability, any concerns about being able to determine as

1   to every witness, including people designated as expert

2   witnesses, any concerns?

3           JUROR 0034:  No concerns.

4           THE COURT:  Okay, with respect to professions, we've

5   mentioned something about law enforcement.  There will be some

6   law enforcement officers testifying in this particular case.

7   Do you know people in law enforcement?

8           JUROR 0034:  No, I don't.

9           THE COURT:  Okay.  Anything, either the positive or

10  negative -- well, let me ask you this:  Any bad experience

11  that you might consider to be bad experiences relating to law

12  enforcement?

13          JUROR 0034:  No.

14          THE COURT:  Okay.  Anything about this case, the

15  nature of the case, anything that other prospective jurors

16  have discussed or talked about that cause you some concern

17  about being able to be a juror in this particular case?

18          JUROR 0034:  No, I can't think of anything that would

19  get in the way.

20          THE COURT:  Okay.  All right, and I'm going to open

21  this up because I know the number of questions have been

22  asked.  Is there anything else that was asked by myself or the

23  lawyers -- and you've heard the answers of the other

24  prospective jurors, you formed answers in your own mind, that

25  you would want to say something more about that you have not

1   had a chance to mention because I haven't asked that specific

2   question?

3           JUROR 0034:  No, I have nothing to add.

4           THE COURT:  Okay.  All right, any reason why you

5   could not serve as a juror in this particular case?

6           JUROR 0034:  No.

7           THE COURT:  All right.  Okay, let me go ahead and

8   allow the parties to inquire.  First, on behalf of the

9   Government's side.  Questions of -- let me make sure I got

10  this right.  It's Juror 0034?

11          JUROR 0034:  Yes, that's right.

12          THE COURT:  Okay, great.

13          MR. ENOS:  Government has no follow-up questions.

14  Thank you.

15          THE COURT:  All right.  And defense?

16          MS. McGLENON:  No.  No questions, Your Honor.

17          THE COURT:  All right.  All right, any cause matters

18  as to Juror 0034 that we need to take up?

19          MR. ENOS:  Not on the Government's side.

20          MS. McGLENON:  No, Your Honor.

21          THE COURT:  We'll go back, then, to see -- oh, okay.

22  Plaintiff, Government peremptory as to Juror 0034, as a second

23  alternate juror.

24          MR. ENOS:  The Government passes, Your Honor.

25          THE COURT:  Defense?

1          MS. McGLENON:  Defense passes, Your Honor.

2          THE COURT:  Very well.  All right, Juror 0034, if you

3     can just stand right where you're at, Miss Gaumnitz will

4     administer an oath to you as a second alternate juror.

5          (The second alternate juror, Juror 0034, was duly

6     sworn.)

7          THE COURT:  Thank you very much.  All right, those of

8     you who are panel members, as you see, we have now selected

9     our jury and the alternate jurors, and so we have concluded

10    the jury selection process.  I'm going to excuse you in just a

11    moment.  I just want to obviously thank you for your service

12    as prospective jurors.  As you can see during the jury

13    selection process, we have had to excuse a number of

14    prospective jurors.  And so it's important that everyone that

15    is here appears as panel members so that we don't run short on

16    prospective jurors.

17         You're free to leave.  If you need to check back --

18    I'm sorry, if you need to talk to the jury clerk about any

19    note indicating that you were here, you can certainly do that.

20    If you have any questions, you can certainly ask her.  Just

21    call that -- otherwise, just call that 800 number after 5:00

22    on Friday to see if there's another assignment.

23         Otherwise, you are excused with our thanks.  Thank

24    you very much.

25         (Jury panel left the courtroom.)

1          THE COURT:  All right.  Members of the jury,

2    basically what we're going to do, we're going to excuse you.

3    There are a number of things that we need to take up, which

4    always occurs after we pick the jury, but before we start the

5    trial itself.

6          So basically what will happen is that we're going to

7    excuse you.  My staff will take you back to the jury room so

8    you can get acquainted with the jury room.  We will have

9    notepads and pens, pencils, available for you to take notes if

10   you choose to do so.

11         As far as the protocol here, if you want to bring in

12   a beverage into -- you can't bring in food, but you can

13   certainly bring in coffee or water if you want to do that

14   during the trial itself.  We will give you cards that get you

15   access into the jury room, et cetera.  If you need to check

16   with the jury clerk, if you need a note for employment

17   purposes or something, you can check with her.  If you have

18   any questions about logistics, you can ask her.

19         If you can be here a little before 9:00.  Now, it's

20   not going to be hectic tomorrow morning as it was this

21   morning.  We had two juries going out.  There are obviously 50

22   of you folks here, plus the folks from the other jury panel,

23   so it was quite a mess.  What you're going to see tomorrow

24   morning is that you folks will be here and maybe the jury for

25   the other case, and that's pretty much it.  So there won't be

1    as much congestion coming through the front door there, but if

2    you could be here a little before 9:00.

3           What will happen tomorrow morning at 9:00, I'll read

4    you some preliminary jury instructions.  The parties are

5    entitled to give opening statements.  I'll talk about this a

6    little bit more tomorrow morning.  The opening statements

7    aren't evidence, but it is very helpful because it gives you

8    an idea what they believe the evidence will show or not show.

9           And then we'll start the case.  The plaintiff side

10   will go first.  They'll present their witnesses.  The defense

11   side will be entitled to cross-examine, that is, ask questions

12   of any witnesses called by the plaintiff Government side.

13          Once the Government rest their case in chief, then we

14   go to the defense side.  If the defense chooses to do so, they

15   can present evidence and witnesses.  They are not required to

16   do so.  If they present evidence, the Government may present

17   rebuttal evidence, and defense may present surrebuttal.  That

18   part doesn't take quite as long.  And then we do concluding

19   instructions, closing arguments, et cetera, and then you begin

20   your deliberations.

21          So procedure-wise, it's a long way, but I'll check

22   with the attorneys to see scheduling-wise, if they think we're

23   going to be on track.  But remember we'll be in session

24   tomorrow and Thursday, but not on Friday.  Basically we'll go

25   from 9:00 to noon with a break in the morning, 1:30 to 4:30

1   with a break in the afternoon.

2          I'm going to leave you one instruction before you

3   leave, and I sort of alluded to it earlier, but I want to read

4   this to you.

5          I will now say a few words about your conduct as

6   jurors.  First, keep an open mind throughout the trial and do

7   not decide what the verdict should be until you and your

8   fellow jurors have completed your deliberations at the end of

9   the case.

10          Second, because you must decide this case solely on

11   the evidence received in the case and on my instructions as to

12   the law that applies, you must not be exposed to any other

13   information about the case or to the issues it involves during

14   the course of your jury duty.  Thus, until the end of the

15   case, or unless I tell you otherwise, do not communicate with

16   anyone in any way and do not let anyone else communicate with

17   you in any way about the merits of the case or anything to do

18   with it.

19          This includes discussing the case in person, in

20   writing, by phone or electronic means, via e-mail, text

21   messaging or any Internet chat room, blog, website, or other

22   feature.  This applies with communicating with your fellow

23   jurors until I give you the case for deliberations, and it

24   applies to communicating with everyone else, including your

25   family members, your employer, the media or press, and the

1    people involved in the trial, although you may notify your

2    family and your employer that you've been seated as a juror in

3    the case.  But if you are asked or approached in any way about

4    your jury service or anything about this case, you must

5    respond that you have been ordered not to discuss the matter

6    and to report the contact to the Court.

7           Because you will receive all the evidence and legal

8    instruction you properly may consider to return a verdict, do

9    not read, watch, or listen to any news or media counts or

10   commentary about the case or anything to do with it.  Do not

11   do any research such as consulting dictionaries, searching the

12   Internet, or using other reference materials, and do not make

13   any investigation or in any other way try to learn about the

14   case on your own.

15          The law requires these instructions to ensure the

16   parties have a fair trial based on the same evidence that each

17   party has had an opportunity to address.  A juror who violates

18   these restrictions jeopardizes the fairness of these

19   proceedings, and a mistrial could result that would require

20   the entire trial process to start over.

21          If any juror is exposed to any outside information,

22   please notify the Court immediately.

23          All right, so with that, then, I'll excuse you this

24   evening.  Thank you very much.  We'll see you tomorrow morning

25   at 9:00.  Okay.

1           (The jury was excused.)

2           THE COURT:  Okay, the jury has left for the day, and

3    we do have some legal issues to take up before we recess.  And

4    so -- okay, this is in no particular order, and if you wish to

5    take something up otherwise, just let me know.

6           But we do have the Government's filed application for

7    order to obtain photographs of tattoo, and we did have the

8    objection and the reply.  So, first of all, let me hear from

9    the Government, anything further on that motion?

10          MS. BERG:  No, Your Honor.  We would submit on the

11   paperwork based on the evidence being necessary to refute the

12   mistake-of-age defense and to clarify that what appears to be

13   the defendant's distinctive tattoo.  It's on his cell phone,

14   but we need to confirm that it's actually him that the picture

15   represents to demonstrate that -- in connection with the

16   opportunity to observe the minor Bianca.

17          THE COURT:  Okay, and defense.

18          MR. FARKAS:  Thank you, Your Honor.  I think our

19   opposition is also pretty clear.  We think this is a pretty

20   gross invasion of Mr. Davis' privacy.  It's unnecessary.  It's

21   not relevant.  The Government is trying to shoehorn this into

22   sort of an opportunity to observe defense, but they already

23   have her testifying that, you know, that he took a naked

24   picture of her, that that naked picture was on the phone.  It

25   was on the computer, and I just don't see what this tattoo

1    would add.  I think it's borderline relevant, and would be --

2    frankly, I'm not sure what the -- the sort of authority is for

3    the Government to compel this photograph.

4         THE COURT:  Okay.  Well, let me just state in

5    general, it's my understanding that photographs of tattoos in

6    general are permissible.  They're not testimonial.  And there

7    has been authority on tattoos, fingerprints, et cetera, that

8    as long as it's not, quote, testimonial, that it is proper.

9         The complicating thing here, obviously, is that this

10   is a tattoo, and generally if the request was for a photograph

11   of a tattoo, there is ample case authority for the Court

12   requiring that, assuming it's relevant.

13        This one is unique, in that the tattoo itself is

14   located on a private part of Mr. Davis.  Now, theoretically,

15   it shouldn't matter where a tattoo is located as long as it's

16   relevant for identification or other purposes.

17        But I do have a concern, and maybe it's out of an

18   abundance of caution of allowing or requiring Mr. Davis to

19   submit to a photograph because of the location of the tattoo,

20   which is, for lack of a better word, in a private part on his

21   penis.  So that really is something of a concern, although,

22   again, in general, I think that it in and of itself would not

23   be a problem.

24        I guess my concern is, if there's other evidence that

25   would satisfy the Government's concern in terms of the

1    relevance, this might be, if nothing else, cumulative.  And to

2    a limited extent, there may be some issue with respect to

3    the -- the taking of the photograph.

4           Let me ask the Government, is there going to be a

5    photo of a penis that's tattooed that's otherwise admissible?

6           MR. ENOS:  Yes, Your Honor.  There are photographs --

7    they appear to be selfie photographs, both extracted from

8    defendant's cell phone as well as his computer that lists --

9    or that identify a tattoo that indeed says "porn star" on a

10   penis, which is consistent with what we expect Bianca's

11   testimony is going to be.  And what we all know through prior

12   hearings is that on the videotaped interview, the defendant

13   denied ever having sex with her.

14          Seems like we also all know through prior hearings,

15   that defendant's defense is going to be how would I know she

16   was under 19?  And we're refuting that by arguing and

17   presenting evidence, well, if you're having sex with someone

18   who is under 19, you've got a pretty good idea of what that

19   person looks like.

20          And so what it would do is, it would help meet that

21   defense, which is "I didn't know she was under 18."  By

22   showing, well, not only did you have an opportunity to observe

23   her, and I think the Court's received ample different examples

24   through different motions of what the burdens the defendant

25   needs to meet in order to assert his mistake-of-age defense,

1    and this directly refutes that.

2              THE COURT:  All right.

3              MS. BERG:  Your Honor, the question was the

4    relevancy, and because of his denial of having sex, the issue

5    is -- and the opportunity to observe her during this intimate

6    relations.

7              THE COURT:  All right.  Okay.  Anything else by

8    defense?

9              MR. FARKAS:  Again, Your Honor, I think Your Honor

10   was on point when you mentioned that it was cumulative.  They

11   have other pictures that they can use to prove that point if

12   that's the point they're trying to prove.  And I would just

13   note that the citations to the case law have to do with, as

14   Your Honor mentioned, neck tattoos, and in another case, a

15   tattoo that was not compelled.  So I think compelling someone

16   to show that part for the purpose of taking a picture of a

17   tattoo, that's not -- I think, in our opinion, key to any of

18   the charges in this case, would be a violation of Mr. Davis'

19   privacy.

20             THE COURT:  Okay.  This is what I'm going to do:  I'm

21   going to reserve a ruling on this, so it's very possible

22   during the course of the trial, that I might take this up

23   again and hear argument.  It depends on how the evidence is

24   proceeding.  If there is sufficient evidence that this might

25   be cumulative, I might continue to -- I might deny it at that

1   time, or if it does not become an issue that assuming the

2   photo that's already in the cell phone, or wherever it is, is

3   admitted, and that there is no dispute that it is Mr. Davis'

4   anatomy, then this may well be cumulative.  I don't know at

5   this point, obviously, and so I'm going to reserve a ruling.

6   I'm not denying it.  I'm just reserving a ruling, but I'm

7   going to invite counsel at some point in time, if you think

8   this is the point in time in the trial that we should revisit

9   this issue, raise it.  Let me know, and then we'll take it up

10  out of the presence of the jury.  So all I'm going to do right

11  now is just reserve a ruling on that issue.

12          All right, the next motion is a motion to strike and

13  limit the testimony of Marcus Lawson.  And in particular --

14  and I'm not sure if he's going to attempt to render an opinion

15  that, in essence, she appeared to be over the age of 18.

16          Let me ask defense thought on that first.

17          MR. FARKAS:  Your Honor, I spoke with Mr. Lawson last

18  night after we received this motion.  And I asked him how many

19  times he has testified as to this type of subject matter in

20  child pornography cases, and he says he addresses it in almost

21  every CP case that he testifies in.  And I have a list -- list

22  of those cases that -- actually I only have two copies.  But I

23  can give one to the Court and to the Government.

24          MS. BERG:  Your Honor, we received this -- if I may

25  interject.  We received the opposition last night at

1   approximately 5:30.  If this is something that we could

2   address -- if the Court wants a response from the Government

3   on this issue, this is simply a listing of cases, not that

4   he's actually testified on the issue of whether someone was a

5   minor.

6           THE COURT:  Okay, yeah, now, I guess the big -- and I

7   totally agree with you because this is something that

8   obviously I'm going to need to address, and I was just

9   wondering, and let me just wonder out loud, whether or not he

10  would be qualified to testify regarding her appearance.  First

11  of all, in terms of expertise.

12          And, second, is this really an issue that requires

13  expert testimony?  I mean, I think almost anyone could

14  theoretically qualify as an expert, and I use the example of,

15  you know, if I'm the parent of four daughters, and, you know,

16  I'm the Girl Scout leader and I'm also a secondary or a

17  grammar schoolteacher, and I see all kinds of children, ages

18  10 through 18, does that necessarily qualify you?  There is a

19  state law case, where I think a registered nurse who was

20  involved in child-abuse-type cases, and then a physician, a

21  pediatrician, or whatever, who were allowed to testify, but

22  I'm not sure that just because you've seen something makes you

23  an expert that is outside the realm of what a jury would

24  decide.  You know, in all candor, I think I can look around

25  this room and probably figure three or four of you who might

have that kind of contact with young girls could arguably
qualify as experts because you've seen them.

     And the interesting thing about this case is that if
I allow someone to testify that she appeared to be over 18 --
we know she's 13 at the time.  So I mean that is like
totally -- I mean, I can understand you're talking about
appearances.  But to say that she appeared to be over the age
of 18 because of bodily developments, what she has told us, or
what she will probably tell us just by way of example of her
is that you can be 13 years old and be fully developed, and
that doesn't mean much.

     Anyway, I'm concerned about whether or not that's
something that's within the realm of experts, and whether or
not Mr. Lawson qualifies an expert because I really -- I'm
concerned that that really opens the door because almost
anyone can qualify as an expert as long as they've had enough
exposure to young girls from age 10, 12, to 18, and so that's
really problematic.  But I'm just saying that out loud just to
give you folks something of a hint of my concern about
Mr. Lawson being able to render an opinion, that in his
opinion, based upon his background, training, and experience,
that she appeared to him to be over the age of 18.  That's
something problematic for me, because that's not his area of
expertise per se.  He's a forensic -- more of a technical
expert as opposed to a medical expert, even though he has seen

1    a number -- most of you in here have seen a lot of photos.

2    Maybe that makes you all experts.  I'm not sure.

3            But at any rate, I'm going to hold off on that.  I

4    just want to give you a hint because both sides might say,

5    "Well, wait a minute, Judge, you can wait for a response, but

6    I'm giving my opening statement tomorrow, and I'm going to be

7    saying something about what Mr. Lawson is going to be

8    testifying to, including his opinions.  We need a ruling."  If

9    that's the case, then I will have to hold off on making a

10   ruling -- or you'll have to hold off on making your opening

11   statements until I rule on it if you intend to offer that in

12   your opening statement.

13           So you folks can sort of meet and confer on that, but

14   I will give the Government an opportunity to respond.  I will

15   give the Government an opportunity to look at these cases to

16   see if Mr. Lawson indeed did testify as an expert in

17   appearances of -- now, it could well be that that's part of

18   his forensic examination, not opining as an expert, but, okay,

19   he's looking at this information as part of his --

20           MR. FARKAS:  Your Honor, if I could respond.  It's

21   not just that Mr. Lawson is a forensic expert, he worked for

22   the Department of Homeland Security investigating child

23   pornography crimes exclusively.  So he's -- I think the

24   difference between a Girl Scout leader or a middle

25   schoolteacher, anything like that, this is someone that

1    specifically looked at sexually explicit images to determine

2    if these people were minors, or they were not minors and

3    whether to investigate those cases.  So I think, to me, his

4    opinion is a little bit different from someone who just looks,

5    may see naked -- or the bodies of girls.  He looks at it with

6    sort of an expert's eye.

7            And I'm not sure if the Government's motion, they

8    didn't cite *Daubert*, but if this is a *Daubert*-style challenge,

9    we'd be happy to have Mr. Lawson up here so that the Court

10   could -- maybe we could have a *Daubert* hearing on whether he

11   does possess these qualifications.

12           THE COURT:  Okay, now, remember, folks, this is a

13   two-edged sword.  If I start allowing expert testimony based

14   upon investigation, that makes Mr. Stigerts an expert on

15   children.  And he could opine something that, yes, in his

16   experience, 13-year olds easily develop those features, and if

17   you -- if you object, remember, it's a two-edged sword.

18           Now, if, however -- if, however, Mr. Lawson could

19   testify, you know, it's not an opinion, but when he looked at

20   it, that is what caused him to continue his investigation,

21   that would be consistent with law enforcement saying, well,

22   she appeared to be underage, and that's why we conducted our

23   investigation.  It wouldn't be that they're rendering an

24   opinion as to whether or not they believe that she appeared to

25   be under the age of 18.  But that's just what caused them to

1    continue on with their investigation.  That's what caused

2    Mr. Lawson to decide that he would proceed with conducting his

3    forensic examination.  So I'm going to be consistent.

4              MR. FARKAS:  I understand, Your Honor, and Detective

5    Stigerts already has, in the interview with Mr. Davis, he says

6    repeatedly, "I have met this girl, I don't think she's --

7    there is no way she can be 19, there is no way she can be 18"

8    repeatedly in the transcript.  So that's already there.

9              THE COURT:  Yeah, but if there is an objection, then

10   I will give a limiting instruction that that's not to be used

11   by the jury for the truth of the matter asserted, but that's

12   part of his investigation.

13             But if that comes in, if the defense says, okay, it's

14   come in.  He can testify to that, and the jury can consider

15   that for the truth of the matter, that is, that Detective

16   Stigerts believed that she appeared to be under the age of 18,

17   so be it.  But all I'm saying to both sides is it's going to

18   be equal.  I'm going to decide this case equally in terms of

19   whatever analysis I use to determine whether or not anyone --

20   and there might be four or five law enforcement officers that

21   have background and training in investigations, and they might

22   all come in and opine that she appeared to be under the age of

23   18 to them too.

24             So it is a difficult sort of arena because, you know,

25   that's possible.  Now, it could well be they weren't

1    designated experts, so maybe they don't get to testify as

2    such, but we'll see.  But all I'm saying just off the top of

3    my head is, whatever standard I apply is going to be applied

4    uniformly to both sides.

5              MR. ENOS:  If I may add to the analysis, Your Honor.

6    It's actually not a like-for-like comparison.  My

7    understanding is Mr. Lawson was a computer forensic guy even

8    at GSI.  That is a level removed from someone like Detective

9    Stigerts who has personally interviewed 70 minors.  What

10   Mr. Lawson did, and what, frankly, my normal computer

11   forensics guys do 98 percent of the time is figure out

12   whodunit.  Right?  That's their forensic analysis.  It's very

13   rarely that I bring someone in to provide some kind of

14   opinion, oh, this one is 16 as opposed to this one is 13.

15             I can think of one case I did, it was with Matt

16   McFadden, former Clovis PD, and what he did was, he pulled in

17   a forensic pediatrician from UCLA that can go through the

18   tanner stages of development and everything.  It's really

19   concrete scientific business, true expertise, about the

20   development of a female.  It's not some guy that looks at

21   pictures all the time, because really what they do, when

22   they're looking at pictures and videos is, they're figuring

23   out who is responsible for downloading that stuff.  Because as

24   the Court well knows, 98 percent of the child pornography

25   cases deal with prepubescent minors.  Age isn't even a issue.

1          So I just want to make sure the record is clear, that

2    just because a list of cases can be thrown in a brief that

3    says, hey, he's testified 65 times, that has nothing to do

4    with the extent of his expertise with respect to the actual

5    age of the people involved.

6          THE COURT:  All right, let me go ahead and allow the

7    Government to respond.  You folks are going to have to meet

8    and confer after court.  If you think that that might impact

9    you, you need a ruling -- and that's true with any of these of

10   these.  If you need a ruling right away, because you're going

11   to be making your opening statement, and whatever time we need

12   we will take to resolve these matters before you make your

13   opening statement.

14         Okay, so right now on the motion to strike, I will

15   hold off on that, give the Government an opportunity to

16   respond to that and attempt to resolve it.  If we can go ahead

17   and proceed with the opening statements in the Government's

18   case in chief and then decide it a couple days from now,

19   that's great.  But if the defense says, no, wait a minute,

20   that's part of our opening statement as to what Mr. Lawson is

21   going to testify to, then obviously I need to rule on that

22   before you make your opening statements.

23         Okay, there is the defense motion to preclude jury

24   instruction under 18 United States Code Section 1591(c).  And

25   I would like to discuss that with you folks, and I would like

1    to spend some time with you.  Do either side think that that
2    needs to be ruled on before you make your opening statements
3    or before we start the case in chief?
4              MR. ENOS:  Short answer from the Government,
5    Your Honor, is no.  I briefly raised this issue this morning
6    right at the outset of the day.  What I'd like to do is have
7    an opportunity to put some type of briefing together.  What it
8    seems to be is a follow-up from the very end of the last
9    in limine hearing.  I believe defense counsel started
10   challenging the 1591, the constitutionality of it, and I think
11   this is a follow-up brief to that preargument, if you would.
12             So I would like an opportunity just to put something
13   together, and my recommendation would be to get something on
14   file before the opening of business on Friday, most likely
15   Thursday evening, just so the Court can review papers with
16   respect to both sides about the matter before making a ruling.
17   It will not be part of our opening statement tomorrow.
18             THE COURT:  Okay, defense, your thought on that.
19             MS. McGLENON:  Our short answer is no.  It's not a
20   problem.
21             THE COURT:  Okay, fine.  Good.  Okay, so we'll hold
22   off on that, allow briefing.
23             Now, there is one possibility I've got the magistrate
24   judge interviews in the morning, but I think we're going to be
25   done in the morning.  And we can talk about Thursday.  If we

1  want to get together Friday afternoon on the record to discuss

2  any legal issues, including this particular issue, we can do

3  that.  I know you're working on this case and other cases, so

4  if it's just not going to work out, we'll take it up sometime

5  next week, but if you think that it is something that you

6  would like to spend some time on, and you're ready to proceed

7  on Friday afternoon, we can do that.  Otherwise, we can set

8  aside sometime next week to fully address this issue.

9          MR. ENOS:  And I think preliminarily, the Government

10  would be available if that worked for the defense.

11          THE COURT:  Okay.  Yeah.  And, again, I'll leave it

12  to you folks.  I know you've got a lot of stuff going on, not

13  just this case, but we can talk about that Thursday.

14          Okay, now, there is a stipulation regarding the

15  admissibility of evidence.  It's Document No. 106.  And the

16  parties are agreeing Defense Exhibit A, MocoSpace business

17  record regarding defendant's profile, it's stipulated that

18  that is admitted into evidence; is that correct?

19          MR. ENOS:  That's correct, Your Honor.

20          THE COURT:  Okay, Defense Exhibit A is admitted into

21  evidence.

22          (Defendant's Exhibit A, received in evidence.)

23          THE COURT:  And Government's Exhibit 15, business

24  record regarding the cell phone; Exhibit 16, Western Digital

25  business record; Exhibit 23, Metro PCS business record;

1    Exhibit 24, Metro PCS business record, that those stipulated

2    would be admitted into evidence.  Is that correct by defense?

3         MS. McGLENON:  Yes.

4         THE COURT:  All right those are admitted into

5    evidence.  Government's Exhibit 15, 16, 23, and 24.

6         (Government's Exhibits 15, 16, 23, and 24, received

7    in evidence.)

8         THE COURT:  And there is additionally admitted

9    evidence that Special Agent Adrienne Sparrow of FBI's San

10   Francisco office was contacted by South San Francisco Police

11   Department about investigation and thereafter contacted FBI's

12   Sacramento's office pursuant to same.  And I assume that that

13   would be a stipulation of facts; is that correct?

14        MS. McGLENON:  Yes, Your Honor.

15        THE COURT:  Okay, I'll leave it to you folks how you

16   want that presented.  If you wish to read that stipulation

17   into the record at the appropriate time, that's fine.  You can

18   meet and confer on that and decide, but it is agreed upon, and

19   that will be an admitted fact.  And, again, it's just a matter

20   logistically how you want to present that to the jury, and

21   I'll leave it to counsel.  Just indicate between the two of

22   you decide when you want to do that, and that's fine with me.

23        There was also a stipulation, Document 98, to the

24   sanitized felony prior and delete reference to prior in Davis'

25   statement.  That order was signed by me.  Is there any other

1   issue on that or has that been worked out?  I think there was

2   discussion earlier.

3          MR. ENOS:  Yes, just following up on that,

4   Your Honor, with respect to the Court's order endorsing that

5   stipulation, the parties discussed how to get a sanitized or

6   redacted copy of defendant's interview with Detective

7   Stigerts.  Defendant, frankly, did a bang-up job of providing

8   a redacted video, and so we've actually incorporated that as

9   our Exhibit 21.  It's actually defendant's work product.  And

10  there is also in Exhibit 21, being the videotaped interview of

11  January 26, 2012.

12          In addition, there is an Exhibit 12, which is a phone

13  call from last December from defendant to Bianca.  There is a

14  similar issue in there, and to the best of my recollection,

15  from roughly the 5 minute, 45 second point to about the 6

16  minute, 10 second point, there is reference to defendant with

17  respect to how much time he served with respect to his prior

18  conviction.  And so we excised that from Exhibit 12 as well

19  and played it yesterday when we had our IT meeting, which all

20  parties attended per the Court's -- one of the Court's

21  pretrial orders in this case, and they've listened to that.

22  So what we'd like to do is bootstrap in Exhibit 12, at the

23  very least within the spirit of the Court's order, endorsing

24  our prior stipulation, so we now have an excised version of

25  the phone call that likewise doesn't make any reference to

1    defendant's prior conviction or -- well, not prior conviction,

2    but with respect to the time served pursuant to his prior

3    conviction.

4              MS. McGLENON:  Your Honor, the phone call, I'm not

5    absolutely clear on what the relevance of this phone call

6    which took place -- I don't know, two weeks ago or something.

7    Well, we received within the last two weeks.  It's allegedly a

8    phone call between Mr. Davis and Bianca.  And I don't -- I

9    would object to it.

10             THE COURT:  All right.  Okay.

11             MS. McGLENON:  Redacted or not.

12             THE COURT:  And that would be what has been

13   designated as plaintiff's exhibit -- Government's Exhibit 12?

14             MR. ENOS:  Yes.

15             THE COURT:  How about Exhibit 21?

16             MS. McGLENON:  Your Honor, I think we agreed to that.

17             THE COURT:  So plaintiff's Exhibit 21 as redacted or

18   modified is admitted into evidence, then.

19             MS. McGLENON:  Yes, that would be our request.

20             MR. ENOS:  Agreed, Your Honor.

21             (Government's Exhibit 21, received in evidence.)

22             THE COURT:  How do you want to address Exhibit 12 in

23   terms of -- I'm not sure if you want me to view it or how you

24   want to proceed on that?

25             MR. ENOS:  It's just an oral -- it's an oral -- it's

1  an audiotape of the phone call.  However the Court wants to

2  analyze it is fine with us.  We do plan on calling Bianca

3  tomorrow.  It's no longer than even -- if it wasn't redacted,

4  it's no longer than seven minutes or so.  I think now it's

5  down to about six and a half.  And the gist of the phone call

6  is defendant calling, and part of that being, "Hey, trial's in

7  March, and you may want to lie low," that kind of thing.  So

8  it's going to go in part, frankly, to obstruction.

9        THE COURT:  All right.

10        MS. McGLENON:  Your Honor, I would just say he's not

11  charged with obstruction.  And I -- he's not charged with it.

12        THE COURT:  Do you have a transcript of that?

13        MR. ENOS:  We do have a 302, FBI report that's been

14  produced that summarizes the bulk of it.  I don't know if it's

15  verbatim or not.  But the bulk.  We're happy to, frankly, give

16  a copy to the Court this evening if the Court would like to

17  look at it, and we can discuss it more tomorrow.

18        THE COURT:  What I'd like to do is take a look at it,

19  and assuming that it's pretty much substantively what you

20  prepared as your Exhibit 12, then we can talk about specifics

21  as far as what in there may or may not be relevant, or whether

22  there are any 403 issues regarding any of that.  If I can get

23  a copy of that tonight, I can take a look at it tonight and we

24  can take it up tomorrow morning.

25        MR. ENOS:  Would the Court also like a copy of the

1   disk?  I'm happy to give you Exhibit 12 if the Court think it

2   would help.

3            THE COURT:  No, I just need to look at text.  So if

4   you have that, that would probably be sufficient.

5            MR. ENOS:  Permission to approach -- permission to

6   approach?

7            THE COURT:  Yes.  Actually any time after court, my

8   staff can make copies if you want, so that's not an issue

9   there.

10           MR. ENOS:  We've got it here, if I can give it to

11  your courtroom deputy.

12           THE COURT:  Sure.  Okay.  So I assume we should make

13  a copy of this and then give you back the --

14           MR. ENOS:  The detective's copy?

15           THE COURT:  Yes.  So we'll go ahead and have a copy

16  made of this for the Court.  Now, does defense have a copy of

17  that?

18           MS. McGLENON:  Your Honor, what are the Bates numbers

19  on there?  Oh, we'd love an extra copy.

20           THE COURT:  Okay, we'll make two copies, one for the

21  Court, and one for the defense, and we'll give the original

22  copy back to the Government.

23           Okay, and while they're doing that, there is a

24  defense request for reconsideration of striking testimony

25  regarding minor's age after contact with defendant.  And I had

1    indicated earlier that it was a little problematic, but I

2    thought in fairness that defense should be allowed to elicit

3    testimony regarding any statements made by Bianca before her

4    contact with Mr. Davis where she claimed or contended that she

5    was over the age of 18.  Apparently defense indicated there is

6    no such information that was disclosed in discovery, but there

7    is some post contact information where she purportedly told

8    others, either electronically or in person, that she was over

9    the age of 18.  Is that correct?

10          MS. McGLENON:  Yes, Your Honor, that's correct.  We

11   were given -- after the last hearing, we were given texts, 300

12   pages of texts.  In our unofficial count after that time, on

13   five occasions, she said that she was -- she was -- when she

14   was asked in the text, "How old are you?"  She said that she

15   was 18.

16          And I think -- since that's all we have, I think that

17   on cross, we should be able to ask her.  I mean, obviously

18   we'll ask her beforehand.  But we don't have any -- we don't

19   have any of the paper on any of the -- anything that happened

20   before.  We were not provided her before Facebook, her before

21   MocoSpace, her before -- anything that happened before she met

22   Mr. Davis, we have not been provided.  And so whatever phone

23   she was using before then, we have not been provided, whatever

24   computer she had.

25          We have been provided with the Riverbank police

1    reports of the various times that she ran away from the time

2    she was nine until she was 13.  But other than that, we -- we

3    have been given no information about -- about Bianca before

4    she met Mr. Davis.

5         THE COURT:  Now, in terms of the five that you have

6    located, identified, do you have the time frames when those

7    might have occurred?

8         MS. McGLENON:  Yes.  They were all within the --

9    these -- I have the exact -- I have the exact dates.

10        On 9/19 at 20:57, she responded, "Yeah," to "You're

11   18, right?"

12        On 9/20 -- so that's two days after, two or three

13   days after this encounter, she said she was 18.

14        On 9/20 -- okay, so that was 9/20 at 3:01:44, then

15   again on 9/20 at 12:17:43, she said that she was 18.

16        On 9/21, at 12:41, she said that she was 18.

17        On 9/24, at 19:34, she said that she was 18.

18        On 9/25, she said she was 18.

19        On 9/25 at 3:25.

20        THE COURT:  All right.

21        MS. McGLENON:  And, Your Honor, we would just like to

22   address under Rule 406, it's her habit or custom to state that

23   she is 18.

24        THE COURT:  All right.  Okay, and Government

25   response -- or I don't know if the Government has had an

1  opportunity to --

2          MS. BERG:  Your Honor, yes, we received this last

3  night, so we'll make our preliminary response here.

4          The first of which is this Court allowed extensive

5  briefing on this issue and has had a hearing on this.  So --

6  unless we have a reason for reconsideration, under the federal

7  rules, I don't understand why we are revisiting this issue

8  when the Court clearly stated previously that its ruling --

9  and I quote from the transcript.

10         "I'm going to limit it to a more generalized

11  question, is before she encountered Mr. Davis, had she told

12  other people that she was over 18?  Yes or no."

13         The Court was very clear in indicating the 412

14  concerns that were raised.

15         Now, the implication in this motion is simply that

16  because there was nothing beforehand, we have to let in the --

17  after -- the statements that come in after Mr. Davis was with

18  the -- with Bianca.  The dispositive date of that is

19  September 17th.  So we're talking about texts that are the

20  19th through the 25th.

21         The scope of the motion is simply that there must be

22  withheld information.  Well, it's clear back all the way from

23  the report from the original South San Francisco investigation

24  that the text started on September 18th.  So the Government

25  has not been withholding any information.  The text messages

228

1    started on the 18th, so there is nothing before that time.

2           Simply because there is not any evidence to support

3    their position doesn't mean they get to use stuff that

4    postdates what occurred.  The standard is reasonable

5    mistake-of-age defense when the defendant had an opportunity

6    to observe Bianca.  What she may have done afterwards is Rule

7    412 character evidence, and I think that's what they're

8    saying, is they want it in their 406 pattern and evidence, but

9    there is nothing to say it predates this specific encounter.

10          And what the Court was very clear about indicating --

11   and, in fact, the Court expressly distinguished the *X-Citement*

12   case and talked about Traci Lords because there was so much

13   information already out there before this had become an issue.

14          So the Court clearly indicated that it was concerned

15   there was a real distinct 412 issue.  It seemed too far

16   astray, and there is no reason why we should be revisiting

17   this issue on the sole basis that because they don't have

18   anything before the defendant had the encounter with Bianca,

19   simply because these statements came out afterwards, which are

20   highly prejudicial.  It would go back in time to establish

21   that he could have a reasonable or could have -- she could

22   have made this statement.

23          MS. McGLENON:  Your Honor, this young woman -- number

24   one, this isn't 412.  There is no -- this is -- these are

25   texts that were provided to us by the Government a week after

1   the hearing that said that we could not use anything

2   beforehand, anything except what's beforehand.  We got the 300

3   pages of stuff that happened afterwards because we had a small

4   bit of the texts.  And -- that were specific to -- to Ricky

5   and Bianca.  And -- and so we wanted to see what else there

6   was, and what we have is everything after.

7          If we cannot refer to it -- I mean, I can ask her how

8   many times, you know, did you have 300 pages of texts before

9   Ricky, but if she says, "No, I never said anything except that

10  I was 15 years old," and then -- then we're stuck.

11         And I -- and 412 has nothing to do with this.  These

12  texts are between her and others.  And they say -- you know,

13  they sound like -- anyway, she says she's 18 five times in the

14  week before her -- she allegedly went with Brian Armstrong.

15         So she is not -- she's not being pimped, she's not

16  being coerced, she's not being bothered, she's not being sold

17  or bought except that she is negotiating with men on the phone

18  that was found in the hotel by Detective Schwartz on sometime

19  later, November.

20         MS. BERG:  Your Honor, may I respond?

21         THE COURT:  Yes.

22         MS. BERG:  This is not an argument based on the

23  facts.  The facts are that these texts are specifically in

24  relation to johns and setting up additional -- after she had

25  been put on "myredbook" by the defendant, these are specific

1    conversations about other sexual activity.  And this is a 412
2    issue.
3           Again, I respectfully disagree with defense counsel
4    to indicate that this is not a 412 issue.  It is a motion for
5    reconsideration, in which this Court said it was a 412 issue.
6           Again, I quote from the hearing transcript in which
7    Your Honor indicated, and I start in the middle of it.  It
8    says:
9           "That would focus on his knowledge at the time, which
10   means that anything after that would not have had an impact on
11   his knowledge or understanding to the extent that it might be
12   some credibility issue."  And Your Honor says:
13          "Again, this is really, you know, something that I
14   don't find it's something that she might have said after their
15   encounter would be particularly relevant.  And then I'm faced
16   with a Rule 412 issue and then 403 about attempting to bring
17   in information regarding other encounters she might have had
18   with men."
19          And then at the end of that paragraph, Your Honor
20   says:
21          "And we don't know what these emails entail and
22   whether or not that's going to be so prejudicial.  It clearly
23   would be something that I believe Rule 412 was trying to
24   address, and that is to sort of paint the alleged victim as
25   some kind of an unworthy person."

1      Your Honor, I think we're revisiting an issue that

2  this Court clearly addressed, and there is no reason to

3  revisit this Court's prior ruling on the sole basis that we

4  don't have anything before September 17th, which is a

5  dispositive date, so let us use five texts with other johns

6  that postdate the encounter to try and establish what

7  Mr. Davis may have known at the time.

8      MS. McGLENON:  Your Honor, it would be easy to

9  sanitize these.  There is no indication -- I have no

10  indication that she ever had sex with these men.  She just was

11  in a constant chat, and when they asked, she says "I'm 18"

12  every time.  I think that's an important fact.  I don't think

13  she suddenly changed -- after her four hours with Mr. Davis, I

14  don't think she suddenly saw the light and decided to start

15  saying she was 18.  She said she was 18 before she met him.

16  He thought she was over 18.  He thought she was 19 and --

17  based on what she had said to him.  But we don't have that

18  phone.  We don't have those -- that information.  All we have

19  are these 300 pages of texts, which are, you know, whenever

20  anybody asks, she says, "I'm 18."

21      THE COURT:  All right.  Okay.  Here is the concern I

22  have.  We talked about this in length before.

23      Apparently, as I understand the defense position,

24  there is no tangible evidence that prior to September 17th,

25  2011, that she ever told anyone that she was over 18.  At

1   least tangible evidence, that the defense has readily
2   available to bring in evidence or at least impeach Bianca.
3   But after the encounter, at least two days, September 17th,
4   the first one was September 19th, after the encounter, after
5   it gets all set up, and I guess she's now on-line available,
6   then she starts telling people she's over the age of 18.  And
7   it's somewhat problematic that that somehow goes to his belief
8   that she was over the 18 -- over the age of 18 if she doesn't
9   start at least from the evidence-wise, she doesn't start
10  telling people she's over the age of 18 until she's now
11  on-line, in business, if you will, starting September 19th,
12  and then just automatically tells people she's over the age of
13  18.  I'm not sure how that goes to his actual or reasonable
14  belief that she was over the age of 18, something that happens
15  afterwards.
16          It's more of a problem, as I said.  I could sort of
17  see it before because, then, that would be somewhat consistent
18  with -- okay, even before he met up with her, she was telling
19  people she was over 18, and, therefore, it would be reasonable
20  for him that she might have mentioned that to him.  But
21  afterwards in the first indication is after the encounter with
22  him, then she starts saying she's over the age of 18.  It's
23  more of a difficult thing for me to say, okay, yeah, that
24  would be relevant to his state of mind or his knowledge.  So
25  that's really the problem that I had as far as admitting it,

233

1    anything that occurred afterwards.

2          Now, I do know, and I'll take another look at the

3    *United States v. United States District Court*, 858 F.2d, 534,

4    Ninth Circuit 1988 case, where the Court did consider prior

5    and subsequent appearances in adult films in determining

6    whether it was reasonable that defendant believed she was over

7    the age of 18.  I'll have to look at the context of that case

8    because that case does talk about prior and subsequent.  Here,

9    we're talking strictly subsequent.  I need to see the context.

10   I'll have to reread that case, and then I'll consider.

11         Maybe the best I could do -- and I'm not saying I

12   would do it, I want to read that case, but I still have a real

13   concern, is that because the time frame involved, possibly a

14   question, did she ever -- after September 17th, 2011, within

15   the next week or so, did you ever tell anyone that you're over

16   the age of 18, yes or no.  That's possible.  But, again, I'll

17   have to look at that case to see if I'm even on solid ground

18   on that aspect.  But that's a possibility.  Let me look at it

19   overnight, and I'll tell you first thing in the morning.

20         MS. McGLENON:  Your Honor, when we get to cross,

21   maybe we should revisit.  Bianca's going to be on tomorrow.

22   When I cross her, if she claims that she -- that she gave any

23   age other than 19, I think we -- I think I have the right to

24   cross-examine her about -- and maybe I just don't ask the time

25   frame.  But I don't want to have a problem with the Court or

1    counsel when I cross-examine this young woman about the ages

2    that she said during that time period.  And I want to be

3    able -- the only documentation that I have is here.  And the

4    other thing -- this isn't an accusation, but during the

5    questioning of Bianca, it was suggested strongly by the

6    detective, that she looked so young, that she -- he couldn't

7    believe that she believed that she looked 15.  I think -- I

8    think that that is a whole another issue that we need to get

9    into is, how many times have they told her to say that she was

10   15?  And -- or that she was under 18.  And how many times

11   between now and tomorrow is that going to come up?  And I

12   think we have the right to discuss that.

13            THE COURT:  All right.  Okay.  Now, if I rule adverse

14   to the defense, and during the course of direct examination

15   and cross, we get to that stage again where you would want me

16   to revisit, you might ask the question, it might be an

17   objection, I might sustain the objection, but then we know at

18   the next break, we'll go ahead and take that up again, and

19   then you can obviously flesh out your argument based upon her

20   testimony on direct and possibly in cross-examination that

21   might make it admissible, if nothing else, impeachment is a

22   possibility.

23            So I'll keep that open for now.  At this point, I'm

24   going to reread that Ninth Circuit case, and then I'll go

25   ahead and give my tentative ruling tomorrow morning with the

1   understanding if I rule against the defense, you can certainly

2   raise that again at some point during the testimony of Bianca.

3           MS. McGLENON:  Thank you, Your Honor.

4           THE COURT:  And, again, that will give me more

5   testimonial information to decide.

6           Okay, the other thing is I'm going to have --

7   Mr. Mugridge give you some jury instructions that we're sort

8   of working on.  These are works in progress, and we will

9   during the course of trial, maybe Friday, maybe next week

10  sometime, talk about jury instructions and verdict forms.

11  Obviously both sides are entitled to a final jury instruction,

12  verdict form conference at the conclusion of the case.  But I

13  would like, if we have a little time here and there, to flesh

14  out some of these issues, including the specific issue that

15  was raised by the defense regarding Section 1591(c).

16          So -- okay, it's pointed out to me on the documents

17  that was provided that we made copies, it goes from page 1

18  through -- and then it says 6 to 6 of 7.  Is there a page 7?

19          DETECTIVE STIGERTS:  Yes, there is.  There just

20  wasn't any -- it was just nothing on the conversation to call

21  it in, but I'll give it to you.

22          THE COURT:  That way we know that that's page 7 of 7.

23          DETECTIVE STIGERTS:  I just wrote on it.

24          MS. BERG:  We apologize.

25          THE COURT:  What I'd like you to do overnight, just

1   take a look at the preliminary instructions.  They're

2   basically the model instructions that would normally be given,

3   and the one to take a look at is Instruction Number 2, that

4   whether or not you want the indictment read, or whether you

5   want it summarized, you'll just let me know in the morning,

6   and then me can work that out.  Obviously I need to get that

7   resolved because the first thing I'm going to do when the jury

8   comes in is read the preliminary jury instructions.

9           So take a look at it overnight, and let me know how

10  you want to proceed on that.  If there are any other

11  preliminary instructions you have a concern about, or if the

12  you want me to add any, let me know tomorrow morning, but

13  obviously I need to get that all resolved so, like I say, when

14  the jury comes in, the first thing I need to do is read

15  preliminary jury instructions.

16          Let me ask, is there anything further this evening

17  that we should take up, plaintiff's side, for the Government,

18  anything that we should take up?

19          MR. ENOS:  Not tonight, Your Honor.  Thank you.

20          THE COURT:  All right, defense, anything tonight that

21  we need to take up?

22          MS. McGLENON:  No.  No, Your Honor.

23          THE COURT:  Okay, let's reconvene tomorrow morning at

24  8:30.  All right, we'll be in recess.

25          (Court was adjourned at 4:40 PM.)